**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

David E. Weslow (*pro hac vice*)
dweslow@wileyrein.com

Ari S. Meltzer (*pro hac vice*)
ameltzer@wileyrein.com

Attorneys for Defendants Kent and Heidi Powell

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Powell,<br><br>       Plaintiff,<br><br>  v.<br><br>Kent Powell and Heidi Powell,<br><br>       Defendants. | Case No. 2:16-cv-02386-SRB<br><br>**Objection to Plaintiff's Motion for Voluntary Dismissal**<br><br>(Assigned to the Hon. Susan R. Bolton) |

Defendants Kent Powell and Heidi Powell, by counsel and pursuant to Fed. R. Civ. P. 41(a)(2), hereby object to Plaintiff's Motion for Voluntary Dismissal solely to the extent that: (i) the requested dismissal should be with prejudice; (ii) the Defendants' counterclaim should remain pending for independent adjudication; and (iii) the Court should condition its dismissal on the payment of reasonable fees and costs to defend against Plaintiff's claims under the Lanham Act's "exceptional" case standard.  In support thereof, Defendant's state as follows:

I.     **INTRODUCTION**

This is a case that never should have been filed. Plaintiff is a reality television "celebrity" who apparently changed her name to "Heidi Powell" in 2010. The Defendants are a senior citizen couple, Kent and Heidi Powell, and Mrs. Powell's legal name has been "Heidi Powell" since marrying Mr. Powell on December 23, 1979. There is only one plausible explanation for why Plaintiff brought this action: to attempt to intimidate Defendants into relinquishing the heidipowell.com domain name that they have properly owned for more than a decade—since long before Plaintiff even became "Heidi Powell" much less before she arguably could have established any trademark rights in that name.

Had Plaintiff and her counsel conducted even the most basic pre-filing investigation, they would have known that: (1) at the time Defendants registered the HeidiPowell.com domain name, Plaintiff had never used the name Heidi Powell; (2) at the time the Defendants registered the HeidiPowell.com domain name, Plaintiff's legal name was not Heidi Powell; and (3) as a result, under the established law of this Circuit, Defendants could not have registered the HeidiPowell.com domain name with a bad faith intent to profit from Plaintiff's non-existent mark or personal name.

Defendants' counsel has made repeated efforts to advise Plaintiff and her attorneys that their effort to bully Defendants into relinquishing the domain name is frivolous and an abuse of the judicial system. On August 15, 2016, defense counsel

2

1  sent a letter to Plaintiff's counsel detailing the insurmountable flaws in Plaintiff's

2  claims and requesting that Plaintiff dismiss the Complaint.  When Plaintiff failed to

3  do so, Defendants served a Rule 11 motion on Plaintiff on August 29, 2016, by both

4  electronic mail and hand delivery.  Only in response to the near certain prospect of

5  sanctions does Plaintiff now seek dismissal of her meritless complaint.

6        While Defendants agree that dismissal of Plaintiff's claims is appropriate,

7  Plaintiff never requested Defendants' stipulation to a dismissal solely of Plaintiff's

8  claims (notwithstanding the contrary suggestion in Plaintiff's Motion).[1]  Had she

9  done so, Defendants would have consented to a dismissal with prejudice that would

10 have allowed the counterclaims to remain pending for independent adjudication.

11 The question before the court, then, is whether to dismiss Plaintiff's claims with or

12 without prejudice.  As explained in further detail below, because Plaintiff's claims

13 are frivolous and there is no possibility that they will become proper in the future,

14 they should be dismissed *with prejudice.*  Moreover, because this is an exceptional

15 case under the Lanham Act, the Court should condition its dismissal on Plaintiff's

16 payment of the reasonable value of the attorneys' fees and costs required to defend

17 against her meritless claims.

---

[1] Defendants did refuse to execute a stipulation dismissing the counterclaims in addition to Plaintiff's claims.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE.

### A. The Court Has Discretion to Dismiss The Complaint with Prejudice.

Rule 41(a)(2) of the Federal Rules of Civil Procedure authorizes the Court to dismiss an action at the Plaintiff's request "on terms that the court considers proper." *See* Fed R. Civ. P. 41(a)(2); *Hargis v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002); *Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV 09-1489-PHX-SRB, 2012 WL 12538561, at *2 (D. Ariz. Mar. 13, 2012). "That broad grant of discretion does not contain a preference for one kind of dismissal or another." *Hargis*, 312 F.3d at 412. Although, by default, a dismissal under Rule 41(a)(2) is without prejudice, courts have broad discretion to determine that the complaint should be dismissed with prejudice. *See id.* "The Ninth Circuit has indicated that, if a plaintiff fails to specify whether the request is for dismissal with or without prejudice, the matter is left to the discretion of the lower court." *Williams v. Peralta Community College Dist.*, 227 F.R.D. 538, 539 (N.D. Cal.2005) (citing *Hargis*, 312 F.3d at 412).

Courts in this circuit routinely dismiss matters with prejudice where they are without merit and there is no reason to provide the plaintiffs with further opportunities to pursue their claims. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Sierra Pac. Mortgage Co.*, No. 2:13-CV-01397-JAM, 2015 WL 5092802, at *2 (E.D. Cal. Aug. 28, 2015) (dismissing with prejudice where the claims are "meritless"); *Gilabert v. Logue*, No. CV 13-578-GHK RZX, 2013 WL 6804663, at *4 (C.D. Cal.

4

1  Dec. 20, 2013); *Altman v. HO Sports Co.*, 2009 WL 4163512, at \*2 (E.D. Cal.
2  Nov.23, 2009) ("[T]he Court has already determined that the products liability claim
3  against Sims is meritless. There is nothing inequitable about dismissing this claim
4  [under Rule 41(a)(2)] with prejudice.").

5        **B.**     **Given Their Meritless Nature, Plaintiff's Claims Should Be**
6             **Dismissed With Prejudice.**

7        There is no reasonable basis for Plaintiff's claims under either the general
8  provisions of the Anticybersquatting Consumer Protection Act ("ACPA") or its
9  specific section on cyberpiracy protection for individuals. At the core of each of
10 these claims is the notion that the Defendants acted with a specific, bad faith intent to
11 profit from Plaintiff's name when they registered the heidipowell.com domain name
12 in 2005. *See* 15 U.S.C. §§ 1125(d)(1) & 8131.

13       There are two critical flaws with Plaintiff's Complaint that make it not only
14 meritless, but objectively unreasonable: (1) when the Defendants registered the
15 heidipowell.com domain name in 2005, Plaintiff's legal name was Heidi Solomon
16 (or possibly Heidi Lane), and she did not use the name Heidi Powell as a pseudonym
17 or in any other manner; and (2) the relevant portion of the domain name at issue,
18 "HeidiPowell," constitutes Defendant Heidi Powell's legal name for the past 36
19 years. Accordingly, Plaintiff's name did not exist at the time the domain name was
20 registered and Defendants could not have had a specific bad faith intent to profit
21 from Plaintiff's name when they registered the heidipowell.com domain name. At
22

the very least, Defendants had reasonable grounds to believe that their use of a domain name that directly correlates to Defendant Heidi Powell's name was a fair use or otherwise lawful, entitling them to protection under the ACPA's statutory safe harbor.

1. Defendants' Registration and Use of the heidipowell.com Domain Name Does Not Violate the General Provisions of the ACPA.

There is no valid factual or legal basis for Plaintiff's claim of cybersquatting. To establish a prima facie case of cybersquatting under the ACPA, a plaintiff must prove that the registrant both:

(i) has a bad faith intent to profit from the plaintiff's legitimate trademark; and

(ii) registers, traffics in, or uses a domain name that

(I) in the case of a mark **that is distinctive at the time of registration of the domain name**, is identical or confusingly similar to that mark;

15 U.S.C. § 1125(d)(1)(A).[2]

In evaluating a claim of cybersquatting under the ACPA, courts focus on the registrant's subjective intent in registering the domain name, and whether the registrant had a "bad faith intent to profit **from that mark**."  15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added); *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177

---

[2] The ACPA also provides a cause of action where the relevant trademark is famous and entitled to protection from dilution under the Lanham Act, but Plaintiff has not alleged, and could not allege, that the purported mark is famous under the Lanham Act.

1  F. Supp. 2d 635, 643 (E.D. Mich. 2001); *Acad. of Motion Picture Arts and Scis. v.*
2  *GoDaddy.com, Inc.*, No. 13-cv-8458, 2015 WL 5311085, at *51-52 (C.D. Cal. Sept.
3  10, 2015) (contrasting "a generalized intent to profit with the ACPA's *bad faith*
4  intent to profit off [plaintiff's] *specific marks*") (emphasis in original).

5    The ACPA clearly states that the asserted mark must have been distinctive,
6  i.e., in existence and entitled to trademark protection, at the time of the domain name
7  registration.  Moreover, it is the clear law of this Circuit that a plaintiff cannot
8  prevail on a claim under the ACPA by arguing that the registrant developed a
9  specific intent to profit at some time after registering the mark; rather, the bad faith
10 intent must be present "at the time of registration."  *GoPets Ltd. v. Hise*, 657 F.3d
11 1024, 1030 (9th Cir. 2011).[3]  The Ninth Circuit's ruling in *GoPets* is legally
12 indistinguishable from the present case and creates an insurmountable barrier to
13 Plaintiff's claim.  There, defendant Edward Hise registered the domain name
14 gopets.com in March 1999 in connection with a business class in which he was
15 enrolled.  *Id.* at 1026-27.  Five years later, the plaintiff, GoPets Ltd., was founded.
16 *Id.* at 1027.  GoPets Ltd. made several unsuccessful attempts to purchase the domain
17 name from Hise.  *Id.*  When GoPets Ltd. advised Hise that it had registered the
18 domain name gopetslive.com and was about to launch a marketing campaign
19

---

20 [3] Although <u>evidence</u> of specific bad faith intent to profit from the mark may arise after the initial registration, s*ee Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009),
21 *GoPets* makes clear that the registration must have been made with a specific bad faith intent to profit from a mark that was valid at the time of the domain name registration—
22 notwithstanding the date of any alleged <u>evidence</u> of the prior bad faith registration.

7

1 connected to that domain name, Hise explicitly threatened to use the gopets.com
2 domain name to cause confusion between the domain names by developing
3 gopets.com and "add[ing] metatags to the code of gopets.com, so that users who
4 wanted to access the GoPets Ltd. game found at gopetslive.com would be directed to
5 gopets.com instead." *Id.* at 1028.  Hise then offered to sell gopets.com to GoPets
6 Ltd. for $5 million.  *Id.*  GoPets Ltd. filed suit in the U.S. District Court for the
7 Central District of California alleging, among other things, that Hise's conduct
8 constituted cybersquatting under the ACPA.  *Id.* at 1029.  The district court granted
9 summary judgment in GoPets Ltd.'s favor.  *Id.*
10       On appeal, however, the Ninth Circuit reversed and remanded the grant of
11 summary judgment with regard to Hise's registration of gopets.com.  The appeals
12 court emphasized that the text of the ACPA requires that the trademark must have
13 been distinctive "*at the time of registration* of the domain name."  *Id.* at 1030
14 (emphasis in original).  Accordingly, notwithstanding Hise's transparent attempt to
15 coerce GoPets Ltd. into paying an inflated price for the gopets.com domain name,
16 the Ninth Circuit concluded that "[b]ecause Edward Hise registered gopets.com in
17 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-
18 registration and continued ownership of gopets.com does not violate § 1125(d)(1)."
19 *Id.* at 1032.  This Court has confirmed that *GoPets* overruled any contrary case law
20 addressing the date of registration that is the focus of an ACPA claim.  *See*
21 *AirFX.com v. AirFX, LLC*, No. CV 11-01064-PHX-FJM, 2013 WL 857976, at *2 (D.
22

Ariz. Mar. 7, 2013) (explaining that *GoPets* "made it clear that a company's re-registration of a domain name that was first registered 'long before [trademark owner] registered its service mark' did not violate the ACPA, because the re-registration 'was not a registration within the meaning of § 1125(d)(1)'").

The U.S. District Court for the Northern District of Texas reached a similar conclusion in *Ultimate Living Int'l, Inc. v. Miracle Greens Supplements, Inc.*, No. 3:05-CV-1745-M, 2007 WL 14258, at *7 (N.D. Tex. Jan. 3, 2007). There, the plaintiff sold the nutritional supplement "Green Miracle" nationwide since 1996 and registered the mark in 1997. *Id.* at *1. The defendant, Miracle Greens, had been selling a nutritional supplement of the same name since 1997. *Id.* Plaintiff alleged that Miracle Greens' use of the domain name miraclegreens.com violated the ACPA. *Id.* at *7. The court disagreed, however, finding that the plaintiff could not prove the required element of specific bad faith intent because it required a showing that the defendant "learned of the Green Miracle mark *before* adopting the domain name, a proposition unsupported by any record evidence advanced by" the trademark owner." *Id.* (emphasis in original).

The U.S. District Court for the Eastern District of Virginia, which has handled the vast majority of ACPA cases since enactment of the statute, has repeatedly dismissed ACPA claims where the plaintiff lacked trademark rights when the registrant registered the domain name or the registrant was unaware of such rights. *See Wagner v. LindaWagner.com*, 16-cv-053 [Doc. 67] (E.D. Va. Aug. 15, 2016)

9

1  (finding that "it is impossible to infer that [the registrant] acted with intent to harm

2  the goodwill associated with a purported mark of which it was unaware"); *Carpenter*

3  *v. MySchool.com*, 15-cv-212 [Doc. 187] (E.D. Va. Oct. 26, 2015) (granting summary

4  judgment where "at the time of the registration [of the domain name], the plaintiff

5  had failed to present sufficient evidence [to] support a finding of bad faith of intent

6  to profit from the plaintiff's mark").

7        In the instant case, as the Complaint acknowledges, Defendants registered the

8  heidipowell.com domain name on or about November 26, 2005.  *See* Compl. ¶ 19

9  (ECF No. 1).  At that time, Plaintiff's legal name was not Heidi Powell.  Plaintiff did

10 not assume the name Heidi Powell until 2010, and her recently filed trademark

11 application does not claim use of "Heidi Powell" as a trademark until September

12 2014.  *See* U.S. Trademark Application Serial No. 87006291, attached hereto as

13 **Exhibit A**.  Although the Complaint acknowledges that Mr. and Mrs. Powell

14 acquired the domain name on November 26, 2005, Compl. ¶ 19, it glosses over the

15 fact that the domain name was registered many years before the Plaintiff assumed

16 her "Heidi Powell" persona for a reality television show.  *See* Compl. ¶¶ 5, 11-14

17 (recognizing that Heidi Powell did not begin using the Heidi Powell name until at

18 least 2010).

19       Just as the defendant in *GoPets* could not have violated the ACPA because it

20 registered the domain name several years before the plaintiff commenced use of the

21 alleged mark, the same principle applies to the Defendants in this case.  Because

22

1  Plaintiff's purported trademark was neither distinctive nor famous when Defendants

2  registered the heidipowell.com domain name in 2005 (indeed, the alleged trademark

3  did not exist because Plaintiff's name was not Heidi Powell at that time), there is no

4  reasonable basis for Plaintiff's ACPA claim.

5    Even if there was some possibility that Plaintiff could claim that she had a

6  distinctive or famous mark five years before she became Heidi Powell and that the

7  Defendants could see the future and register the domain name with an intent to profit

8  from the Plaintiff's future name, Plaintiff's claim is still not objectively reasonable in

9  light of the ACPA's statutory safe harbor.  Under this safe harbor, "[b]ad faith intent

10 . . . shall not be found in any case in which the court determines that the person

11 believed and had reasonable grounds to believe that the use of the domain name was

12 a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).  Where a registrant

13 uses her legal name to form a domain name, she has "reasonable grounds to believe

14 that the use of the domain name [is] fair and otherwise lawful." *See Yellowbrix, Inc.*

15 *v. Yellowbrick Sols., Inc.*, 181 F. Supp. 2d 575, 582 (E.D.N.C. 2001) (finding that

16 registration of YELLOWBRICKSOLUTIONS.com by YellowBrick Solutions, Inc.

17 was protected under ACPA safe harbor).  Here, the Defendants Heidi and Kent

18 Powell married on December 23, 1979, at which point Mrs. Powell's legal name

19 became "Heidi Powell."  Accordingly, Mrs. Powell had reasonable grounds to

20 believe that her use of the heidipowell.com domain name was fair and otherwise

21 lawful.

22

Because Plaintiff cannot argue that Defendants registered the heidipowell.com domain name with a specific bad faith intent to profit from Plaintiff's then non-existent mark and, in any event, Defendants had reasonable grounds to believe that their use of the heidipowell.com domain name was fair and otherwise lawful, there is no reasonable basis to believe that Plaintiff can properly assert a claim under the ACPA claim—much less prevail on such a claim.

2. Defendants' Registration and Use of the heidipowell.com Domain Name Does Not Violate the ACPA's Cyberpiracy Protection for Individuals.

For much the same reason that there is no valid factual or legal basis for Plaintiff's general claim of cybersquatting, there also is no valid factual or legal basis for her claim under the ACPA's Cyberpiracy Protection for Individuals. This Section of the ACPA provides that "[a]ny person who registers a domain name that consists of the name of another living person . . . without that person's consent, *with the specific intent to profit from such name* by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person." 15 U.S.C. § 8131(1)(A) (emphasis added). Thus, a claim under Section 8131 can only succeed if the defendant: (1) registered a domain name that consists of the name of the plaintiff, (2) did so without the plaintiff's consent, and (3) had the specific intent to profit from the plaintiff's name by selling the domain name for financial

1  gain. *See Bogoni v. Gomez*, No. 11 Civ. 08093, 2011 WL 6957599, at *3 (S.D.N.Y.
2  Dec. 28, 2011).

3  As explained above, at the time Defendants registered the heidipowell.com
4  domain name, it did not consist of the plaintiff's name (although it did consist of
5  Mrs. Powell's own name). Thus, unless Defendants had the prescience to know that
6  Plaintiff would divorce her husband, meet Chris Powell at a self-improvement
7  seminar, remarry, and take on a new surname and persona, they could not have
8  registered the domain name "with the specific intent to profit from" Plaintiff's name.
9  Put simply, if Defendants had a specific intent to profit from the Plaintiff's name in
10 2005, they would have registered heidisolomon.com, not heidipowell.com.
11 Moreover, as the Complaint acknowledges, Defendants repeatedly have rebuffed all
12 of the Plaintiff's efforts to purchase the domain name (including an offer made in
13 correspondence from Plaintiff's counsel on August 26, 2016) without even making a
14 counter-offer due to the personal value of the domain name to Defendants. *See*
15 Compl. ¶¶ 20-21 (acknowledging that although Plaintiff "Heidi Powell sought to
16 purchase the Domain Name from Kent Powell . . . Kent Powell refused to sell the
17 Domain Name to Heidi Powell").  Accordingly, Plaintiff has no reasonable basis to
18 claim that Defendants registered the heidipowell.com domain name with the specific
19 intent to profit from selling the domain name to Plaintiff.

20 It is thus clear that Plaintiff's claims are meritless and should be dismissed
21 with prejudice.

22

## III. THE COURT SHOULD AWARD FEES AND COSTS INCURRED TO DEFEND AGAINST THIS ACTION.

It is appropriate for the Court to condition its dismissal on an award of attorneys' fees and costs in "exceptional circumstances." *See Chavez v. Northland Grp.*, No. CV-09-2521-PHX-LOA, 2011 WL 317482, at *4 (D. Ariz. Feb. 1, 2011) (citing *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir.2006) ("if the dismissal is with prejudice, attorney fees may be imposed under Rule 41(a)(2) only in 'exceptional circumstances.'")). The Lanham Act includes a fee-shifting provision entitling the prevailing party to an award of attorneys' fees in "exceptional" cases. *See* 15 U.S.C. § 1117(a). Under any measure, but particularly the Supreme Court's recent broadening of the exceptional case standard in *Octane Fitness, LLC v. Icon Health & Fitness*, this is an exceptional case in which an award of reasonable fees and costs is appropriate. 134 S. Ct. 1749, 1756-58 (2014).

Section 1117(a) of the Lanham Act provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In its 2014 opinion in *Octane Fitness, LLC v. Icon Health & Fitness*, the Supreme Court interpreted the identical "exceptional case" standard for patents to require a case-by-case determination of whether the matter "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. 1749, 1756-58 (2014). Under the *Octane*

1 *Fitness* standard, "[d]istrict courts may determine whether a case is 'exceptional' in
2 the case-by-case exercise of their discretion, considering the totality of the
3 circumstances." *Id.* at 1756. A non-exclusive list of factors that a court may
4 consider includes "frivolousness, motivation, objective unreasonableness (both in the
5 factual and legal components of the case) and the need in particular circumstances to
6 advance considerations of compensation and deterrence." *Id.* at 1756 n.6.

7 Although the Ninth Circuit has not addressed whether the Supreme Court's
8 interpretation extended to the meaning of "exceptional case" in trademark cases,
9 district courts in this circuit have followed other circuits in finding that it does. *See,*
10 *e.g., Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC,
11 2016 WL 3211800, at *16 (S.D. Cal. Mar. 21, 2016), *reconsideration denied*, No.
12 12-CV-2472-AJB-KSC, 2016 WL 4077403 (S.D. Cal. Aug. 1, 2016); *Fitbug Ltd. v.*
13 *Fitbit, Inc.*, No. 13-1418 SC, 2015 WL 3543116, at *1 (N.D. Cal. June 5, 2015);
14 *Apple, Inc. v. Samsung Elecs. Co.*, Case No.:11–CV–01846–LHK, 2014 WL
15 4145499, at *6 (N.D. Cal. Aug. 20, 2014); *see also Georgia–Pacific Consumer*
16 *Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir.2015) *as amended* (Apr.
17 15, 2015) (concluding that because "the language of § 1117(a) and § 285 is identical
18 . . . there is no reason not to apply the *Octane Fitness* standard when considering the
19 award of attorneys fees under § 1117(a)"); *Fair Wind Sailing, Inc. v. Dempster*, 764
20 F.3d 303, 315 (3d Cir.2014) (applying *Octane Fitness* standard to Lanham Act
21 claims). Even before *Octane Fitness*, the Ninth Circuit applied a similar standard,
22

finding that a case is exceptional where it "is *either* "groundless, unreasonable, vexatious, *or* pursued in bad faith." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (emphasis in original) (affirming exceptional case finding where plaintiff's claim was "groundless and unreasonable because it had no legal basis"); *see also Stone Creek Inc. v. Omnia Italian Design Inc.*, No. CV-13-00688-PHX-DLR, 2016 WL 492629, at *1 (D. Ariz. Feb. 9, 2016) (recognizing the Ninth Circuit's standard in *Cairns*).

The Court need not determine whether to apply *Octane Fitness* or the Ninth Circuit's prior exceptional case standard from *Cairns*, because this case is exceptional under either standard. As demonstrated in Section II, *supra*, Plaintiff had no reasonable legal basis to believe her complaint could succeed on the merits. Plaintiff does not allege, nor could she, that she had any rights in the HeidiPowell.com domain name when the Defendants registered that name in 2005. Accordingly, Defendants could not have registered the domain name with either a bad faith intent to profit from her non-existent mark or a specific intent to profit from Plaintiff's then-different name, and Plaintiff's complaint had "no legal basis." Even if Plaintiff somehow could have alleged a prima facie case of cybersquatting, which she cannot, she could not have overcome Defendants' reasonable belief that registering a domain name that correlated directly to Defendant Heidi Powell's name was legal and therefore protected under the ACPA's statutory safe harbor provision.

1    Under these circumstances, Plaintiff's complaint was groundless,
2 unreasonable, vexatious, *and* pursued in bad faith, any of which would justify an
3 award of attorneys' fees under Section 1117(a).

4 **IV.   CONCLUSION**

5    For the foregoing reasons, the Court should grant Plaintiff's Motion for
6 Voluntary Dismissal *with prejudice* and with no effect on Defendants'
7 counterclaims, which shall remain pending for independent adjudication.  The Court
8 should also find that this is an exceptional case and condition its dismissal on
9 Plaintiff's payment of the reasonable value of the services provides by Defendants'
10 counsel on a *pro bono* basis.

11

12    DATED this 16th day of September, 2016.

13                             **WILEY REIN LLP**

14                               /s/ David E. Weslow /s/
                                 David E. Weslow
15                               Ari S. Meltzer
                                 *Attorneys for Defendants*
16                               *Kent and Heidi Powell*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such Filing (NEF) to the following:

>Maria Crimi Speth, Esq.
>Laura Rogal, Esq.
>Jaburg & Wilk, P.C.
>3200 N. Central Avenue, 20th Floor
>Phoenix, AZ 85012
>*Counsel for Plaintiff*

>   /s/ David E. Weslow /s/
>David E. Weslow
>Ari S. Meltzer
>*Attorneys for Defendants*
>*Kent and Heidi Powell*