**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Maria Crimi Speth (012574)
mcs@jaburgwilk.com
Laura Rogal (025159)
lar@jaburgwilk.com

Attorneys for Plaintiff

## United States District Court

## For The District Of Arizona

| | |
|---|---|
| Heidi Powell, an Arizona resident, | Case No. 2:16-cv-02386-SRB |
| Plaintiff, | |
| v. | **Plaintiff's Reply in Support of Voluntary Dismissal** |
| Kent Powell and Heidi Powell, husband and wife, | (Assigned to the Hon. Susan R. Bolton) |
| Defendants. | |

Plaintiff Heidi Powell hereby files her Reply in Support of Voluntary Dismissal. The lawsuit was not brought in bad faith, the case is not an "exceptional case" justifying an award of fees, and no other reasonable grounds exist to grant fees and costs to Defendants' *pro bono* counsel. Thus, Plaintiff reiterates her request to dismiss the lawsuit in accordance with her initial Motion for Voluntary Dismissal and deny Defendants' attempt to alter the requested dismissal. This Reply is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  FACTUAL BACKGROUND

Defense counsels' aggressive filing is a publicity stunt. The lawsuit was not brought in bad faith—nor was it a Rule 11 violation. A good faith argument for

18796-18796-00001\AKH\AKH\2240339.2

cybersquatting exists where a party registers and "parks" a domain name solely for the purpose of keeping it from others and does not begin using the domain name until they become aware it is someone else's trademark. That is what appears to have happened here. While reasonable minds could admittedly differ based on specific facts of a case, this hardly makes a lawsuit "bad faith" or a "Rule 11 violation." Plaintiff's assertion to that effect is absurd.

Moreover, before Defendants filed the Answer and Counterclaim, Plaintiff offered to dismiss the lawsuit if Defendants would simply provide proof of use of the domain name for email prior to Plaintiff's use in commerce in connection with her trademark. *See* Letter dated August 26, 2016, attached hereto as **Exhibit A**. Defendant refused to provide the information and instead filed the Answer and Counterclaim on September 9, 2016. Plaintiff then learned that the domain name was never listed on Defendants' bankruptcy schedules when Defendants filed bankruptcy in 2012. Thus, the domain name was not even properly owned by Defendants and still belonged to the bankruptcy estate.

The parties then entered into an agreement to mutually dismiss the lawsuit with prejudice. *See* Subsection II.B. *infra*. Plaintiff drafted the joint stipulation, and Defendants even revised it. Almost immediately thereafter, however, Defendants sent a letter purporting to revoke the agreement and threatening to file a Rule 11 motion if Plaintiff did not unilaterally dismiss the complaint. *See id*. Plaintiff filed the current Motion to Dismiss in compliance with her obligation under the agreement.

It was initially unclear why Defendants suddenly tried to repudiate the agreement. However, Plaintiff soon learned that defense counsel decided to use an aggressive litigation stance to generate publicity for themselves and their law firm. Defense counsel (who are from Washington, D.C.) are representing Defendant on a *pro bono* basis, presumably because Plaintiff is a fitness celebrity, and the case, therefore,

18796-18796-00001\AKH\AKH\2240339.2

had the potential to be high profile. Within days of when Defendants purported to revoke the agreement, Plaintiff learned that defense counsel was distributing press releases about the lawsuit to the media, touting their aggressive stance and highlighting their involvement in the litigation. *See* Ari S. Meltzer, *Press Release: Phoenix-Based Former Reality Star in Hot Water After Suing Grandmother with Same Name*, dated September 20, 2015, attached hereto as **Exhibit B**.[1] Apparently, defense counsel's "change-of-heart" and decision to forge ahead with pointless litigation was motivated, not by Defendants' best interests, but by *defense counsel*'s own interest in free publicity.

## II.   ARGUMENT

### A.   Plaintiff's Claims Are Not Meritless

The claims that Plaintiff seeks to dismiss have merit. Due to the nature of this briefing, Plaintiff will simply cover the high points to demonstrate the lawsuit was brought in good faith.

Plaintiff Heidi Powell is a fitness celebrity who has published several books, has appeared on various television shows, and is very active in online media. She is well known in the fitness community, and has been featured on ABC's reality weight-loss television show Extreme Weight Loss. Years ago, Plaintiff attempted to obtain the domain name <heidipowell.com>. She assumed the domain name was available because it was merely a placeholder and had never been put into use. She soon found, however, that the domain name was not available because it had been reserved by someone else—

---

[1] Defense counsel got their publicity. The story they were pitching received coverage in the Arizona Republic and in USA Today. *See* Robert Anglen, *Arizona reality TV star Heidi Powell sues Heidi Powell over website*, ARIZONA REPUBLIC, (Sep. 23, 2016), *available at* http://www.azcentral.com/story/news/local/arizona/2016/09/23/arizona-reality-tv-star-heidi-powell-sues-grandmother-over-domain-name/90842984/; Robert Anglen, *TV Star Heidi Powell sues grandmother Heidi Powell over website*, USA TODAY, available at http://www.usatoday.com/story/life/nation-now/2016/09/23/tv-star-heidi-powell-sues-grandmother-heidi-powell-over-website/90916602/.

18796-18796-00001\AKH\AKH\2240339.2

Defendants—who were merely parking the site and had been for years. Plaintiff made various attempts to reach out to the owner to try to purchase the site. At one point, Defendants demanded $50,000.

Sometime thereafter, Defendants posted content on the site, which links to their web development and design services and benefits from increased traffic intended for Plaintiff.[2] Plaintiff filed a lawsuit based on cybersquatting because the domain name had sat dormant and unused for years and was only recently populated with content to exploit the value created by Plaintiff's interest in the site and by web-traffic confusion.

Defense counsel argues the lawsuit was filed in bad faith because Defendant did not have a bad-faith intent to profit from Plaintiff's mark at the time the domain name was registered. But, the purpose of the Lanham Act is, *inter alia*, to encourage and protect productive use in commerce. *See, e.g.*, *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 163–64, 115 S.Ct. 1300 (1995); *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1119 (Fed. Cir. 1985) ("The principal purpose of the Lanham Act was the modernization of trademark law, to facilitate commerce and to protect the consumer."). The protection granted by the Act does not extend where use is neither intended nor achieved. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012) (explaining that the Lanham Act grants protection only where there is a bona fide use in commerce); *see also* 15 U.S.C. § 1127 (protection under the Lanham Act applies where there is "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark."). Similarly, good-faith, safe-harbor protection cannot apply under the ACPA portion of the Lanham Act where use of the domain is neither intended nor achieved. Congress intended the cybersquatting statute to make rights to a domain name registration contingent on ongoing conduct rather than

---

[2] In a conference call between Plaintiff's counsel and defense counsel, defense counsel stated Defendants have, in fact, received various mistaken inquiries from gyms.

18796-18796-00001\AKH\AKH\2240339.2

make them fixed at the time of registration. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 385 (2d Cir. 2003).

Defense counsel relies heavily on *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011). They argue the lawsuit was brought in bad faith because *GoPets* is dispositive. However, the facts of this case are distinct from *GoPets*. In *GoPets*, the initial registrant acquired the domain name with a business plan and a true intent to use the domain. *Id*. at 1026–27. That is not the case here. Notably, the *GoPets* Court specifically stated the safe-harbor provision of the ACPA "should be invoked 'very sparingly and only in the most unusual cases.'" *Id*. at 1033 (quoting *Lahoti v. VeriCheck, Inc*., 586 F.3d 1190, 1203 (9th Cir. 2009)) ("A defendant 'who acts even partially in bad faith' cannot successfully assert a safe harbor defense.").

In a case in the Second Circuit, *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, the court found bad-faith intent where the owner of the infringing domain registered the site to keep it from others and then quickly constructed a site in attempt to show a legitimate use. 202 F.3d 489, 499, 53 U.S.P.Q.2d 1570 (2d Cir. 2000). The court held that these actions constituted "ample and overwhelming evidence that, as a matter of law, [the domain registrant] acted with 'bad faith intent to profit' from the domain name . . . as those terms are used in the ACPA." *Id*. Here, only after Plaintiff's trademark became distinctive did Defendants post content on the domain and funnel visitors to her web-design business, capitalizing on the traffic generated by confusion with Plaintiff's mark.

Moreover, while the *GoPets* Court indicated a registrant must have bad faith at the time of the *initial* registration (657 F.3d at 1032), other circuits have held that bad faith intent during *re*-registration is sufficiently encompassed within the plain meaning of registration in the statute. *See, e.g.*, *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 777 (11th Cir. 2015) ("It would be nonsensical to exempt the bad-faith re-registration of a

18796-18796-00001\AKH\AKH\2240339.2

1  domain name simply because the bad-faith behavior occurred during a noninitial
2  registration, thereby allowing the exact behavior that Congress sought to prevent."");
3  *Schmidheiny v. Weber*, 319 F.3d 581, 582 (3d Cir. 2003) ("We do not consider the
4  'creation date' of a domain name to control whether a registration is subject to the Anti-
5  cybersquatting Act, and we believe that the plain meaning of the word 'registration' is
6  not limited to 'creation registration.'"). Thus, the circuit split definitively demonstrates
7  there is "a nonfrivolous argument for extending, modifying, or reversing existing law."
8  Fed. R. Civ. P. 11(b)(2).

9  Even still, other circuits—including another panel of the Ninth Circuit—have
10 held that, where a domain name is originally registered and used innocently, a registrant
11 may lose safe-harbor protection by later using the domain name with a bad-faith intent
12 to profit therefrom. *See, e.g., DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1219, 97
13 U.S.P.Q.2d 1022 (9th Cir. 2010) (good faith registration can turn into bad faith use); *see
14 also Newport News Holdings Corp. v. Virtual City Vision, Inc*., 650 F.3d 423, 437, 98
15 U.S.P.Q.2d 1441 (4th Cir. 2011) (same); *Virtual Works, Inc. v. Volkswagen of Am., Inc*.,
16 238 F.3d 264 (4th Cir. 2001) (same).

17 In response to Plaintiff's assertion that Defendant never used the website,
18 defense counsel stated Defendants have used the domain for email. Recognizing that
19 email use may sufficiently constitute use of the domain, Plaintiff's counsel informed
20 defense counsel that Plaintiff would dismiss the lawsuit if Defendants would simply
21 provide proof of email use. Yet the next time Plaintiff's counsel heard anything from
22 defense counsel was upon receipt of service of the Answer and Counterclaim. Defense
23 counsel explained Defendants would not provide the requested information because
24 they had no obligation to do so, and, in any event, Defendants only had emails going
25 back a couple of years.

26

Nevertheless, Plaintiff decided to dismiss the lawsuit on Defendants' assertion that the domain name was used for email. Moreover, Plaintiff learned that Defendants did not actually own the domain name because they had not disclosed the domain name in a recent bankruptcy. Thus, Plaintiff withdrew the action almost immediately. At the time of voluntary dismissal, no discovery had been conducted. Also, Plaintiff had given Defendants the opportunity to forego filing an answer if they would simply provide evidence of email usage. But defense counsel chose to incur the expense of both an Answer and Counterclaim rather than provide this basic information.

At this point, whether Plaintiff would have prevailed is irrelevant. A good faith claim unquestionably exists. Defense counsel's aggressive attempt to inflame the situation to generate press is unwarranted and inappropriate.

### B.     The Parties Had a Binding Agreement to Dismiss the Lawsuit.

Defense counsel's objection to the voluntary motion to dismiss is further inappropriate because the parties' had agreed to dismiss the lawsuit. Plaintiff offered a mutual dismissal of the lawsuit. *See* Letter dated September 9, 2016, attached hereto as **Exhibit C**. Defendants responded that they would only dismiss if it was with prejudice. *See* Letter dated September 13, 2016, attached hereto as **Exhibit D**. Plaintiff agreed, and, accordingly, provided the appropriate joint motion to dismiss. *See* Email dated September 14, 2016, attached hereto as **Exhibit E**. Thus, the parties had a binding agreement to mutually dismiss the case. *See* LRCiv. 83.7; *Lamb v. Arizona Country Club,* 124 Ariz. 32, 34, 601 P.2d 1068, 1070 (App. 1979) (holding that contract principles applied to enforceability of negotiated settlement). But, shortly after Plaintiff provided a draft joint motion to dismiss, defense counsel responded, stating they revoked the agreement to dismiss. *See* Letter dated September 15, 2016, attached hereto as **Exhibit F**. Defendants could not revoke their assent in light of the binding agreement. Therefore, Plaintiff will shortly follow this Reply with a separate motion to

18796-18796-00001\AKH\AKH\2240339.2

enforce settlement and/or a motion to dismiss Defendants' counterclaims on grounds they lack merit.

### C. Defendants' Claims Are Meritless.

Further evidencing defense counsel's sole objective of generating publicity for themselves, Defendants' counterclaims are meritless. Defendant pled two causes of action under the ACPA. Both counts require that the opposing party take some action to interfere with the registrant's use of the domain name through a domain name registrar, registry, or other registration authority (for instance, in the UDRP procedure). But Plaintiff has not done that.

Defendants' first count, under 15 U.S.C. § 1114(2)(D)(v)), provides as follows:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

The reference to "a policy described under clause (ii)(II)" means "the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark." 15 U.S.C. § 1114(2)(D)(ii)(II). And the only remedy available is injunctive relief to reverse the action taken under the registrar's policy. *Id*. § 1114(2)(D)(v)). Since neither registrar nor Plaintiff have taken any such action, this counterclaim will fail.

The second cause of action, under 15 U.S.C. § 1114(2)(D)(iv), similarly provides as follows:

> (iv) **If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation** by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

There, the "action described under clause (ii)" refers to actions taken by either a court order or a registrar, registry, or other registration authority to refuse registration, remove registration, transfer, temporarily disable, or permanently cancel a domain name. *Id*. § 1114(2)(D)(iv). But, again, "a registrar, registry, or other registration authority" has taken no action to date. And, although clearly a factual issue, Plaintiff also has not made any "knowing and material misrepresentation." Indeed, Plaintiff has a valid trademark in her name, and Defendants have parked a domain name that is identical to the Plaintiff's mark. Moreover, a claim under this subsection is essentially a claim for abuse of process or malicious prosecution, and already comes with a heavy burden of proof. *See* 5 McCarthy on Trademarks and Unfair Competition § 25A:38 (4th ed.) ("[T]he burden of proving such a claim is heavy, requiring proof that the mark owner made a 'knowing and material misrepresentation.'").

And, of course, Defendants further lack standing to assert the counterclaims because the domain name remains the property of the bankruptcy trustee, having failed to disclose the domain name as an asset on their bankruptcy schedules. *See* Order Reopening Chapter 7 Case (doc. 20), *In re Powell*, 12-11140-MLB (Bankr. W.D. Wash. Sep. 19, 2016).

18796-18796-00001\AKH\AKH\2240339.2

### D. Fees Against Plaintiff Are Unwarranted.

Defendants argue this is an "exceptional case" and asks for an award of fees and costs incurred defending against this action. (Doc. 16, p. 14). For support, they cite the Lanham Act's fee-shifting prevision entitling *the prevailing party* to an award of fees in *exceptional* cases. (*Id*.) But Defendants have not been determined the prevailing party. Despite defense counsel's attempt to argue the case on the pleadings, the issue of who would prevail is not at issue. Plaintiff voluntarily dismissed the lawsuit in part because she learned that Defendants no longer owned the domain name at issue. And, as demonstrated above, despite defense counsel's aggressive attempt to push the counterclaims forward, Defendants' counterclaims are meritless and will fail. When given the opportunity to cause the case to be dismissed prior to filing the Answer and Counterclaims, defense counsel chose to take the aggressive route and incur the unnecessary expense.

Furthermore, this case is far from exceptional—save for defense counsel's decision to put Defendants at risk for the sake of generating press coverage for themselves. Plaintiff articulated reasonable causes of action in good faith. Even if the Court would have determined the claims were not ultimately meritorious, Plaintiff withdrew her complaint at the outset of the case. There is no justification for awarding fees to Defendants under the circumstances.

Thus, an award of fees to Plaintiff is unwarranted.

### III. CONCLUSION

Plaintiff respectfully requests that the Court enter Plaintiff's request to voluntarily dismiss her claims, and deny Defendants' request to alter the requested dismissal.

18796-18796-00001\AKH\AKH\2240339.2

DATED this 23d day of September, 2016.

**Jaburg & Wilk, P.C.**

/s/ Maria Crimi Speth
Maria Crimi Speth
Laura Rogal
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff

*Certificate of Service*

I hereby certify that on September 23, 2016, I electronically transmitted the attached document and exhibits to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David E. Weslow
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006

Ari Scott Meltzer
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006

/s/   Aaron K. Haar

18796-18796-00001\AKH\AKH\2240339.2