**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

David E. Weslow (*pro hac vice*)
dweslow@wileyrein.com

Ari S. Meltzer (*pro hac vice*)
ameltzer@wileyrein.com

Attorneys for Defendants Kent and Heidi Powell

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Powell,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Kent Powell and Heidi Powell,<br><br>　　　　　　　　Defendants. | Case No.  2:16-cv-02386-SRB<br><br>**Surreply in Response to Plaintiff's Motion for Voluntary Dismissal**<br><br>(Assigned to the Hon. Susan R. Bolton) |

## I.　INTRODUCTION

It should not be lost among the *ad hominem* attacks[1] and misstated or otherwise irrelevant factual assertions in Plaintiff's Reply in Support of Voluntary Dismissal ("Pl.'s Reply") that: (1) *GoPets v. Hise*, 657 F.3d, 1024 (9th Cir. 2011) was controlling law in this Circuit when Plaintiff filed her complaint and remains controlling law in this district

---

[1] Although Plaintiff castigates undersigned counsel for daring to defend against her efforts to take the HeidiPowell.com domain name from Mr. and Mrs. Powell, this is exactly the type of case that members of the bar should undertake on a pro bono basis given the clearly baseless nature of the Plaintiff's claims and the limited means of the Defendants.

today; (2) under *GoPets*, a valid claim under the Anticybersquatting Consumer Protection Act ("ACPA") must allege bad faith intent to profit from the plaintiff's specific mark "at the time of registration"; (3) Defendants Kent and Heidi Powell ("Defendants") could not have had bad faith intent to profit from Plaintiff's mark when they registered the heidipowell.com domain name in 2005 because Plaintiff had no rights in a Heidi Powell mark at that time (nor was her name even Heidi Powell); and (4) even if the foregoing were not indisputable, the ACPA safe harbor protects Defendant Heidi Powell's registration of a domain name that corresponds to her own name.  It necessarily follows that Plaintiff's Complaint was groundless when filed and, therefore, that this is an exceptional case for which an award of attorneys' fees is appropriate.  Everything else in Plaintiff's Reply is smoke-and-mirrors intended to distract the Court from the clear legal issue before it.

II. **ARGUMENT**

    A. **Plaintiff's Complaint Should Be Dismissed With Prejudice.**

Plaintiff offers no valid basis for why she should be provided with a further opportunity to pursue her claims, and appears to concede that the complaint should be dismissed with prejudice.  Notwithstanding the Lanham Act's general goal of encouraging the use of trademarks in commerce, the ACPA—under which Plaintiff brought her claims—does not require a registrant to use his or her domain name in any particular way.  Rather, the central question in an ACPA case is whether the registrant had a subjective "bad faith intent to profit from" the plaintiff's specific

1  mark.  *See* 15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added); *Acad. of Motion Picture*

2  *Arts and Scis. v. GoDaddy.com, Inc.*, No. 13-cv-8458, 2015 WL 5311085, at *51-52

3  (C.D. Cal. Sept. 10, 2015) (contrasting "a generalized intent to profit with the

4  ACPA's *bad faith* intent to profit off [plaintiff's] *specific marks*") (emphasis in

5  original).

6        In *GoPets*, the Ninth Circuit was faced squarely with the question of whether

7  a party can have bad faith intent to profit from a mark that did not exist at the time

8  the domain name was registered.  The court concluded that it could not, emphasizing

9  that the trademark must have been distinctive "*at the time of registration* of the

10  domain name."  *GoPets*, 657 F.3d at 1030 (emphasis in original).  Plaintiff's feeble

11  attempt to distinguish *GoPets* on the basis that the initial registrant in *GoPets*

12  "acquired the domain name with a business plan and a true intent to use the domain"

13  is a distinction without a difference.  Given that Plaintiff did not and could not have

14  had trademark rights in the name Heidi Powell in 2005, Defendants' intent is

15  irrelevant, as they could not have had a bad faith intent to profit from Plaintiff's non-

16  existent mark.[2]

17

---

18  [2] Moreover, there is no factual basis for Plaintiff's argument in Plaintiff's Reply that Mr.
19  and Mrs. Powell had no plans for using the HeidiPowell.com domain name when they
purchased the name in 2005.  Plaintiff appears to be willing to make unequivocal factual
20  assertions based solely on Plaintiff's hope and belief that the statement is true.  Plaintiff
similarly alleged in Paragraph 23 of the complaint that the domain name had never been
21  used until approximately May 21, 2016—a factual misstatement that would have easily
been disproved by a proper pre-filing investigation.  Plaintiff also misconstrues counsel's
statement regarding phone calls from gyms.  *See* Pl.'s Reply at 4 n.2.  What Defense
22  counsel informed Plaintiff's counsel is that Defendants had been harassed by phone calls

3

1     The Ninth Circuit's decision in *GoPets* was controlling when Plaintiff filed
2  her complaint and remains controlling today.  It is a basic tenet of litigation that a
3  court cannot ignore "a clearly controlling decision that binds" it.  *Newdow v. Rio*
4  *Linda Union Sch. Dist.*, 597 F.3d 1007, 1043 (9th Cir. 2010).  District courts are
5  bound to follow the reasoning of prior circuit authority unless that authority has been
6  "effectively overrule[d]" or was "clearly irreconcilable" with higher authority.
7  *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740–41 (9th Cir. 2009); *see also*
8  *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir 2001) ("Circuit law . . . binds all
9  courts within a particular circuit, including the court of appeals itself.").  Because
10 *GoPets* is controlling in the Ninth Circuit, Plaintiff's reference to case law from
11 other circuits is irrelevant.

12    In asserting that the Ninth Circuit took a contrary position in *DSPT*
13 *International, Inc. v. Nahum*, 624 F.3d 1213, 1219 (9th Cir. 2010), Plaintiff ignores
14 the fact that, as Defendants' counsel previously advised Plaintiff's counsel, *GoPets*
15 overruled *DSPT International* and any contrary case law addressing the date of
16 registration that is the focus of an ACPA claim.  *See* Letter from David E. Weslow to
17 Maria Crimi Smith (Sept. 13, 2016), attached to Pl.'s Reply as Ex. D; *AirFX.com v.*
18 *AirFX, LLC*, No. CV 11-01064-PHX-FJM, 2013 WL 857976, at *2 (D. Ariz. Mar. 7,
19 2013) (explaining that *GoPets* "made it clear that a company's re-registration of a
20 domain name that was first registered 'long before [trademark owner] registered its

---

22 including hang ups and people pressing them to sell the domain name that traced to gyms in the Phoenix area (presumably Plaintiff and/or those acting on her behalf).

4

1 service mark' did not violate the ACPA, because the re-registration 'was not a
2 registration within the meaning of § 1125(d)(1)'"). Accordingly, although
3 Defendants' never used their domain name in a manner inconsistent with any rights
4 that Plaintiff claims to have developed, Defendants' subsequent use simply is not
5 relevant to Plaintiff's claims under the ACPA.[3]

6 Finally, Plaintiff provides no basis for the Court to conclude that Defendants'
7 registration and use of the HeidiPowell.com domain name was anything other a fair
8 use or otherwise lawful. While the ACPA's safe harbor should be narrowly
9 construed, Plaintiff does not dispute that a person using her legal name to form a
10 domain name has "reasonable grounds to believe that the use of the domain name
11 [is] fair and otherwise lawful." *See* Defs.' Obj. at 11 (citing *Yellowbrix, Inc. v.*
12 *Yellowbrick Sols., Inc.*, 181 F. Supp. 2d 575, 582 (E.D.N.C. 2001)). In fact, it is
13 difficult to conceive of a more fair use of a domain name than a person registering
14 their own name. Thus, while Plaintiff might believe that her rights are superior to all
15 other Heidi Powells in the United States, as a matter of law, Defendant Heidi
16 Powell's registration of the heidipowell.com domain name was reasonable and
17 entitled to protection under the ACPA's safe harbor.

18

---

19 [3] Although Defendants' subsequent use of the domain name is irrelevant given that they could not have bad faith intent at the time of registration, Plaintiff's own Complaint
20 contradicts her new-found allegation that "Defendants demanded $50,000." Pl.'s Reply at 4. In her Complaint, Plaintiff alleged that Defendants "refused to sell the Domain
21 Name to [Plainitff]." *See* Compl. ¶ 21. Plaintiff's original allegation was correct: Defendants never attempted to sell the domain name to Plaintiff due to its personal value
22 to Defendant Heidi Powell.

**B.     The Court Can and Should Condition Dismissal of Plaintiff's Claims on Payment of Defendants' Counsel's Fees and Costs.**

There is no dispute that the Court can and should find that this is an exceptional case that merits an award of attorneys' fees and costs.[4] While Plaintiff is correct that Section 1117(a) of the Lanham Act refers to an award to "the prevailing party," she simply ignores the case law cited in Defendant's brief that applies the same exceptional case standard to a case dismissed under Rule 41(a)(2). *See* Defs.' Obj. at 14 (citing *Chavez v. Northland Grp.*, No. CV-09-2521-PHX-LOA, 2011 WL 317482, at *4 (D. Ariz. Feb. 1, 2011)); *see also Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-CV-05438-JST, 2016 WL 540812, at *2 (N.D. Cal. Feb. 11, 2016) (recognizing that "[c]osts and fees may be imposed under 'exceptional circumstances' or pursuant to Federal Rule of Civil Procedure 11").

Further, contrary to Plaintiff's assertion, the Court need not determine that the Complaint was brought in bad faith to find that it is exceptional and award Defendants' attorneys' fees and costs. Even before the Supreme Court broadened the definition of an exceptional case in *Octane Fitness*, the Ninth Circuit found that a case is exceptional if it "is *either* 'groundless, unreasonable, vexatious, *or* pursued in bad faith.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002)

---

[4] The pro bono status of Defendants' counsel has no bearing on the propriety of an award of fees and costs. *See Dennis v. Chang*, 611 F.2d 1302, 1304-05 n.4 (9th Cir. 1980) ("An award of attorneys' fees . . . is not to be denied because counsel provided its legal representation without charge."). To the contrary, "[a]ttorneys' fees are recoverable by pro bono attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Legal Voice v. Stormans Inc.*, 757 F.3d 1015, 1017 (9th Cir. 2014).

(emphasis in original) (affirming exceptional case finding where plaintiff's claim was "groundless and unreasonable because it had no legal basis"); *see also Stone Creek Inc. v. Omnia Italian Design Inc.*, No. CV-13-00688-PHX-DLR, 2016 WL 492629, at *1 (D. Ariz. Feb. 9, 2016) (recognizing the Ninth Circuit's standard in *Cairns*).  Because Plaintiff's claims were groundless from the outset, this case is exceptional under both the *Cairns* and *Octane Fitness* standards.

Finally, Plaintiff's suggestion that Defense counsel "chose to incur" any expenses in this case, *see* Pl.'s Reply at 7, is outrageous given that: (1) Plaintiff never should have filed her Complaint in the first instance; and (2) although Defendants' counsel first advised Plaintiff's counsel on August 15, 2016 that *GoPets* and the ACPA safe harbor rendered her Complaint groundless, a fact that would have been revealed by a proper pre-filing investigation, Plaintiff did not move to dismiss the Complaint until exactly one month later.  *See* Letter from David E. Weslow to Maria Crimi Speth and Laura Rogal (Aug. 15, 2016), attached hereto as **Exhibit A**.  Plaintiff had 23 days from the date of Defendants' first letter to voluntarily dismiss the Complaint under Fed. R. Civ. P. 41(a)(1) before Defendants filed their Answer and Counterclaims.  Plaintiff, however, chose not to do so.  Instead, Plaintiff continued to assert that her claims had merit and she demanded pre-discovery production of documents from Mr. and Mrs. Powell in furtherance of her continuing efforts to burden the Powells and their attorneys with further expenses and emotional strain defending against her meritless claims.  Plaintiff must now face

the consequences of her unjustifiable inaction.

### C. Defendants' Counterclaims are Valid.

Although this is not the proper procedural posture to decide the validity of Defendants' counterclaims, Plaintiff's contention that "'a registrar, registry, or other registration authority' has taken no action to date" is simply false. *See* Pl.'s Reply at 11. The statute defines an "action" as "any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name" in the "implementation of a reasonable policy" by the registrar "prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark." 15 U.S.C. § 1114(2)(D)(ii)(II). At least one district court has held that placing a website under a registry lock qualifies as an "action" under the statute. *See GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 734–35 (N.D. Tex. 2010) (denying motion to dismiss counterclaim where registrar temporarily locked defendant's websites after receiving letters from plaintiff alleging that all of defendants' domain names were in violation of the ACPA). That is exactly what happened here. As a result of Plaintiff's actions, the heidipowell.com domain name is locked. *See* ICANN Whois Report for heidipowell.com (Sept. 28, 2016), attached hereto as Exhibit B (indicating status of "transfer prohibited" "update prohibited" "renew prohibited" and "delete prohibited"). Accordingly, Defendants should be permitted to pursue their counterclaims.

8

**D.      There Was No "Settlement Agreement" For the Court to Enforce.**

While it is true that counsel for the parties discussed the possibility of mutual dismissal and Defendants were willing to agree to a mutual dismissal that would have allowed them to keep the heidipowell.com domain name, there never was a meeting of the minds sufficient to establish a binding settlement agreement. "[B]efore a binding contract is formed, the parties must mutually consent to **all** material terms." *Hill-Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990) (emphasis added). Moreover, for a contract to form, there must be both "manifestation of mutual assent to the exchange and a consideration." *Id.* (quoting Restatement (Second) of Contracts § 17 (1979)).

Here, there was never mutual assent or consideration for a joint dismissal. On September 14, 2016, Plaintiff's counsel sent to Defendants' counsel a draft stipulation and proposed order (Plaintiff's offer). The following day, Defendants' counsel sent a counter-offer, specifying that "Defendants Kent Powell and Heidi Powell shall retain ownership of the HeidiPowell.com domain name." *See* E-mail from Ari Meltzer to Maria Crimi Speth (Sept. 15, 2016, 1:59 p.m.), attached hereto as **Exhibit C**. Shortly thereafter, Defendants' counsel learned that Plaintiff, in an end-around to this litigation that she commenced, offered the trustee in Defendants' 2012 bankruptcy case $10,000 to reopen the long-dormant case and force the sale to her of the heidipowell.com domain name. [5]  Thus, Defendants withdrew their

---

[5] *See* Robert Anglen, *Arizona reality TV star Heidi Powell sues Heidi Powell over website*, ARIZONA REPUBLIC, (Sep. 23, 2016), *available at*

9

counter-offer. Because there was no meeting of the minds that Defendants would retain ownership of the heidipowell.com domain name, there is no settlement agreement for the Court to enforce.

## III. CONCLUSION

For the foregoing reasons and those stated in Defendants' Objection, the Court should grant Plaintiff's Motion for Voluntary Dismissal *with prejudice* and with no effect on Defendants' counterclaims, which shall remain pending for independent adjudication. The Court should also find that this is an exceptional case and condition its dismissal on Plaintiff's payment of the reasonable value of the services provides by Defendants' counsel on a *pro bono* basis.

DATED this 26th day of September, 2016.

**WILEY REIN LLP**

　　/s/ David E. Weslow /s/
David E. Weslow
Ari S. Meltzer
*Attorneys for Defendants*
*Kent and Heidi Powell*

---

http://www.azcentral.com/story/news/local/arizona/2016/09/23/arizonareality-tv-star-heidi-powell-sues-grandmother-over-domain-name/90842984/ ("Powell the Trainer has offered $10,000 to buy the domain name from the bankruptcy trustee in Washington, who this month asked the court to reopen the closed case.").

10

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of September 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such Filing (NEF) to the following:

>Maria Crimi Speth, Esq.
>Laura Rogal, Esq.
>Jaburg & Wilk, P.C.
>3200 N. Central Avenue, 20th Floor
>Phoenix, AZ 85012
>*Counsel for Plaintiff*

>    /s/ David E. Weslow /s/
>David E. Weslow
>Ari S. Meltzer
>*Attorneys for Defendants*
>*Kent and Heidi Powell*