**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

David E. Weslow (*pro hac vice*)
dweslow@wileyrein.com

Ari S. Meltzer (*pro hac vice*)
ameltzer@wileyrein.com

Attorneys for Defendants Kent and Heidi Powell

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Powell, | Case No.  2:16-cv-02386-SRB |
| Plaintiff, | **Response in Opposition to Plaintiff's Motion to Enforce Settlement Against Defendants** |
| v. | |
| Kent Powell and Heidi Powell, | |
| Defendants. | (Assigned to the Hon. Susan R. Bolton) |

Defendants Kent Powell and Heidi Powell ("Defendants" or "Mr. and Mrs. Powell"), by counsel and pursuant to Local Civil Rule 7.2(c), hereby oppose Plaintiff Heidi Powell ("Plaintiff")'s Motion to Enforce Settlement Against Defendants ("Pl.'s Mot.") and state as follows:

## I.    <u>INTRODUCTION</u>

If it was not bad enough that Plaintiff has attempted to abuse the trademark laws to bully a senior citizen couple into relinquishing a domain name that they rightfully purchased years before Plaintiff could have developed any rights in the name, Plaintiff

1   now attempts to enlist the Court in her reprehensible effort to cause Mr. and Mrs.

2   Powell to relinquish their legitimate claims.  While it is true that the parties

3   exchanged correspondence about potentially dismissing this case with prejudice,

4   such a potential settlement was both explicitly and implicitly premised on Plaintiff

5   discontinuing her efforts to steal Mr. and Mrs. Powell's domain name.  Not only is

6   Plaintiff continuing in her efforts to steal the domain name (*i.e.*, engage in reverse

7   domain name hijacking), but it is now clear that Plaintiff did not approach the

8   settlement discussions in good faith.  At the same time that she was proposing to

9   dismiss her claims, Plaintiff was pursuing an end-around her own litigation so as to

10   continue with her attempted reverse domain name hijacking, negotiating with the

11   trustee in Mr. and Mrs. Powell's long terminated 2012 bankruptcy to forcibly acquire

12   the domain name via the trustee.[1]  There was no meeting of the minds on settlement,

13   and Plaintiff's arguments to the contrary are nearly as frivolous as her original claim.

14   **II.    COUNTER-STATEMENT OF FACTS.**

15       Plaintiff filed her meritless Complaint on July 18, 2016.  *See* ECF No. 1.

16   Upon being retained, Defendants' Counsel immediately undertook efforts to

17   convince Plaintiff to dismiss the Complaint and cease her attempts to interfere with

18   Mr. and Mrs. Powell's use of a domain name that they had properly registered in

19   2005—five years before Plaintiff changed her name to Heidi Powell.  In a letter

20   dated August 15, 2016, Defense counsel explained in detail why a proper pre-filing

21   

22   [1] Defendants do not address the flaws in Plaintiff's bankruptcy theory in this Opposition, as it is outside the jurisdiction of this Court.

investigation would have determined that Plaintiff's claims lacked merit and demanded that Plaintiff withdraw her Complaint or face Rule 11 sanctions.  *See* Letter from David E. Weslow, Counsel for Defendants to Maria Crimi Speth, Counsel for Plaintiff (Aug. 15, 2016), attached hereto as **Exhibit A**.  When Plaintiff failed to withdraw her frivolous Complaint, Defendants served upon Plaintiff's counsel a motion for sanctions pursuant to Fed. R. Civ. P. 11, again demanding that Plaintiff dismiss her Complaint.  *See* Letter from David E. Weslow to Maria Crimi Speth (Aug. 29, 2016), attached hereto as **Exhibit B**.  When it became clear that Plaintiff would not admit that her claims were legally flawed (relying on overturned cases and decisions of other circuits that could not be reconciled with the law in this Circuit and demanding burdensome pre-discovery production of documents), Mr. and Mrs. Powell filed their Answer and Counterclaims.  *See* ECF No. 13.

On September 9, 2016, Plaintiff's counsel sent the letter attached as Exhibit A to Plaintiff's Motion, which stated that "my client is willing to dismiss the lawsuit in exchange for dismissal of the counterclaim, each side to bear their own costs."  On September 13, 2016, Defendants' Counsel responded in the letter attached as Exhibit B to Plaintiff's Motion (the "September 13 Letter"), indicating that "in the interest of resolving this matter and allowing our clients to move on with their lives," Defendants would only agree to a dismissal "with prejudice" and requesting "a ***draft*** stipulated dismissal with prejudice" (emphasis added).  On September 14, 2016, Plaintiff's counsel sent the e-mail attached as Exhibit C to Plaintiff's Motion (the

"September 14 Letter"), indicating that she was providing "**drafts** of a stipulation and proposed order" (emphasis added).  The following day, Defendants' counsel sent a revised stipulation, specifying that "Defendants Kent Powell and Heidi Powell shall retain ownership of the HeidiPowell.com domain name."  *See* E-mail from Ari Meltzer to Maria Crimi Speth (Sept. 15, 2016, 1:59 p.m. ET), attached hereto as **Exhibit C**.

Shortly thereafter, Defendants' counsel learned that Plaintiff, in an end-around to this litigation that she commenced, offered the trustee in Defendants' 2012 bankruptcy case $10,000 to reopen the long-dormant case and force the sale to her of the heidipowell.com domain name.[2]  Because it was clear that there was no meeting of the minds on the essential term of settlement, i.e., Mr. and Mrs. Powell's continued ownership of the domain name, Defense counsel sent the letter attached as Exhibit D to Plaintiff's Motion stating that Defendants will not consent to dismissal of their counterclaims.  Plaintiff now argues that the settlement negotiations that she undertook while concealing her "plan b" to steal the domain name not only resulted in a binding settlement agreement, but that this alleged settlement agreement does not include the one key term of consequence—Mr. and Mrs. Powell's continued

---

[2] According to a media report, Plaintiff "has offered $10,000 to buy the domain name from the bankruptcy trustee in Washington, who this month asked the court to reopen the closed case."  *See* Robert Anglen, *Arizona reality TV star Heidi Powell sues Heidi Powell over website*, ARIZONA REPUBLIC, (Sep. 23, 2016), *available at* http://www.azcentral.com/story/news/local/arizona/2016/09/23/arizonareality-tv-star-heidi-powell-sues-grandmother-over-domain-name/90842984/).

ownership of their domain name—and does not require Plaintiff to dismiss her claims with prejudice.

## III.   **ARGUMENT**

### A.   **The Parties Never Entered Into a Binding Settlement Agreement.**

While the parties discussed the possibility of mutual dismissal and Mr. and Mrs. Powell were willing to agree to a mutual dismissal that would have allowed them to keep the heidipowell.com domain name, an agreement to exchange "drafts" is insufficient to establish a binding settlement agreement.   Whether the parties intended to be bound such that a contract has formed is a question of fact.   *See Burkett v. Morales*, 626 P.2d 147, 148 (Ariz. Ct. App. 1981). "[B]efore a binding contract is formed, the parties must mutually consent to **all** material terms."   *Hill-Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990) (emphasis added).   When determining whether a document is binding or nonbinding, a court should look to the surrounding circumstances and the conduct of the parties to determine the parties' intent.   *Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 612 (Ariz. Ct. App. 1998).   A court should only find that a contract has formed where there is both "manifestation of mutual assent to the exchange and a consideration."   *Hill-Shafer P'ship*, 799 P.2d at 814 (quoting Restatement (Second) of Contracts § 17 (1979)).

Here, the only possible conclusion is that the parties' negotiations toward a settlement agreement did not reflect mutual assent to the terms of a joint dismissal

given Mr. and Mrs. Powell's insistence that any settlement would be premised on their continued ownership of the domain name and given Plaintiff's ongoing contrary efforts to steal the domain name.  It is a basic premise of contract law that "[t]he preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself."  *California & Hawaiian Sugar Ref. Corp. v. Mason By-Prod. Co.*, 23 F.2d 436, 437 (9th Cir. 1928).  "An agreement to make an agreement binds no one."  *Nationwide Res. Corp. v. Ngai*, 630 P.2d 49, 52 (Ariz. Ct. App. 1981).  The plain language of Defense counsel's communications clearly demonstrates the absence of an agreement.  In the September 13 Letter, Defendants' counsel wrote that "in the interest of resolving this matter and allowing our clients to move on with their lives," Defendants were willing to agree to a mutual dismissal subject to: (1) the dismissal being with prejudice; and (2) review of a draft stipulation.  At most, then, this was an agreement to make an agreement.  The September 14 Letter from Plaintiff's counsel acknowledged that negotiations were ongoing, referencing the "***draft*** stipulation and proposed order."  Mr. and Mrs. Powell did not accept this draft, but instead sent a revised version making explicit the implicit understanding that "Defendants Kent Powell and Heidi Powell shall retain ownership of the HeidiPowell.com domain name."  Before Plaintiff's counsel responded, Mr. and Mrs. Powell learned of Plaintiff's pursuit of a "plan b" to

1  continue her attempted reverse domain name hijacking and withdrew their offer.

2  Thus, there was no meeting of the minds.[3]

3    Ignoring Plaintiff's deception and unclean hands (addressed in Section III.B,

4  *infra*), Plaintiff's interpretation of contract law would upend common practices in

5  litigation.  If a party could simply run to court and obtain enforcement of terms

6  discussed as part of settlement negotiations, no party would engage in settlement

7  negotiations out of a fear that opposing counsel could obtain court ordered settlement

8  based on a mere expression of a willingness to enter into a to-be-drafted settlement

9  agreement.  Such a result cannot be reconciled with the federal policy favoring

10  amicable resolution of pending claims.  *See, e.g.*, *Pony v. Cty. of Los Angeles*, 433

11  F.3d 1138, 1144 (9th Cir. 2006) (recognizing a "federal policy of encouraging

12  settlement").

13    Moreover, even if the Court could somehow find that the parties' negotiation

14  created a meeting of the minds, it could not find necessary consideration for

15  dismissal of Mr. and Mrs. Powell's counterclaims.  Consideration requires a benefit

16  to the promisor or a loss or detriment to the promisee; where there is no benefit

17  conferred on the promisor or detriment to the promisee, there can be no

18  consideration.  *See Federal Rubber Company v. Pruett*, 98 P.2d 849 (1940).  Here,

19

20  _____

   [3] If Plaintiff truly believed that there was a meeting of the minds, she would have sought

21  to dismiss her Complaint **with prejudice**.  She did not.  *See* ECF No. 15. It is thus evident
   that Plaintiff did not believe there was a settlement agreement when she filed her motion

22  to dismiss, and only determined *post hac* to attempt to manufacture a meeting of the
   minds.

the only consideration offered by Plaintiff was the dismissal of the Complaint, in which Plaintiff sought, as her sole damages, a transfer of the heidipowell.com domain name from Mr. and Mrs. Powell to Plaintiff.  If, notwithstanding the dismissal, Mr. and Mrs. Powell still would have to transfer the domain name to Plaintiff, then the dismissal would have conferred no benefit upon Mr. and Mrs. Powell and no detriment upon Plaintiff.  Put another way, because the only value of the dismissal to Mr. and Mrs. Powell was retention of the heidipowell.com domain name, if Plaintiff's dismissal would not result in Mr. and Mrs. Powell retaining the domain name, there was no benefit, and thus, consideration was lacking and there was no agreement.

**B.**      **Even if There Was an Agreement, It is Not Enforceable.**

Even if Court somehow finds that the parties entered into a settlement agreement, it should not enforce that agreement due to Plaintiff's undisclosed efforts to undermine the agreement before it had formed.

***Fraudulent Concealment--***First, where a party enters into a transaction due to a fraudulent concealment by the other party, it is proper to rescind the fraudulently formed contract.  *See Jennings v. Lee*, 461 P.2d 161, 165 (Ariz. 1969).  Fraudulent concealment occurs where a party conceals a material existing fact that in equity and good conscience should be disclosed; the party knows that such a fact is being concealed; the party from whom the fact is concealed is ignorant of that fact; the party concealing the fact intends that the concealment be acted upon; and there is

action on the concealment.  *Coleman v. Watts*, 87 F.Supp.2d 944, 952 (D. Ariz. 1998).  Here, Plaintiff knew when she proposed a mutual dismissal of this action that she had been negotiating with the trustee from Mr. and Mrs. Powell's 2012 bankruptcy case as an alternate means for stealing Mr. and Mrs. Powell's domain name.  Had Mr. and Mrs. Powell known that Plaintiff was trying to steal the domain name through other means, they never would have even contemplated a mutual dismissal of the parties' claims.  Thus, any "agreement" is unenforceable due to Plaintiff's fraudulent concealment.

*Unilateral Mistake*--Second, where a party enters into a contract based on a unilateral mistake, the contract should not be enforced.  *See City of Scottsdale v. Burke*, 504 P.2d 552, 556 (Ariz. 1972) (citing *Korrick v. Tuller*, 27 P.2d 529 (Ariz. 1933); *Lane v. Mathews*, 251 P.2d 303 (Ariz. 1953)).  "A unilateral mistake that has a material effect on the agreed exchange of performances and that is adverse to the mistaken party renders a contract voidable if the mistaken party does not bear the risk of the mistake and the other party had reason to know of the mistake or that party's fault caused the mistake."  *United States v. Talley Def. Sys., Inc.*, 393 F. Supp. 2d 964, 972 (D. Ariz. 2005), *judgment entered sub nom. United States v. Talley Def. Sys., Inc*. (D. Ariz. Apr. 19, 2006).  Here, when negotiating the terms of a mutual dismissal, Mr. and Mrs. Powell mistakenly believed that Plaintiff's dismissal with prejudice would bring an end to Plaintiff's efforts to steal the domain name that Mr. and Mrs. Powell have rightfully owned since 2005.  By attempting to circumvent

her own litigation, however, Plaintiff caused the mistake, which was material, as evidenced by the fact that Mr. and Mrs. Powell withdrew their settlement proposal upon learning of the mistake.  Thus, to the extent a contract formed, it should not be enforced.

*Unclean Hands--*Third, the Court should not enforce a settlement agreement where the party seeking to enforce the agreement has unclean hands.  *See Arizona Coffee Shops, Inc. v. Phoenix Downtown Parking Ass'n*, 387 P.2d 801, 802 (1963) ("One who seeks equity must do equity.").  "It is a cardinal rule of equity that [one] who comes into a court of equity seeking equitable relief must come with clean hands."  *Queiroz v. Harvey*, 205 P.3d 1120, 1122 (Ariz. 2009).  Here, Plaintiff seeks specific performance of a purported settlement agreement that, if it exists at all, only came into being due to Plaintiff's unclean hands.  The Court should not allow Plaintiff to benefit from her deceitful behavior.

*Breach of Covenant of Good Faith and Fair Dealing--*Finally, if there was a contract between the parties, Plaintiff's conduct would have violated the implied covenant of good faith and fair dealing, which is implied in every contract formed in Arizona.  *See Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  "The purpose of the implied covenant of good faith and fair dealing is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'"  *Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1163 (D. Ariz. 2005) (quoting *Rawlings*, 726 P.2d at 569-70).  "The implied

1   covenant is breached when one party prevents the other party to the contract 'from

2   receiving the benefits and entitlements of the agreement.'" *Id.* (quoting *Wells Fargo*

3   *Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust*

4   *Fund*, 38 P.3d 12, 28 (2002)).  Here, to the extent there ever was a bargain (which

5   there was not), Plaintiff attempted to deprive Mr. and Mrs. Powell of the benefit of

6   that bargain by interfering with Defendants' future use of the heidipowell.com

7   domain name.  Thus, Plaintiff would have breached the implied covenant of good

8   faith and fair dealing.

9        For each of these reasons, although the parties did not enter into any

10   agreement to dismiss Mr. and Mrs. Powell's counterclaims, given Plaintiff's

11   deceitful and fraudulent negotiating tactics, even if they had entered into an

12   agreement, it would not be enforceable.

13   **C.**        **Any Agreement Enforced By the Court Must Include Retention of**

14                 **the Domain Name By Mr. and Mrs. Powell.**

15        Should the Court determine that there is an enforceable settlement agreement,

16   it should Order that Mr. and Mrs. Powell will remain the registrants of the

17   heidipowell.com domain name and that Plaintiff must cease from any further efforts

18   to obtain the involuntary transfer of the domain name registration.  As explained

19   above, Mr. and Mrs. Powell's retention of the domain name was an essential and

20   undeniable component of any settlement agreement between the parties.

21

22

First, any acceptance by Mr. and Mrs. Powell was both implicitly and explicitly conditioned on their retention of the heidipowell.com domain name. Specifically, the September 13 Letter, which Plaintiff appears to contend formed the agreement, indicated that Mr. and Mrs. Powell's were willing to consider a mutual dismissal "in the interest of resolving this matter and allowing our clients to move on with their lives."  Plaintiff's ongoing efforts to steal the domain name from Mr. and Mrs. Powell are inconsistent with her agreement to this term.  Mr. and Mrs. Powell expressly conditioned their dismissal on their retention of ownership in the September 15, 2016 e-mail attached as Exhibit D to Plaintiff's Motion.  This was not an attempt to change the terms of the agreement, as Plaintiff now claims, but rather to document the terms the parties discussed including in their settlement agreement. If an agreement had already formed, Mr, and Mrs. Powell's retention of the domain name was an essential term of that agreement.

Second, as explained in Section III.A, *supra*, Mr. and Mrs. Powell's retention of the heidipowell.com domain name is the only consideration that can support a binding agreement.  Plaintiff cannot have it both ways, enforcing only of the terms that benefit her.  If the Court determines that there was, in fact, an enforceable settlement agreement, it must include Defendants retaining control of the heidipowell.com domain name.

### D.   Plaintiff Should Pay Defendants' Fees to Defend Against This Motion.

Mr. and Mrs. Powell are entitled to fees for defending against Plaintiff's meritless motion under A.R.S. §§ 12-341.01(A) and 12-349 and 28 U.S.C. § 1927. Under A.R.S. § 12-341.01, the "successful party to a civil action" is entitled to an award of attorneys' fees, and Courts have recognized that such an award is appropriate both for a prevailing plaintiff and a prevailing defendant.  *See Thurston v. Citizens Utilities Co.*, No. CIV 91-1857 PHX CAM, 1995 WL 152713, at *6 (D. Ariz. Feb. 16, 1995) (awarding attorneys' fees to a successful defendant in a breach of contract action).  Plaintiff, having moved to dismiss her only claims, however, cannot be "the successful party to a civil action."  *See Airfreight Exp. Ltd v. Evergreen Air Ctr., Inc.*, 158 P.3d 232, 242 (Ariz. Ct. App. 2007) (denying fees to party that did not prevail in the action); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Aero Jet Servs., LLC*, No. CV11-1212-PHX-DGC, 2012 WL 510490, at *3 (D. Ariz. Feb. 16, 2012) (recognizing that "'[t]he only relevant point is that the defendants were successful in the particular action in question'") (quoting *Mark Lighting Fixture Co., Inc. v. General Elec. Supply Co.*, 745 P.2d 123, 129 (Ariz. Ct. App. 1986)), *aff'd sub nom. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. 757BD, LLC*, 560 F. App'x 657 (9th Cir. 2014).  Thus, only Defendants could conceivably be entitled to an award of fees under this section.

In determining whether an award of fees is appropriate, the Arizona Supreme Court has identified a number of factors to be considered:

> 1. The merits of the claim or defense presented by the unsuccessful party. 2. The litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result. 3. Assessing fees against the unsuccessful party would cause an extreme hardship. 4. The successful party did not prevail with respect to all of the relief sought. 5. The novelty of the legal question presented, and whether such claim or defense had previously been adjudicated in this jurisdiction. 6. Whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.

*Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181, 1182 (1985). Applying the *Associated Indemnity* factors, Defendants are entitled to an award of attorneys' fees.  First, for the reasons stated above, the merits of the purported contract dispute favor Defendants.  Second, further litigation could have and would have been avoided had Plaintiff not engaged in a deceitful attempt to circumvent her own lawsuit.  Third, it does not appear that assessing fees against Plaintiff would create a hardship (in contrast to Defendants, who emerged from bankruptcy in 2012 and are represented *pro bono* in this matter due to their inability to afford proper representation).  Fourth, Plaintiff should not prevail on any of the relief sought in this motion.  Fifth, the legal question presented is not novel, as any first year law student would know that the absence of a meeting of the minds and consideration precluded the formation of an enforceable agreement.  Finally, and importantly given the baselessness of Plaintiff's claims in this action, an award in Defendants favor would

14

1   discourage Plaintiffs from attempting to bully Defendants through meritless motions

2   practice.

3         Moreover, it is Plaintiff, not Defendants, that has unnecessarily multiplied the

4   proceedings.  Under ARS § 12-349, a party is only entitled to an award of fees if the

5   opposing party or attorney does one of the following: (1) brings or defends a claim

6   without substantial justification; (2) brings or defends a claim solely or primarily for

7   delay or harassment; (3) unreasonably expands or delays the proceeding, or (4)

8   engages in abuse of discovery.  Under 28 U.S.C. § 1927, meanwhile, the Court may

9   award fees and expenses where a party "so multiplies the proceedings in any case

10  unreasonably and vexatiously."   Here, Plaintiff has unreasonably multiplied the

11  proceedings.  Even if there was any merit to Plaintiff's Motion (which there was

12  not), Plaintiff has already raised her argument in Plaintiff's Reply in Support of

13  Voluntary Dismissal.  *See* ECF No. 17 at 7-8.  The only thing for Plaintiff to gain by

14  raising this issue again is to force Defendants' attorneys to devote further resources

15  to a case that never should have been filed in the first place.  Thus, an award of fees

16  in Defendants' favor is appropriate.

17  **IV.**   **CONCLUSION**

18        For the foregoing reasons, the Court should: (1) either (i) deny Defendant's

19  Motion to Enforce Settlement Agreement Against Defendants or (ii) enforce all

20  terms of the purported agreement, including Mr. and Mrs. Powell's retention of the

21  heidipowell.com domain name; (2) award Defendants the reasonable value of

22

attorneys' fees expended to defend against this motion, and (3) award to Defendants such further relief as the Court deems just and proper.

DATED this 17th day of October, 2016.

**WILEY REIN LLP**

　　/s/ David E. Weslow /s/
David E. Weslow
Ari S. Meltzer
*Attorneys for Defendants*
*Kent and Heidi Powell*

16

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on the 17th day of October 2016, I will electronically file

3

the foregoing with the Clerk of Court using the CM/ECF system, which will send a

4

notification of such Filing (NEF) to the following:

5

6

7

8

Maria Crimi Speth, Esq.
Laura Rogal, Esq.
Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
*Counsel for Plaintiff*

9

10

11

12

     /s/ David E. Weslow /s/
David E. Weslow
Ari S. Meltzer
*Attorneys for Defendants*
*Kent and Heidi Powell*

13

14

15

16

17

18

19

20

21

22