**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

David E. Weslow (*pro hac vice*)
dweslow@wileyrein.com

Ari S. Meltzer (*pro hac vice*)
ameltzer@wileyrein.com

Attorneys for Defendants Kent and Heidi Powell

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Powell, | Case No. 2:16-cv-02386-SRB |
| Plaintiff, | **Response in Opposition to Plaintiff's Motion for Sanctions and Defendant's Cross-Motion for Sanctions** |
| v. | |
| Kent Powell and Heidi Powell, | |
| Defendants. | (Assigned to the Hon. Susan R. Bolton) |

Defendants Kent Powell and Heidi Powell ("Defendants" or "Mr. and Mrs. Powell"), by counsel and pursuant to Local Rule 7.2(c), hereby oppose Plaintiff Heidi Powell ("Plaintiff")'s Motion for Sanctions ("Plaintiff's Motion") and cross-move for Sanctions against Plaintiff and Plaintiff's counsel.

## I.     <u>INTRODUCTION</u>

This is a case that should never have been filed, and Plaintiff's Motion is reflective

of the recklessness with which Plaintiff and her counsel have pursued this matter.[1] Not only does Plaintiff's Motion fall far short of Rule 11 standards, but the motion continues Plaintiff's tactic of "playing fast and loose" with factual and legal allegations that Plaintiff's counsel has been advised are untenable. Moreover, Plaintiff has reached a new low by filing confidential settlement communications as purported proof of the validity of Plaintiff's claim despite Defense counsel's warning not to do so. This act alone demonstrates that Plaintiff and Plaintiff's counsel should be sanctioned, and the appropriateness of sanctions against Plaintiff and Plaintiff's counsel will become even more apparent upon the Court's consideration of the inadequacy of the arguments in Plaintiff's Motion, of Plaintiff's counsel's knowledge of the inadequacy of these arguments, and the overall manner in which Plaintiff has pursued this case.

Contrary to Plaintiff's mischaracterization of the motives of Mr. and Mrs. Powell and their attorneys, Defendants' counsel expended considerable time and effort trying to educate Plaintiff's counsel so as to *avoid* the need for further involvement by the Court. On August 15, 2016, Defendants' counsel sent a letter to Plaintiff's counsel directing their attention to: (1) controlling Ninth Circuit authority conclusively barring Plaintiff's Complaint; (2) Defendants' indisputable safe harbor

---

[1] The author of the preeminent legal treatise on domain name litigation published an article addressing Plaintiff's complaint in this action and stated that "counsel familiar with the ACPA would have immediately recognized the admissions contained in these allegations could not possibly survive a motion to dismiss." *See* Gerald M. Levine, *Filing Cybersquatting Complaints With No Actionable Claims*, http://tinyurl.com/jnpas5d (Sept. 26, 2016).

1   defense under the ACPA; and (3) Defendants' entitlement to a judgment for reverse

2   domain name hijacking, including the statutory damages Plaintiff now claims are

3   unavailable (the "August 15 Letter"). *See* Declaration of David E. Weslow ¶ 3 &

4   Attach. 1 (Nov. 18, 2016) ("Weslow Decl."), attached hereto as Exhibit A. Defense

5   counsel then participated in a telephone conference with Plaintiff's counsel pointing

6   out the factual misstatements in Plaintiff's pleadings and the controlling law

7   precluding Plaintiff's claims in an attempt to convince Plaintiff to withdraw her

8   Complaint. *Id.* ¶¶ 4-8.

9       Only after Plaintiff repeatedly refused to accept that the controlling Ninth

10  Circuit authority in *GoPets Ltd. v. Hise* precluded her claims, and instead demanded

11  burdensome discovery from Defendants (which materials were both irrelevant under

12  *GoPets* and something Plaintiff's counsel was well aware were not available), did

13  Defendants serve Plaintiff's counsel with a Motion for Sanctions. *Id.* ¶ 9. Even then,

14  Plaintiff refused to withdraw her Complaint, claiming that a purported circuit split

15  justified her decision to ignore *GoPets*, and continuing to demand irrelevant and

16  unavailable discovery. *See id.* ¶ 10 & Attach. 2. Thus, Defendants had no choice but

17  to file their answer and counterclaims. Weslow Decl. ¶ 11.

18      Plaintiff is well aware—and has been for some time—that each of the claims

19  in her Complaint and each of the grounds that she now identifies as the basis for an

20  award of sanctions lack merit. In an October 24, 2016 letter, Defendants explained

21  that: (1) the issue of Defendants' bankruptcy is irrelevant, as the statutes upon which

22

the counterclaims rely refer to the "registrant" and Defendants indisputably were and are the registrants of the domain name; (2) Defendants reasonably believed that the domain name was locked as a result of the Complaint, and the domain name is, in fact, locked based on the pendency of the Complaint; and (3) there is ample precedent for Defendants' prayer for relief including, among other categories of potential damages, a request for statutory damages (the "October 24 Letter"). *See id.* ¶ 17 & Attach. 6. The letter concluded:

> As demonstrated by the foregoing, filing the Proposed Motion would itself be frivolous and apparently designed to continue your harassment of Mr. and Mrs. Powell or needlessly increase the cost of this litigation. **Be advised that, should you nevertheless file the Proposed Motion with the Court, Mr. and Mrs. Powell will counter-move for sanctions.**

*Id.* (emphasis in original). Notably, Plaintiff did not respond to this letter, and instead proceeded to file the Motion without any substantive modification.

## II.    BACKGROUND

In light of the motions practice to date, Mr. and Mrs. Powell will assume the Court's familiarity with the underlying facts of the case. As a brief summary, Mr. and Mrs. Powell registered the heidipowell.com domain name on November 26, 2005 and have used the domain name since acquisition for personal and private e-mail services and for Mrs. Powell's various home-based businesses. *See* Countercls. ¶ 12 (ECF No. 13). Plaintiff is a reality television "celebrity" who apparently changed her name to "Heidi Powell" in 2010 and recently filed a trademark application for the purported mark HEIDI POWELL claiming a sworn first use date

4

1  for the trademark of September 19, 2014. *Id.* ¶¶ 26-27.  Plaintiff first attempted to

2  purchase the domain name from Defendants more than four years ago. *See*

3  Declaration of Defendant Heidi Powell ¶ 9 (Nov. 18, 2016), attached hereto as

4  Exhibit B ("Def. Decl."). Since Defendants refused, Plaintiff has stopped at nothing

5  in her attempt to acquire the domain name, including harassing phone calls, an

6  attempt to steal the domain name through this litigation, and even enticing the

7  bankruptcy trustee to reopen Defendants' long-dormant personal bankruptcy.  *Id.* ¶¶

8  9-15, 22-24. Unfortunately, Plaintiff has shown complete disregard for the pain and

9  distress that her actions have inflicted upon Mr. and Mrs. Powell. *Id.* ¶¶ 6-8.

10       Mrs. Powell maintains the password to the GoDaddy account containing the

11  heidipowell.com domain name. *See id.* ¶ 16. When Mrs. Powell checked the status of

12  the domain name after the Complaint was filed, she found the following settings:

13  "Domain lock: On"; "Transfer domain to another Godaddy account (disabled)";

14  "Transfer domain away from GoDaddy (disabled)"; "Get authorization code

15  (disabled). Delete domain (disabled)." *Id.* ¶ 17. Mrs. Powell did not recall having

16  seen these settings in the past. *Id.* ¶ 18. In her Reply in Support of Her Motion to

17  Dismiss, Plaintiff claimed that she had not taken the customary action of notifying

18  GoDaddy of her Complaint in this action—a point on which she elaborated in her

19  Motion for Sanctions. *See* ECF No. 23 at 8; ECF No. 34 at 4. In response to

20  Plaintiff's claim, Defense counsel inquired with GoDaddy whether it had

21  "implemented a registrar lock in connection with the above-referenced legal

22

dispute." *See* Weslow Decl. ¶ 13 & Attach. 3. GoDaddy responded, "We have placed HEIDIPOWELL.COM on registrar lock pending outcome of the complaint." *See id.* ¶ 14 & Attach. 4.

On October 21, 2016, Plaintiff's counsel apparently sought clarification from GoDaddy regarding whether it had placed the domain name on registrar lock before or after receiving the inquiry from Defense counsel. *See* ECF No. 31-1. When Plaintiff's counsel advised Defendants' counsel of GoDaddy's response, Defendants' counsel asked whether Plaintiff had obtained GoDaddy's agreement to lift the lock/suspension that GoDaddy implemented upon learning of Plaintiff's Complaint. *See* Weslow Decl. ¶ 16 & Attach. 5. To date, Plaintiff's counsel has not responded to this inquiry, and Mr. and Mrs. Powell's use of the domain name remains impaired based on the pendency of Plaintiff's untenable Complaint. *See id.*;  Def. Decl. ¶ 20.

## III.     THERE IS NO BASIS FOR AN AWARD OF SANCTIONS AGAINST DEFENDANTS AND THEIR PRO BONO COUNSEL

Plaintiff's Motion must be denied because it fails to identify any sanctionable conduct on behalf of Defendants or their *pro bono* counsel. "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). In determining whether sanctions are appropriate under Rule 11, courts consider whether "a competent attorney would have a good faith argument for the legal theory advanced after a reasonable inquiry into the facts and the law." *Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir.1986), *abrogated on other grounds*, *Cooter & Gell*

*v. Hartmax Corp.*, 496 U.S. 384, 399 (1990)).

Although Plaintiff's Motion attempts to prove that Mr. and Mrs. Powell's Counterclaims will not succeed, that is not the standard for Rule 11 sanctions. *See Cooter & Gell*, 496 U.S. at 396 ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."). Nothing in Plaintiff's Motion establishes that Mr. and Mrs. Powell's Counterclaims lack merit, much less that they are not brought in good faith. Accordingly, Plaintiff's Motion should be denied.

### A. Defendants Are the Undisputed Registrants of the Domain Name and Thus Are Entitled to Advance Their Counterclaims

Plaintiff's arguments regarding the alleged "ownership" of the domain name are a red herring designed to needlessly draw the Court into a pending bankruptcy matter in another jurisdiction. Any issues relating to Defendants' 2012 bankruptcy, however, are irrelevant to the claims pending before this Court. 15 U.S.C. § 1114(2)(D)(iv) specifically provides "*the domain name registrant*" with the ability to obtain injunctive relief for reverse domain name hijacking (emphasis added). Similarly, 15 U.S.C. § 1114(2)(D)(v) specifically provides "*a domain name registrant*" with the authority to file a civil action to establish that its registration and use of the domain name is not unlawful (emphasis added). A registrant "is the person or organization who has registered the domain name." *See* ICANN, *Domain Name Registration Process*, https://whois.icann.org/en/domain-name-registration-process

1   (last visited Sept. 17, 2016).

2         Plaintiff admitted in her Complaint that Mr. Powell is the named registrant of

3   the domain name. *See* Compl. ¶ 29 ("Upon information and belief, Kent Powell is

4   currently the true registrant of the Domain Name and, as such, maintains full control

5   over whether he sells or transfers the Domain Name and what content appears on the

6   website that the Domain Name redirects to."); *see also* Countercl. ¶ 11; Pl.'s Ans. ¶

7   11 (admitting that Defendants registered the domain name heidipowell.com). Mr.

8   Powell bought the domain name as a gift to Mrs. Powell for their 26th anniversary.

9   *See* Def. Decl. ¶ 4. Mrs. Powell maintains the password to the GoDaddy account

10  containing the heidipowell.com domain name and controls the content displayed

11  when a person visits www.heidipowell.com. *Id.* ¶ 16. Thus, Mr. and Mrs. Powell

12  have standing to bring the Counterclaims.

13        Even if Defendants' 2012 bankruptcy somehow was relevant to the present

14  matter, Plaintiff cannot establish that the bankruptcy estate owns the domain name,

15  much less that any claims based on ownership of the domain name are sanctionable.

16  As an initial matter, the Court should not consider the inadmissible settlement

17  correspondence that Plaintiff has introduced—against Defendants' warning—to

18  support her claims concerning ownership of the domain name. Pl.'s Mot. at 7-8 &

19  Ex. C. Federal Rule of Evidence 408 provides that "a statement made during

20  compromise negotiations about the claim" is inadmissible "either to prove or

21  disprove the validity or amount of a disputed claim or to impeach by a prior

22

inconsistent statement or a contradiction." Fed. R. Ev. 408. "Put simply, statements made during the course of settlement negotiations are inadmissible." *Coogan v. Avnet, Inc.*, No. CV040621PHXSRB, 2005 WL 2789311, at *2 (D. Ariz. Oct. 24, 2005) (internal quotation omitted). Excluding settlement communications addresses the fear "that settlement negotiations will be inhibited if the parties know that their statements may be later used as admissions of liability." *Id.* The exclusion applies not only to trial, but to motions practice as well. *Id.* at * 3 (excluding evidence of settlement communications from motion for summary judgment).

Here, Plaintiff inexcusably introduced a settlement offer in support of her Motion seeking to establish the validity of her claim. The letter attached as Exhibit C to Plaintiff's Motion was inconspicuously labeled in bold letters, "FOR SETTLEMENT PURPOSES ONLY, SUBJECT TO FRE 408." Plaintiff, nevertheless, submitted this letter in an attempt to establish the validity of her inaccurate claim that "Defendants are aware Defendants do not own the domain name at issue." Pl.'s Mot. at 7. Plaintiff seeks to use this settlement communication not only to establish Defendants' conduct, but also the validity of her underlying defense to the counterclaims. The Court should exclude Defendants' settlement communication and sanction Plaintiff's conduct, as detailed below.

With or without Defendants' settlement communication, Plaintiff cannot establish that the bankruptcy estate owns the domain name. Plaintiff is correct that, in response to Plaintiff's offer to pay $10,000 to bypass her own litigation and

forcibly acquire the domain name, the bankruptcy trustee reopened Defendants' 2012 bankruptcy case and sought permission to sell the domain name to Plaintiff. However, this does not equate to a transfer in ownership of the domain name. Defendants have: (1) filed amended schedules with the bankruptcy court specifically identifying the domain name, which was of *de minimis* value in 2012; and (2) opposed the bankruptcy trustee's efforts to sell the domain name to Plaintiff. *See In re Kent & Heidi Powell*, No. 12-11140 [Dkt. Nos. 28-30] (Bankr. W.D. Wash. filed Nov. 16, 2016). Not only is there no basis for this Court to prejudge the outcome of the bankruptcy proceeding, but it does not need to: Defendants were the registrants of the domain name when they filed their counterclaims and remain the registrants today, which is all that matters in this proceeding.

**B.**   **Defense Counsel Reasonably Believed After Proper Investigation That GoDaddy Had Locked the Domain Name as a Result of Plaintiff's Complaint**

Not only did Defense Counsel reasonably believe after proper investigation that GoDaddy had locked the domain name as a result of Plaintiff's Complaint, but GoDaddy has done just that (although at a later date than originally believed). Defendants' initial and continuing assertion that GoDaddy locked the heidipowell.com domain name was based on: (1) GoDaddy's Domain Name Registration Agreement, which permits GoDaddy to "place any domain name(s) on registry lock, hold, or similar status . . . during the resolution of a dispute"[2]; (2) the

---

[2] *See* GoDaddy, Domain Name Registration Agreement (Sept. 12, 2016), *available at* http://tinyurl.com/jqgq4q6.

1   standard practice of requesting a registrar lock upon filing a complaint under the

2   ACPA;[3] and (3) Mrs. Powell's investigation and review of the status of her account

3   with GoDaddy. *See* Def. Decl. ¶ 17; Weslow Decl. ¶ 12.

4   Upon learning of Plaintiff's position that she did not follow the standard

5   practice of notifying the registrar when filing an ACPA complaint, Defense counsel

6   inquired with GoDaddy to determine whether the domain name was locked in

7   response to Plaintiff's Complaint, as Mrs. Powell believed. *See* Weslow Decl. ¶ 13 &

8   Attach. 3. A representative from GoDaddy responded: "We have placed

9   HEIDIPOWELL.COM on registrar lock pending outcome of the complaint." *See id.*

10  ¶ 14 & Attach. 4. Plaintiff's subsequent e-mail exchange with GoDaddy confirmed

11  that the domain name has been locked by GoDaddy due to Plaintiff's untenable

12  complaint. *See* ECF No. 31-1. The domain name remains locked, and Plaintiff's

13  counsel has not responded to Defense counsel's repeated inquiries about whether

14  Plaintiff asked GoDaddy to lift the lock/suspension that GoDaddy implemented upon

15  learning of Plaintiff's Complaint. *See* Def. Decl. ¶¶ 19-20; Weslow Decl. ¶ 16.

16  Although it is now clear that GoDaddy did not place a registrar lock on the

17  heidipowell.com domain name until later than Defendants initially believed, that is

18  immaterial to Defendants' claims and certainly not grounds for the imposition of

19  ───────────────

[3] *See MasterCard Int'l Inc. v. Trehan*, 629 F.Supp.2d 824, 830 (N.D. Ill. 2009)

20  (recognizing that domain name was placed on registrar lock due to ACPA complaint);
    *Litigating In Rem Cybersquatting Cases Under the ACPA – Best Practices and*

21  *Considerations*, e-Commerce Law & Strategy Newsletter (June 2002), *available at*
    http://tinyurl.com/juepb3l (recommending that "counsel should take immediate steps to

22  lock down the domain name").

sanctions. *Cf. Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453-55 (9th Cir.1987) (explaining that Court's must "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted."). Given that: (1) it is standard practice for a plaintiff's attorney to seek to lock the domain name upon filing her complaint; (2) GoDaddy did, in fact, lock the domain name as soon as it learned of the Complaint and as a direct result of the meritless allegations therein; and (3) Mrs. Powell's investigation reasonably led her to believe the domain name had been locked as a result of the Complaint, it is clear there was a good faith basis for making and pursuing the counterclaims, and Defendants' allegations are far from sanctionable.[4]

**C.      There is Ample Precedent for an Award of Statutory Damages for Reverse Domain Name Hijacking**

Plaintiff's final argument in the Motion is directed to a paragraph in Defendants' prayer for relief identifying Defendants' request for recovery of damages including statutory damages under the ACPA. Not only is Plaintiff wrong that there is no basis for an award of statutory damages for reverse domain name hijacking, but Defense counsel has repeatedly directed Plaintiff's counsel to such a case awarding statutory damages under 15 U.S.C. § 1117(d) for a defendant prevailing on a counterclaim for reverse domain name hijacking. In *Walter v. Ville de Paris*, the U.S. District Court for the Southern District of Texas determined that

---

[4] If the Court desires, Defendants will amend their Counterclaims to make clear that it was not until October that GoDaddy locked the domain name in response to the frivolous allegations in Plaintiff's Complaint.

1    the Defendant had no bad faith intent and ordered the Plaintiff to pay "the sum of

2    One Hundred Thousand and 00/100 Dollars ($100,000.00) for reverse domain name

3    hijacking under 15 U.S.C. Section 1114(2)(D)(ii)(iv) and tortious interference" plus

4    attorney's fees and costs. No. 4:09-cv-3939, 2012 WL 6934851 (S.D. Tex. Sept. 14,

5    2012). There are numerous other examples of courts awarding attorneys' fees under

6    15 U.S.C. § 1117(a) for reverse domain name hijacking. *See GoForIt Entm't. LLC v.*

7    *Digimedia.com*, 3:08-cv-02011 [Doc. 147] (N.D. Tex. Mar. 22, 2011) (awarding

8    $48,000 in attorney's fees for reverse domain name hijacking); *AIRFX.com v. AirFX*

9    *LLC*, 2:11-cv-01064 [Doc. 121] (D. Ariz. Mar. 7, 2013) (awarding $103,972.50 in

10   attorney's fees for reverse domain name hijacking).

11          If Plaintiff wishes to argue that statutory damages should not be an available

12   remedy for her reverse domain name hijacking, she is free to do so at the appropriate

13   juncture in the litigation but, given the authority for imposing statutory damages for

14   the exact claims asserted in Defendants' counterclaims, Defendant's prayer for relief

15   is hardly sanctionable.

16   **II.     THE COURT SHOULD INSTEAD AWARD SANCTIONS AGAINST
             PLAINTIFF'S COUNSEL PURSUANT TO RULE 11**

17          Not only are each of the grounds upon which Plaintiff bases her Motion

18   meritless, but Plaintiff and her counsel knew the claims were meritless when they

19   filed Plaintiff's Motion, making an award of sanctions against Plaintiff's counsel

20   appropriate. Rule 11(c)(2) allows a court "[to] award to the party prevailing [on the

21   motion for sanctions] the reasonable expenses, including attorney's fees, incurred for

22

13

1  the motion." Fed. R. Civ. P. 11(c)(2). In short, "the filing of a motion for sanctions is

2  itself subject to the requirements of [Rule 11] and can lead to sanctions." Fed. R.

3  Civ. P. 11 advisory committee's note. "A party defending a Rule 11 motion need not

4  comply with the separate document and safe harbor provisions when counter-

5  requesting sanctions." *See Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th

6  Cir. 2001).

7       Plaintiff's Complaint and Plaintiff's Motion are a continuation of Plaintiff's

8  long running efforts to bully and intimidate Mr. and Mrs. Powell with devastating

9  effects.  *See* Def. Decl. ¶¶ 6-13.  There are two independent reasons to now award

10  sanctions against Plaintiff and Plaintiff's counsel. First, Plaintiff's Motion is not

11  grounded in law and fact and appears to have been filed for an improper purpose.

12  Second, Plaintiff has based her claims on inadmissible settlement communications—

13  even after Defense counsel warned her not to use confidential settlement

14  communications in an attempt to prove the validity of her claims.

15       1. Plaintiff, despite being provided with information demonstrating that that

16  her Motion for Sanctions was meritless, nevertheless chose to file the motion in an

17  apparent attempt to intimidate Defendants and their *pro bono* counsel into

18  withdrawing their counterclaims. After receiving Plaintiff's draft motion, Defense

19  counsel refuted each of Plaintiff's claims in writing. *See* October 24 Letter. The

20  October 24 Letter included almost all of the arguments made by Defendants in *supra*

21  Part I. Even after being placed on notice that her claim for sanctions is frivolous,

22

1   however, Plaintiff proceeded to file the Motion without as much as responding to

2   Defense counsel's letter or addressing Defendants' arguments.

3       Plaintiff's arguments regarding the availability of statutory damages are

4   particularly egregious given that Defense counsel first directed Plaintiff's counsel to

5   cases regarding the availability of statutory damages in an August 15, 2016, letter

6   that should have resulted in the dismissal of Plaintiff's claims with prejudice and

7   avoided the need for subsequent escalation. *See* August 15 Letter at 3.

8       Because Plaintiff's counsel knew that Plaintiff's Motion was unwarranted and

9   frivolous and, nevertheless, proceeded to file the Motion to harass or intimidate Mr.

10   and Mrs. Powell or needlessly increase the cost of litigation, Plaintiff's counsel

11   should be sanctioned.

12       2. Plaintiff's filing of settlement communications for an improper purpose is

13   independently sanctionable. As the advisory notes make clear, Fed. R. Evid. 408's

14   purpose "is to encourage settlements which would be discouraged if such evidence

15   were admissible." Fed. R. Evid. 408 applies with full force to the introduction of

16   settlement communications in pleadings. *See, e.g.*, *Stewart v. Wachowski*, No. CV03-

17   2873, 2004 WL 5618386, at *2 (C.D. Cal. Sept. 28, 2004); *United States ex rel.*

18   *Alasker v. CentraCare Health Systems, Inc.*, Civ. A. No. 99-106, 2002 WL 1285089,

19   * 2 (D. Minn. June 5, 2002) ("[C]ourts have routinely granted motions to strike

20   allegations in pleadings that fall within the scope of Rule 408.").

21       There can be no question here that Plaintiff violated Rule 408. The letter

22

attached as Exhibit C to Plaintiff's Motion was inconspicuously labeled in bold letters, "FOR SETTLEMENT PURPOSES ONLY, SUBJECT TO FRE 408." In Defendants' response to Plaintiff's safe harbor letter, Defense counsel warned: "your proposed use of . . . clearly marked settlement communications as purported evidence of the validity of your claim regarding ownership of the domain name violates both the letter and the spirit of Fed. R. Evid. 408, which provides that evidence from settlement negotiations is not admissible 'either to prove or disprove the validity or amount of a disputed claim.'" *See* October 24 Letter at 3. Plaintiff, nevertheless, submitted the letter in an attempt to establish the validity of her inaccurate claim that "Defendants are aware Defendants do not own the domain name at issue." Pl.'s Mot. at 7.

Federal courts have the inherent power to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991). A party has engaged in "bad faith" litigation tactics when it knowingly violates a statute or judicially created rule. *See Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985) (sanctioning counsel for filing pretrial documents on the day of trial); *Hodge v. America Home Assurance, Co.,* 150 F.R.D. 25, 26 (D. P.R. 1993) (granting mistrial and sanctioning attorneys for disclosing settlement communications during opening statements). A finding that Plaintiff has engaged in "bad faith" litigation tactics is warranted because Plaintiff knew that filing the letter would violate Fed. R. Evid. 408 and, consistent with Plaintiff's counsel's

recklessness in this action, Plaintiff chose to disregard the rule. *See Atico Int'l USA, Inc. v. Tofasco of America, Inc.*, No. 02-60984 Dkt. No. 208, at *7 (S.D. Fla. Apr. 9, 2004), attached hereto as Exhibit C (striking reference in summary judgment filings to statements made during settlement communications and finding that "sanctions . . . are warranted"); *cf. Century Sur. Co. v. 350 W.A., LLC*, No. CIV. 05CV1548-LLSP, 2008 WL 1787491, at *3 (S.D. Cal. Apr. 16, 2008) (imposing sanctions for disclosing information from settlement conference); *Mackey v. Whitehall Labs., Inc.*, 681 F. Supp. 591, 592 (N.D. Ind. 1987) (observing that "sanctions would be in order" for submitting settlement communications to the court), *aff'd sub nom. Mackey v. Whitehall Labs.*, 843 F.2d 500 (7th Cir. 1988).  Accordingly, Plaintiff's counsel should be sanctioned for their bad faith conduct.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion for Sanctions and grant Defendants' Cross-Motion for Sanctions.


DATED this 18th day of November, 2016.

**WILEY REIN LLP**

 /s/ David E. Weslow /s/
David E. Weslow
Ari S. Meltzer
*Attorneys for Defendants*
*Kent and Heidi Powell*

## __CERTIFICATE OF SERVICE__

I hereby certify that on the 18th day of November 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and cause a copy to be served by HAND DELIVERY upon:

Maria Crimi Speth, Esq.
Laura Rogal, Esq.
Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
*Counsel for Plaintiff*

 /s/ David E. Weslow /s/
David E. Weslow
Ari S. Meltzer
*Attorneys for Defendants*
*Kent and Heidi Powell*

# EXHIBIT A

# Declaration of David E. Weslow

**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

David E. Weslow (*pro hac vice*)
dweslow@wileyrein.com

Ari S. Meltzer (*pro hac vice*)
ameltzer@wileyrein.com

Attorneys for Defendants Kent and Heidi Powell

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Powell, | Case No. 2:16-cv-02386-SRB |
| Plaintiff, | **Declaration of David E. Weslow Pursuant to 28 U.S.C. § 1746** |
| v. | |
| Kent Powell and Heidi Powell, | |
| Defendants. | |

I, David E. Weslow, hereby declare as follows:

1.      I am an attorney and partner with the law firm Wiley Rein LLP, *pro bono* counsel for Defendants Kent and Heidi Powell.

2.      I am a member in good standing of the State Bars of Maryland and the District of Columbia and am admitted *pro hac vice* in this matter.  I submit this Declaration in support of Defendants' Response in Opposition to Plaintiff's Motion for Sanctions and Defendant's Cross-Motion for Sanctions and make this Declaration based on my personal knowledge.

3.      On August 15, 2016, I sent a letter to Plaintiff's counsel directing their attention to: (1) controlling Ninth Circuit authority conclusively barring Plaintiff's Complaint; (2) Defendants' indisputable safe harbor defense under the ACPA; and (3) Defendants' entitlement to a judgment for reverse domain name hijacking, including the potential availability of statutory damages that Plaintiff now claims are unavailable.  A true and accurate copy of the August 15, 2016 letter is attached hereto as Attachment 1.

4.      After sending the August 15, 2016 letter, I participated in a telephone conference with Plaintiff's counsel during which I pointed out the factual misstatements in Plaintiff's pleadings and the controlling law precluding Plaintiff's claims.

5.      Although Mr. and Mrs. Powell's use of the heidipowell.com domain name is irrelevant because Plaintiff cannot state a claim under *GoPets Ltd. v. Hise*, in the interest of an attempting to convince Plaintiff to withdraw her Complaint, I explained to Plaintiff's counsel the blatant misstatements of fact in the Complaint.

6.      In particular, I: (a) directed Plaintiff's counsel to archive.org for archived copies of the www.heidipowell.com website showing use of the domain name by Mr. and Mrs. Powell to redirect visitors to Mrs. Powell's business website and personal Facebook page and (b) explained to Plaintiff's counsel that review of archived "MX" or email server settings for the heidipowell.com

2

domain name confirm that the domain name has been configured for email use for some time.

7.      I also explained to Plaintiff's counsel that a proper pre-filing investigation would have revealed these facts—given that Plaintiff's Complaint inaccurately asserts that "the domain was registered but not associated with any services such as email or a website containing content, up until approximately May 21, 2016."

8.      In response to Plaintiff's counsel's demand for discovery from Mr. and Mrs. Powell, I explained to Plaintiff's counsel that Mr. and Mrs. Powell did not possess email records from before 2010 and that her demands for such discovery were inappropriate given the untenable nature of the Complaint.

9.      After Plaintiff repeatedly refused to accept that the controlling Ninth Circuit authority in *GoPets Ltd. v. Hise* precluded her claims, and instead continued to demand discovery from Defendants of materials that Plaintiff's counsel knew were not available, we served Plaintiff's counsel with a Motion for Sanctions.

10.      Even then, Plaintiff refused to withdraw her Complaint, claiming in a September 6, 2016 e-mail that a purported circuit split justified her decision to ignore *GoPets Ltd. v. Hise* and continuing to demand discovery from Defendants (which materials were both irrelevant under *GoPets* and something Plaintiff's counsel was well aware were not available).  A true and accurate copy of

Plaintiff's counsel's September 6, 2016 e-mail is attached hereto as Attachment 2.

11.    In light of Plaintiff's refusal to admit that her Complaint was frivolous and could not succeed, Defendants filed their answer and counterclaims the following day.

12.    Our initial and continuing assertion that GoDaddy had locked the domain name as a result of Plaintiff's Complaint was based on: (1) GoDaddy's Domain Name Registration Agreement, which permits GoDaddy to "place any domain name(s) on registry lock, hold, or similar status . . . during the resolution of a dispute"; (2) the standard practice of requesting a registrar lock upon filing a complaint under the ACPA; and (3) Mrs. Powell's investigation and review of the status of her account with GoDaddy.

13.    On October 14, 2016, in response to Plaintiff's claim that she had not advised GoDaddy of her Complaint, my colleague, Ari Meltzer, inquired with GoDaddy whether it had "implemented a registrar lock in connection with the above-referenced legal dispute."  A true an accurate copy of Mr. Meltzer's e-mail to GoDaddy is attached hereto as Attachment 3.

14.    GoDaddy responded, "We have placed HEIDIPOWELL.COM on registrar lock pending outcome of the complaint." A true and accurate copy of GoDaddy's October 17, 2016 response is attached hereto as Attachment 4.

15.    On October 21, 2016, Plaintiff's counsel apparently sought

4

clarification from GoDaddy regarding whether it had placed the domain name on registrar lock before or after receiving our inquiry.  *See* ECF No. 31-1.

16.    When Plaintiff's counsel advised us of GoDaddy's response, I asked whether Plaintiff had obtained GoDaddy's agreement to lift the lock/suspension that GoDaddy implemented upon learning of Plaintiff's Complaint.  A true and accurate copy of my October 21, 2016 e-mail to Plaintiff's counsel is attached hereto as Attachment 5.  Plaintiff's counsel never responded to my inquiry.

17.    On October 24, 2016, after receiving service of Plaintiff's motion for sanctions, I responded with a letter explaining that: (1) the issue of Defendants' bankruptcy is irrelevant, as the statutes upon which the counterclaims rely refer to the "registrant" and Defendants indisputably were and are the registrants of the domain name; (2) Defendants reasonably believed that the domain name was locked as a result of the Complaint, and the domain name is, in fact, locked based on the pendency of the Complaint; and (3) there is ample precedent for Defendants' prayer for relief including, among other categories of potential damages, a request for statutory damages.  A true and accurate copy of my October 24, 2016 letter to Plaintiff's counsel is attached hereto as Attachment 6.

1          I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3          Executed on November 18, 2016.

4
                                              /s/ David E. Weslow /s/
5                                            David E. Weslow
                                             WILEY REIN LLP
6                                            1776 K Street, N.W.
                                             Washington, DC  20006
7                                            Telephone:  (202) 719-7000
                                             Fax: (202) 719-7049
8                                            dweslow@wileyrein.com

9                                            *Attorney for Defendants*
                                             *Kent and Heidi Powell*
10

11

12

13

14

15

16

17

18

19

20

21

22

6

# ATTACHMENT 1



David E. Weslow
202.719.7525
dweslow@wileyrein.com

August 15, 2016

1776 K STREET NW
WASHINGTON, DC 20006
PHONE      202.719.7000
FAX        202.719.7049

www.wileyrein.com

**VIA EMAIL – msc@jaburgwilk.com; law@jaburgwilk.com**

Maria Crimi Speth, Esq.
Laura Rogal, Esq.
Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012

Re:     Powell v. Powell, Case No. 2:16-cv-02386 (D. Ariz.)

Dear Ms. Crimi Speth and Ms. Rogal:

We have been retained by Kent Powell and Heidi Powell as pro bono counsel to vigorously defend the above-referenced action.

Upon reviewing the complaint, I was stuck by the irony of a person who has developed a commercial enterprise based on "positive and empowering life transformations" resorting to trademark bullying and intimidation in an unfounded effort to force the transfer of a domain name from a senior citizen couple.  Even the most bare bones inquiry by you or your client would have revealed that plaintiff's claims are frivolous and she has no claim under the Anticybersquatting Consumer Protection Act ("ACPA") or any other law.  Moreover, given the publicly available information concerning Mr. and Mrs. Powell's recent bankruptcy and Mrs. Powell's diagnosis of Post-Traumatic Stress disorder, your client's improper purpose in filing the baseless complaint becomes even clearer.

Our clients' lawful ownership of the heidipowell.com domain name is readily apparent.  Heidi and Kent Powell married on December 23, 1979, at which point Mrs. Powell's legal name became "Heidi Powell."  The plaintiff, meanwhile, was not even born until two years later—with a different surname.  In fact, the plaintiff did not assume the name Heidi Powell until 2010 and her recently filed trademark application does not claim use of "Heidi Powell" as a trademark until September 2014.  At the time our clients registered the domain name in 2005, your client's legal name was Heidi Solomon (sharing a surname with then-husband Derek Solomon).

Not only did our clients lack the prescience to know that your client would divorce her husband, meet Chris Powell at a self-improvement seminar, remarry, and take on a new surname and persona, but our clients made bona fide use of their domain name both before and after those events occurred.  Specifically, Mr. and Mrs.



Maria Crimi Speth, Esq.
Laura Rogal, Esq.
Jaburg & Wilk, P.C.
August 15, 2016
Page 2


Powell have used the heidipowell.com domain name since purchase for e-mail services and to promote Mrs. Powell's various home-based businesses, including a McGruff the crime dog franchise and, more recently, "Click To Call Mobile."  As you also are well aware, our client has used the Twitter handle @heidipowell since 2009—again before the plaintiff even assumed the name Heidi Powell—to promote her various business interests.  Under these circumstances, there can be no claim under the ACPA.  *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1032 (9th Cir. 2011) ("Because Edward Hise registered gopets.com in 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-registration and continued ownership of gopets.com does not violate § 1125(d)(1)."); *Wagner v. LindaWagner.com*, 16-cv-053 [Doc. 67] (E.D. Va. Aug. 15, 2016) (wherein we obtained summary judgment for the defendant based on the court's finding that "it is impossible to infer that [the registrant] acted with intent to harm the goodwill associated with a purported mark of which it was unaware."); *Carpenter v. MySchool.com*, 15-cv-212 [Doc. 187] (E.D. Va. Oct. 26, 2015) (wherein we obtained summary judgment for the defendant based on the court's finding that "at the time of the registration [of the domain name], the plaintiff had failed to present sufficient evidence [to] support a finding of bad faith of intent to profit from the plaintiff's mark").

Likewise, your client surely is also aware that she cannot establish the requisite elements of a claim under the cyberpiracy protection for individuals section of the ACPA.  A claim under Section 8131 can only succeed if the defendant (1) registered a domain name that consists of the name of the plaintiff, (2) did so without the plaintiff's consent, and (3) had the ***specific intent to profit from the plaintiff's name by selling the domain name for financial gain***.  *See Bogoni v. Gomez*, No. 11 Civ. 08093, 2011 WL 6957599, at *3 (S.D.N.Y. Dec. 28, 2011) (emphasis added).  At the time that our clients registered the heidipowell.com domain name, it did not consist of the plaintiff's name (although it did consist of Mrs. Powell's own name).  If our clients had a specific intent to profit from the plaintiff's name, they would have registered heidisolomon.com, not heidipowell.com.

As you are also well aware, Mr. and Mrs. Powell repeatedly have rebuffed all of the plaintiff's efforts to purchase the domain name due to its personal value to them.  Accordingly, notwithstanding the careful wording in your complaint, there is no



Maria Crimi Speth, Esq.
Laura Rogal, Esq.
Jaburg & Wilk, P.C.
August 15, 2016
Page 3

basis for your claim that Mr. and Mrs. Powell registered the heidipowell.com domain name with the specific intent to profit from the plaintiff's then non-existent name.

Even if the plaintiff could theoretically allege a prima facie case of bad faith on the part of Mr. and Mrs. Powell, which she cannot, she still could not overcome the fact that Mr. and Mrs. Powell's registration of the heidipowell.com domain name is protected by the statutory safe harbor under the ACPA.  Under this provision, "[b]ad faith intent ... shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).  Here, the reasonableness of our clients' belief that they were lawfully using the heidipowell.com domain name is obvious.  There is no dispute that our client's actual name is Heidi Powell and Mr. and Mrs. Powell have not used the heidipowell.com domain name in any manner relating to the plaintiff.  Accordingly, any court would find that our clients reasonably believed that their use of the domain name was a fair use or otherwise lawful.

Given the extensive and indisputable evidence that our client, Heidi Powell, has trademark priority over the plaintiff and our clients did not and could not have registered the heidipowell.com domain name with bad faith intent to profit from any trademark rights of your client or from your client's name, plaintiff's continued assertion of a claim to the heidipowell.com domain name will constitute *inter alia* attempted reverse domain name hijacking for which our clients will pursue recovery of damages and attorney's fees.  *See, e.g., AIRFX.com v. AirFX LLC*, 2:11-cv-01064 [Doc. 121] (D. Ariz. Mar. 7, 2013) (awarding $103,972.50 in attorney's fees for reverse domain name hijacking); *Telepathy, Inc. v. SDT International SA-NV*, 1:14-cv-1912 [Doc. 12] (D.D.C. July 9, 2015) (wherein we obtained a judgment of $50,000 on a reverse domain name hijacking claim); *Walter v. Ville de Paris*, 09-cv-3939 [Doc. 31] (S.D. Tex. Sept. 14, 2012) (awarding $100,000 in statutory damages for reverse domain name hijacking); *GoForIt Ent. LLC v. Digimedia.com*, 3:08-cv-02011 [Doc. 147] (N.D. Tex. Mar. 22, 2011) (awarding $55,000 in statutory damages and $48,000 in attorney's fees for reverse domain name hijacking).  Moreover, while the Internet trade media has already documented the frivolous and abusive nature of plaintiff's claims, such attention is likely to increase if your client continues to pursue this matter.



Maria Crimi Speth, Esq.
Laura Rogal, Esq.
Jaburg & Wilk, P.C.
August 15, 2016
Page 4

Given that the various communications by plaintiff and her agents and attorneys over the years show that plaintiff is well aware of the impossibility of proving bad faith intent associated with the domain name or evading the statutory safe harbor, if you do not dismiss the complaint with prejudice by August 24, 2016, we will provide you with a formal Rule 11 letter so that Mr. and Mrs. Powell may subsequently pursue Rule 11 sanctions against you and your firm. *See Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002) (finding that sanctions are appropriate when "any reasonable lawyer would have known, upon even the most casual investigation, that the law . . . would not support a claim on these facts"); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (recognizing propriety of sanctions where complaint is "baseless and made without a reasonable and competent inquiry").

Please note that this letter does not prejudice our clients' rights, remedies, claims, and defenses related to this matter, which are hereby expressly reserved.

Sincerely,

/s/ David E. Weslow

David E. Weslow

# ATTACHMENT 2

## Meltzer, Ari

| | |
|---|---|
| **From:** | Maria Crimi Speth <mcs@jaburgwilk.com> |
| **Sent:** | Tuesday, September 06, 2016 2:45 PM |
| **To:** | Weslow, David; Laura A. Rogal |
| **Cc:** | Meltzer, Ari |
| **Subject:** | RE: Powell v. Powell, 2:16-cv—2386 (D. Ariz.) |

David:

I left you a message that was not as clear as it could have been as I was distracted by a call coming in.  I have looked carefully at the case law that you cite and, as you may already know, there is a split in the circuits regarding our specific issue.  While the Ninth Circuit case in GoPets that you cite does hold that the term "registration" in the statute does not include re-registration, both the Third and Eleventh Circuits have held the exact opposite. Similarly, both the Second Circuit and the Fourth Circuit have held that the determination of the lawfulness of a domain name registration is not fixed and may change over time depending on the defendant's conduct and use of the domain name.  Of course, I recognize that we are in the Ninth Circuit.  On the other hand, this issue is ripe for a Supreme Court decision in light of the split.

It seems to me that the most practical course of action for both of our clients is for your clients to provide evidence of the claims made in your letter that your client had legitimate uses of the domain name dating back to before my client became publicly known.  My issue with your position is that none of the cases cited are cases where the domain name was parked and not used at all until after the trademark became distinctive.  For example, in Gopets, the registrant had a business plan at the time he registered the domain name.

Also, I have an additional concern that your letter has brought to light.  You mentioned that your client filed bankruptcy.  Please let me know when the bankruptcy was filed and whether the domain name was listed as an asset on the bankruptcy schedules.

**MARIA CRIMI SPETH** | Shareholder | 602.248.1089

 

**From:** Weslow, David [mailto:DWeslow@wileyrein.com]
**Sent:** Monday, August 29, 2016 12:55 PM
**To:** Maria Crimi Speth; Laura A. Rogal
**Cc:** Meltzer, Ari
**Subject:** RE: Powell v. Powell, 2:16-cv—2386 (D. Ariz.)

Maria,

The motion and memorandum state that you did not dismiss the complaint as we requested. If we are forced to file the motion, the statement will be true at the time of filing.

With regard to your request for proof of use of the domain name, please review the statute and the Ninth Circuit's Gopets decision.  Although our clients' use of the domain name has been entirely lawful, and has included email use since 2005, use of the domain is irrelevant because your client's mark/name did not exist at the time the domain name was registered.

The existence of a bankruptcy stay is also irrelevant (though there is no current stay) because Mr. and Mrs. Powell will not under any circumstance, and for any price, sell the domain name to your client.

David E. Weslow | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.7525 | M: 202.494.8216 | DWeslow@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

**From:** Maria Crimi Speth [mailto:mcs@jaburgwilk.com]
**Sent:** Monday, August 29, 2016 2:48 PM
**To:** Weslow, David; Laura A. Rogal
**Cc:** Meltzer, Ari
**Subject:** RE: Powell v. Powell, 2:16-cv—2386 (D. Ariz.)

Mr. Weslow:

Please call me Maria and may I call you David?  I hope you don't mind switching to email for efficiency.

Your email below says that I should consider your correspondence and enclosures to be your reply, but it does not reply at all to my letter from Friday.  I understand that your proposed Rule 11 motion was drafted before you received my response.  I also understand that having already drafted it, it made some sense to send it to me.  However, it says that I never responded to your letter.  So, that would need to be updated before you could file this with the court.

Much more importantly, your letter today does not actually respond in any way to my letter.  My letter reasonably offers to dismiss this case if you provide some proof that your client was using the domain name before my client's trademark.   It is unclear to me whether you are willing to obtain that proof and provide it if it exists.  Please let me know.

Also, your proposed motion refers to the bankruptcy filing as a recent bankruptcy.  I am concerned that there may be an automatic stay in place that we were unaware of.  Is there actually an active bankruptcy?

**MARIA CRIMI SPETH** | Shareholder | 602.248.1089



**From:** Weslow, David [mailto:DWeslow@wileyrein.com]
**Sent:** Monday, August 29, 2016 11:14 AM
**To:** Maria Crimi Speth; Laura A. Rogal
**Cc:** Meltzer, Ari
**Subject:** RE: Powell v. Powell, 2:16-cv—2386 (D. Ariz.)

Ms. Crimi Speth:

Yes, please consider our correspondence and enclosures from earlier today to be our reply.

David E. Weslow | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.7525 | M: 202.494.8216 | DWeslow@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

**From:** Maria Crimi Speth [mailto:mcs@jaburgwilk.com]
**Sent:** Monday, August 29, 2016 1:19 PM
**To:** Meltzer, Ari; Laura A. Rogal
**Cc:** Weslow, David
**Subject:** RE: Powell v. Powell, 2:16-cv—2386 (D. Ariz.)

Mr. Weslow:

Did you receive my letter Friday?

 **MARIA CRIMI SPETH** | Shareholder | 602.248.1089



**From:** Meltzer, Ari [mailto:AMeltzer@wileyrein.com]
**Sent:** Monday, August 29, 2016 8:44 AM
**To:** Maria Crimi Speth; Laura A. Rogal
**Cc:** Weslow, David
**Subject:** Powell v. Powell, 2:16-cv—2386 (D. Ariz.)

Dear Ms. Crimi Speth and Ms. Rogal:

Please see the attached correspondence, a copy of which will be hand delivered to your office today.

Ari Meltzer | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.7467 | M: 703.472.9196 | AMeltzer@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter | WileyonMedia Blog

# ATTACHMENT 3

## Meltzer, Ari

| | |
|---|---|
| **From:** | Meltzer, Ari |
| **Sent:** | Friday, October 14, 2016 12:18 PM |
| **To:** | courtdisputes@godaddy.com |
| **Cc:** | Weslow, David |
| **Subject:** | heidipowell.com |
| **Attachments:** | 1 - Complaint.pdf |

To whom it may concern,

We represent Defendants Heidi and Kent Powell, registrants of the heidipowell.com domain name, in *Powell v. Powell*, case number 2:16-cv-02386 (D. Ariz. Filed July 18, 2016).  A copy of the as-filed complaint is attached.

Our clients have advised us that notwithstanding their efforts to unlock the domain name, the domain name remains locked and cannot be transferred.  Can you confirm that GoDaddy has implemented a registrar lock in connection with the above-referenced legal dispute?

Ari Meltzer | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.7467 | M: 703.472.9196 | AMeltzer@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter | WileyonMedia Blog

# ATTACHMENT 4

## Meltzer, Ari

| | |
|---|---|
| **From:** | Courtdisputes-GD <Courtdisputes@godaddy.com> |
| **Sent:** | Monday, October 17, 2016 10:23 AM |
| **To:** | Meltzer, Ari |
| **Subject:** | RE: heidipowell.com |

Dear Ari Meltzer,

Thank you for your message and we are in receipt of the court complaint.

We have placed HEIDIPOWELL.COM on registrar lock pending outcome of the complaint.

Regards,

**Hap F.**
**Dispute Administrator | Go**Daddy
**Claim: 1751795**

---

**From:** Meltzer, Ari [mailto:AMeltzer@wileyrein.com]
**Sent:** Friday, October 14, 2016 11:18 AM
**To:** Courtdisputes-GD <Courtdisputes@godaddy.com>
**Cc:** Weslow, David <DWeslow@wileyrein.com>
**Subject:** heidipowell.com

To whom it may concern,

We represent Defendants Heidi and Kent Powell, registrants of the heidipowell.com domain name, in *Powell v. Powell*, case number 2:16-cv-02386 (D. Ariz. Filed July 18, 2016).  A copy of the as-filed complaint is attached.

Our clients have advised us that notwithstanding their efforts to unlock the domain name, the domain name remains locked and cannot be transferred.  Can you confirm that GoDaddy has implemented a registrar lock in connection with the above-referenced legal dispute?

Ari Meltzer | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.7467 | M: 703.472.9196 | AMeltzer@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter | WileyonMedia Blog

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wileyrein.com.

# ATTACHMENT 5

**Meltzer, Ari**

---

| | |
|---|---|
| **From:** | Weslow, David |
| **Sent:** | Friday, October 21, 2016 2:19 PM |
| **To:** | Maria Crimi Speth; akh@jaburgwilk.com |
| **Cc:** | Meltzer, Ari |
| **Subject:** | RE: heidipowell.com - claim 1751795 |

Maria:

I find it ironic that you are now suggesting that we need to revise a court filing given your numerous factual and legal misstatements on file with the court that have not been corrected.

Moreover, your correspondence below with GoDaddy confirms that the domain name has been locked by GoDaddy due to your untenable complaint.

Have you obtained GoDaddy's agreement to lift the lock/suspension that is based on your complaint?

David E. Weslow | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.7525 | M: 202.494.8216 | DWeslow@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

**From:** Maria Crimi Speth [mailto:mcs@jaburgwilk.com]
**Sent:** Friday, October 21, 2016 1:46 PM
**To:** Meltzer, Ari
**Cc:** Aaron K. Haar
**Subject:** FW: heidipowell.com - claim 1751795

Ari:

Please see below.  You have a duty to correct your misstatements to the court.



**MARIA CRIMI SPETH** | Shareholder | 602.248.1089

JABURG|WILK
Attorneys at Law

**From:** Courtdisputes-GD [mailto:Courtdisputes@godaddy.com]
**Sent:** Friday, October 21, 2016 8:48 AM
**To:** Maria Crimi Speth
**Subject:** RE: heidipowell.com - claim 1751795

Dear Maria Crimi Speth,

Thank you for your email. The domain name was placed on registrar lock upon notice of complaint Ari Meltzer on 10/17/2016. Any prior lock on the domain name was not the registrar lock that we have placed due to the court dispute.

If we are in receipt of a dismissal of the filed complaint we would be able to remove the registrar lock.

Kind regards,

**Alex H.**
**Dispute Administrator | GoDaddy**
**Claim: 1751795**

---

**From:** Maria Crimi Speth [mailto:mcs@jaburgwilk.com]
**Sent:** Thursday, October 20, 2016 10:13 AM
**To:** Courtdisputes-GD
**Subject:** heidipowell.com - claim 1751795

To Hap F:

My firm represents the plaintiff in the complaint that was attached to the email that you received on October 14, 2016 from Ari Meltzer (attached for your reference).

Mr. Meltzer is taking the position that GoDaddy locked the domain name as a result of the complaint <u>before</u> he notified you of the complaint on October 14, 2016. Neither my office nor my client ever requested that the domain name be locked and, indeed, I spoke with a GoDaddy representative before October 14, 2016 and confirmed that the only lock on the domain name was one that the registrant had control over and could remove. I also confirmed that the lock has been in place since 2012, long before there was any litigation regarding this matter.

The purpose of this email is two-fold. First, I request that you confirm that the litigation lock was not placed until Mr. Meltzer sent you the complaint on October 14, 2016. Second, I request information on what the process is to remove the litigation hold.

Thank you for your attention to this matter.



**JABURG | WILK** | **MARIA CRIMI SPETH** | Shareholder
*Attorneys at Law* | 3200 North Central Avenue, Suite 2000, Phoenix Arizona 85012
Direct 602.248.1089 | Main 602.248.1000 | Fax 602.248.0522

Bio Page | jaburgwilk.com | mcs@jaburgwilk.com

This communication is intended only for the individual or entity to whom it is directed. It may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. Dissemination, distribution, or copying of this communication by anyone other than the intended recipient, or a duly designated employee or agent of such recipient, is prohibited. If you have received this communication in error, please notify us immediately by telephone at (602)248-1000, or via e-mail, and delete this message and all attachments thereto.

# ATTACHMENT 6



David E. Weslow
202.719.7525
dweslow@wileyrein.com

October 24, 2016

1776 K STREET NW
WASHINGTON, DC 20006
PHONE      202.719.7000
FAX        202.719.7049

www.wileyrein.com

**VIA EMAIL**
**mcs@jaburgwilk.com**

Maria Crimi Speth, Esq.
Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012

Re:   <u>Powell v. Powell</u>, Case No. 2:16-cv-02386 (D. Ariz.)

Dear Maria:

I am writing in response to your letter dated October 4, 2016.  While I appreciate the strategic value to your client of attempting to gain leverage in this action after filing a meritless complaint and now facing the prospect of an award of damages and attorney's fees, your proposed Rule 11 Motion (the "Proposed Motion") is frivolous and serves no purpose but to harass, cause unnecessary delay, and/or needlessly increase the cost of litigation.  The Proposed Motion suffers from many of the same flaws as the original Complaint in this action—namely a failure to conduct a proper factual investigation and a gross misapplication of the law.[1]

As an initial matter, even if all of your allegations about Mr. and Mrs. Powell's Counterclaims were correct (which they are not), you still have not established that the Counterclaims warrant the draconian penalty of sanctions.  As the Ninth Circuit has proclaimed, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).  In determining whether sanctions are appropriate under Rule 11, courts consider whether "a competent attorney would have a good faith argument for the legal theory advanced after a reasonable inquiry into the facts and the law."  *Zaldivar v. City of L.A.,* 780 F.2d 823, 831 (9th Cir.1986), *abrogated on other grounds, Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 399 (1990)).

---

[1] The Proposed Motion also repeats in footnote 1 your fictitious recounting of our telephone conversation of September 7, 2016.  As you well know, during our conversation I indicated that our clients had been harassed by hang-up calls from a gym in the Phoenix area to their phone number that was only disclosed in the whois records for the domain name, and our clients believe Plaintiff is responsible for the harassment.  It belies belief that you are proposing to once again misrepresent to the Court that I stated that "Defendants have, in fact, received mistaken inquiries from gyms."  In light of the foregoing, and your apparent intention to repeat other statements that you know are untrue concerning the alleged non-use of the domain name, we remind you of your obligations under Rule 3.3 of the Arizona Rules of Professional Conduct.



Maria Crimi Speth, Esq.
Jaburg & Wilk, P.C.
October 24, 2016
Page 2

Although the Proposed Motion attempts to prove that Mr. and Mrs. Powell's
Counterclaims will not succeed, that is not the standard for Rule 11 sanctions.  *See
Cotter & Gell*, 496 U.S. at 396 ("[T]he imposition of a Rule 11 sanction is not a
judgment on the merits of an action.  Rather, it requires the determination of a
collateral issue: whether the attorney has abused the judicial process, and, if so,
what sanction would be appropriate.").  Nothing in the Proposed Motion suggests
that Mr. and Mrs. Powell's Counterclaims are not brought in good faith.  Moreover,
the Proposed Motion does not even establish that Mr. and Mrs. Powell's
Counterclaims lack merit.

First, your focus on "ownership" of the domain name is misplaced.  Although we
disagree both with your theory regarding Mr. and Mrs. Powell's bankruptcy and
your tactic of circumventing your own litigation to try to acquire the domain name
via the bankruptcy trustee, these issues are irrelevant to the Counterclaims.  15
U.S.C. § 1114(2)(D)(v) specifically provides "***a domain name registrant***" with the
authority to file a civil action to establish that its registration and use of the domain
name is not unlawful."  A registrant "is the person or organization who has
registered the domain name."  *See* ICANN, *Domain Name Registration Process*,
https://whois.icann.org/en/domain-name-registration-process (last visited Sept. 17,
2016).  There is no dispute that Mr. Powell is the named registrant of the domain
name.  *See* Compl. ¶ 29 ("Upon information and belief, Kent Powell is currently the
true registrant of the Domain Name and, as such, maintains full control over
whether he sells or transfers the Domain Name and what content appears on the
website that the Domain Name redirects to."); *see also* Countercl. ¶ 11; Pl.'s Ans. ¶
11 (admitting that Defendants registered the domain name heidipowell.com).  Thus,
Mr. and Mrs. Powell have standing to bring the Counterclaims.

Second, your statement that "'a registrar, registry, or other registration authority'
has taken no action" is factually inaccurate.  Mr. and Mrs. Powell's assertion that
the heidipowell.com domain name is locked by the domain name registrar,
GoDaddy, was based on:  (1) Mrs. Powell's review of the status of her account with
GoDaddy; (2) GoDaddy's Domain Name Registration Agreement, which permits
GoDaddy to "place any domain name(s) on registry lock, hold, or similar status . . .
during the resolution of a dispute"[2]; and (3) the standard practice of requesting a

---

[2] *See* GoDaddy, Domain Name Registration Agreement (Sept. 12, 2016), *available at*
https://www.godaddy.com/popups/d3documents.aspx?docid=REG_SA&ci=1840%23provisions_us.



Maria Crimi Speth, Esq.
Jaburg & Wilk, P.C.
October 24, 2016
Page 3

registrar lock upon filing a complaint under the ACPA.[3]  Upon learning of
Plaintiff's surprising position that she did not follow this standard practice, we
inquired with GoDaddy to confirm Mrs. Powell's understanding that the domain
name was locked in response to Plaintiff's complaint.  A representative from
GoDaddy responded: "We have placed HEIDIPOWELL.COM on registrar lock
pending outcome of the complaint."  As your subsequent e-mail exchange with
GoDaddy confirmed, the domain name has been locked by GoDaddy due to your
untenable complaint.  Accordingly, the necessary conditions have been met for
Defendants to bring their counterclaims.  I also note that you have not responded to
my email of October 21, 2016 asking if "you obtained GoDaddy's agreement to lift
the lock/suspension that is based on your complaint."

Your argument that Mr. and Mrs. Powell are not entitled to statutory damages and
that their damages claim is merely "an attractive carrot for the media" is simply
wrong.  As we advised you in our correspondence of August 15, 2016, there is
precedent for the award of statutory damages under 15 U.S.C. § 1117(d) for a
defendant prevailing on a counterclaim for reverse domain name hijacking.  In
*Walter v. Ville de Paris*, for example, the U.S. District Court for the Southern
District of Texas determined that the Defendant had no bad faith intent and ordered
the Plaintiff to pay "the sum of One Hundred Thousand and 00/100 Dollars
($100,000.00) for reverse domain name hijacking under 15 U.S.C. Section
1114(2)(D)(ii)(iv) and tortious interference" plus attorney's fees and costs. No.
4:09-cv-3939, 2012 WL 6934851 (S.D. Tex. Sept. 14, 2012).

Finally, your proposed use of two clearly marked settlement communications as
purported evidence of the validity of your claim regarding ownership of the domain
name violates both the letter and the spirit of Fed. R. Evid. 408, which provides that
evidence from settlement negotiations is not admissible "either to prove or disprove
the validity or amount of a disputed claim."

As demonstrated by the foregoing, filing the Proposed Motion would itself be
frivolous and apparently designed to continue your harassment of Mr. and Mrs.

---

[3] *See MasterCard Int'l Inc. v. Trehan*, 629 F.Supp.2d 824, 830 (N.D. Ill. 2009) (recognizing that
domain name was placed on registrar lock due to ACPA complaint); *Litigating In Rem
Cybersquatting Cases Under the ACPA – Best Practices and Considerations*, e-Commerce Law &
Strategy Newsletter (June 2002), *available at* http://www.oblon.com/publications/litigating-in-rem-
cybersquatting-cases-under-the-acpa-best-practices-and-considerations/ (recommending that
"counsel should take immediate steps to lock down the domain name").



Maria Crimi Speth, Esq.
Jaburg & Wilk, P.C.
October 24, 2016
Page 4

Powell or needlessly increase the cost of this litigation. **Be advised that, should you nevertheless file the Proposed Motion with the Court, Mr. and Mrs. Powell will counter-move for sanctions.** *See Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) ("A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions.").

Sincerely,

*/s/ David E. Weslow*

David E. Weslow


cc:    Laura Rogal, Esq.
       Ari S. Meltzer, Esq.

# EXHIBIT B

# Declaration of Heidi Powell

1  **WILEY REIN LLP**
   1776 K Street NW
2  Washington, DC 20006
   (202) 719-7000

3
   David E. Weslow (*pro hac vice*)
4  dweslow@wileyrein.com

5  Ari S. Meltzer (*pro hac vice*)
   ameltzer@wileyrein.com
6
   Attorneys for Defendants Kent and Heidi Powell
7

8              **IN THE UNITED STATES DISTRICT COURT**

               **FOR THE DISTRICT OF ARIZONA**
9

10  Heidi Powell,                          Case No. 2:16-cv-02386-SRB

11                         Plaintiff,      **Declaration of Defendant Heidi Powell
                                           Pursuant to 28 U.S.C. § 1746**
                    v.
12
    Kent Powell and Heidi Powell,
13                         Defendants.

14

15       I, Heidi Powell, hereby declare as follows:

16       1.      I am one of the named defendants in the above-captioned matter.

17       2.      I submit this Declaration in support of Defendants' Response in Opposition

18  to Plaintiff's Motion for Sanctions and Defendant's Cross-Motion for Sanctions and

19  make this Declaration based on my personal knowledge.

20       3.      I changed my name to Heidi Powell upon marring my husband in 1979.

21       4.      My husband, Kent, purchased the heidipowell.com domain name for me on

22  November 26, 2005 as a gift for our 26th wedding anniversary.

5.     I have used the heidipowell.com domain name since 2005 for email, as an account login, and for promotion of my various business endeavors.

6.     Over the last four months, the impact of this lawsuit has been an enormous life disruption and heartache for Kent, my immediate family and me. Our initial reaction when we found out we were being sued was one of disbelief. We thought this had to be a scam or some kind of sick joke. It could not possibly be real. The reality that it is real has been a mix of shock, serious concern, disgust, deep sadness and fear.

7.     Reading the abundance of lies written throughout the Plaintiff's motions and replies causes me great anxiety and is the most upsetting part of all. All of this has caused an overwhelming amount of stress, sleepless nights too many to count and the emotional roller coaster ride of ups and downs for both Kent and me.

8.     Having to defend myself to a stranger with the same name, over the fact that my husband (who gave me the name Heidi Powell over thirty six years ago) romantically gifted me my own name, my own signature, in the form of a domain name, just because this stranger with my name (who wasn't even born yet when I became Heidi Powell) decided she'd like to have what I own and will stop at nothing to steal it away from me is one of the most outrageous, unconscionable, unethical, unprincipled, unforgivable immoral and wrong things that has happened to me in my sixty years of life. For someone who lives their

2

1    life based on honesty and love this is a very big hurt and a very big deal. When

2    this started my world stopped. All my time, energy and heart had to be shifted

3    away from my work from which I need income, my family, my friends and my

4    home to focus on the daily activities of defending my husband and myself from

5    her unscrupulous actions.

6        9.      Plaintiff's harassment in pursuit of this domain name has been

7    ongoing. The beginning of this travesty reaches clear back to 2012. On October

8    27, 2012, Kent received a phone call from a Godaddy agent telling us that he had

9    an anonymous buyer for my domain name heidipowell.com. My domain name

10   was not listed for sale, nor has it ever been for sale. Yet the agent persisted,

11   calling four times that day. Kent's answer was the same each time (although with

12   growing irritation): the name was not for sale at any price and to please stop

13   calling.

14       10.     A couple of years later I received a phone call from a woman that

15   identified herself as a "friend" of another "Heidi Powell". She was calling to see

16   if she could purchase my domain name heidipowell.com for her friend. I told her

17   that the name was not for sale, Heidi Powell is my name and I'm not interested in

18   selling it. After the phone call ended I searched the caller ID info that came in. I

19   found that the phone number and name matched a stay at home mom of 5 or 6

20   children, who wrote a blog and resided in Phoenix, Arizona. It seemed reasonable

21   at the time, and now more than ever, that the friend she was calling for was and is

22

3

1 | the Plaintiff, "Heidi Powell".

2 |   11.  On May 20th of this year I received a phone call from an intellectual

3 | property attorney named Sandra L. Etherton in Arizona. She left a voice mail that

4 | she had a client who was interested in buying the domain heidipowell.com from

5 | me. Here we go again. I called the woman back and very nicely told her that my

6 | domain name is not for sale, at any price. When she claimed that I was not using

7 | it, I informed her that it has been my email address for over ten years and that the

8 | address also has pointed to my website. We ended the conversation with me

9 | feeling threatened, weak and in shock.

10 |   12.  Later that day I received an email from Sandra saying she was

11 | following up to a message she left the previous day and was interested in

12 | purchasing my domain name. The entire experience was bizarre and gave me a

13 | very bad feeling.

14 |   13.  The day after the threatening phone call I received from Sandra

15 | Etherton, I deliberately put up a one page website at my domain not to benefit

16 | from any traffic intended for Plaintiff, but to make it crystal clear to the world

17 | who I am and who I am not. I wanted there to be no question that I indeed have

18 | nothing in common with this person who unfortunately shares my name and,

19 | more importantly, that I AM someone. I AM somebody. I AM Heidi Powell and

20 | have a right to breathe the air around me. I AM someone who has lived a life and

21 | have my own accomplishments to be proud of. Anyone going to heidipowell.com

22 |

4

can clearly see who I am and what my intentions are. The page speaks for itself. Again, I thought that would be the end of it. Who could go there and not see this?

14.     On reading the legal documents the Plaintiff filed against us we learned that she filed for a trademark of the name "Heidi Powell" on April 19th of this year. I went online and looked that up. The correspondent on the application is listed as Sandra L. Etherton of Etherton Law Group of Scottsdale, Arizona. I had no doubt who she was representing when she called, but this proves it.

15.     Plaintiff's pleadings repeatedly have mischaracterized my use of the heidipowell.com domain name. Plaintiff's Motion for Sanctions alone includes the following indisputably false statements:

- "She assumed the domain was available because it was merely parked, the public face of the website was a placeholder and never been put to use." ECF No. 34 at 2. There are screenshots at the Internet archive proving the website was not "merely parked" and directed to various websites over the years, including my personal Facebook page.

- "She soon found, however, that the domain name was not available because it had been reserved by someone else—Defendant Kent Powell—who was merely parking the domain name and had been for years." *Id.* This statement is untrue. The name was forwarded to many different places as I stated in the conversation with Plaintiff's

5

1    attorney, Sandra Etherton. The domain was used from the time

2    which it was purchased as my personal email address and still is to

3    this day.

4    • "Plaintiff made various attempts to reach out to try to purchase the

5    domain name. Defendants generally resisted and, at one point,

6    demanded $50,000." *Id.* While it is true that Plaintiff repeatedly has

7    harassed me over the past four years, the domain name has never

·8    been for sale. The statement that a demand was made for $50,000 is

9    an outright lie. That is an outrageous false statement.

10   • "Sometime thereafter, Defendants, for the first time, posted content

11   on the site, linking to their web development and design services to

12   exploit the increased traffic intended for Plaintiff." *Id.* This is a

13   preposterous, untrue accusation. I am entitled to use the domain

14   name that I own in connection with the name I have had since long

15   before Plaintiff, and the page displayed at heidipowell.com speaks

16   for itself.

17   • "Plaintiff filed a lawsuit based on cybersquatting because the

18   domain name, which was registered by Defendant Kent Powell, had

19   sat dormant and unused for years." *Id.* at 3. This statement is false. I

20   have used the domain for my personal and private email since it

21   was purchased in 2005. That is in fact why Kent purchased the

22

6

1      name for me. To use for email.

2      16.    I continue to maintain the password to the GoDaddy account

3   containing the heidipowell.com domain name and control the content displayed

4   when a person visits www.heidipowell.com.

5      17.    When I checked the status of the domain name after receiving a copy

6   of the Complaint, I found the following settings: "Domain lock: On"; "Transfer

7   domain to another Godaddy account (disabled)"; "Transfer domain away from

8   GoDaddy (disabled)"; "Get authorization code (disabled). Delete domain

9   (disabled)."

10     18.    I did not recall having seen these "disabled" notifications in the past.

11     19.    I do not currently have the ability to remove the domain lock, the

12   domain name remains locked, and I cannot edit the technical settings for the

13   domain name.

14     20.    Our use of the domain name, therefore, remains impaired due to this

15   baseless lawsuit.

16     21.    Kent and I are honest, loving and caring, 60 year old people who

17   obviously are not cybersquatters. It doesn't take a rocket scientist to see this. Life

18   is very precious and very short to us. It's shameful to me that the Plaintiff or

19   anyone, would waste these many precious hours causing continued trouble,

20   heartbreak and grief for us and those who have come to our defense. All in an

21   attempt to steal what doesn't belong to her and what she can't have. We have

22

7

1   done nothing to cause this and have asked them to leave us alone for four years

2   now. We are praying that this proceeding will bring relief for everything they've

3   put us through and create an order of protection over us from any further harm

4   they may try to put on us.

5       22.    Unfortunately, it appears that Plaintiff will stop at nothing to get what

6   she wants, even if it means inflicting tremendous emotional pain on me and Kent

7   in the process. That she would ask the bankruptcy Trustee to reopen our personal

8   bankruptcy  -one of the most difficult chapters in our life—is astounding and

9   reflects a level of desperation and heartlessness that we cannot even fathom.

10      23.    As our recent filing in the bankruptcy case makes clear, the domain

11  name was nothing more than a liability at the time of our bankruptcy. It was my

12  name, my e-mail address, and nothing else. I could not have imagined at the time

13  that anyone else would have wanted the domain name, much less been willing to

14  go to such lengths to obtain it with no regard for the misfortune and pain that she

15  is causing in the process.

16      24.    The bankruptcy documents also make clear that Kent and I have very

17  little. So it causes us tremendous grief that one of the few things I do have  -my

18  name—is under assault by someone "famous" with a ton of things to claim.

19

20

21

22

8

1       I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.

3       Executed on November 18, 2016.

4

5

6                     Heidi Powell

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

9

# EXHIBIT C

# *Atico Int'l USA, Inc. v. Tofasco of America, Inc.*, No. 02-60984 Dkt. No. 208 (S.D. Fla. Apr. 9, 2004)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 02-60984-CIV-JORDAN

ATICO INTERNATIONAL USA, INC.   )
                                       )
       Plaintiff                 )
                                       )
vs.                                      )
                                       )
TOFASCO OF AMERICA, INC.        )
                                       )
       Defendant               )
_____)

FILED by ___CH___ D.C.

APR 0 8 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. — MIAMI

### OMNIBUS ORDER

     This order addresses all the pending motions outside of the summary judgment motions and Atico's motion to strike the expert report of Dr. Slocum.

     1. On January 9, 2004, a hearing was held on all pending motions. Pursuant to that hearing, certain motions are now moot. The motion of Tofasco for an expedited status conference [D.E. 146] and for an expedited pretrial conference [D.E. 153] are both DENIED AS MOOT since the hearing addressed the concerns listed in those motions. At the hearing, Tofasco stated that it had withdrawn its motion to dismiss the second amended complaint [D.E. 100] in its motion to in opposition to Atico's motion to continue the trial [D.E. 144]. Pursuant to this representation, Tofasco's motion to dismiss the second amended complaint [D.E. 100] is DENIED AS MOOT. At the hearing, I also postponed the trial. Atico's motion to continue the trial [D.E. 126] is therefore DENIED AS MOOT. Tofasco's agreed motion for enlargements of times to respond to Atico's pending motions [D.E. 131] is GRANTED NUNC PRO TUNC. Tofasco's responses to Atico's motions [D.E. 124, 126, 128, 129] are deemed timely filed.

     2. Atico has filed a motion for leave to amend the second amended complaint to add a prayer for punitive damages and a motion to add additional affirmative defenses. For the reasons which follow, Atico's motion for leave to amend to add a prayer for punitive damages [D.E. 107] is DENIED and its motion for leave to amend to add additional affirmative defenses [D.E. 128] is GRANTED IN PART, and DENIED IN PART.

     The amendment of a pleading is normally governed by the principles of Rule 15(a). But when the motion for leave to amend is filed after the deadline prescribed by a scheduling order, the

question is whether the motion for leave to amend satisfies the good cause standard of Rule 16(b). *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). The good cause standard is satisfied where the party seeking the amendment was unable to comply with the scheduling deadline despite diligently pursuing his claim. *Id.* at 1417.

On June 20, 2003, I issued an amended scheduling order, setting the deadline to amend pleadings as July 18, 2003. Atico filed an amended pleading on July 18, 2003. On September 5, 2003, Atico filed a motion for leave to amend the complaint to add a prayer for punitive damages [D.E. 107]. Atico states that since the amendment deadline, it discovered additional facts which support a claim for punitive damages against Tofasco. Specifically, Atico alleges that the July 31, 2003, depositions of Jerry Brown and Jeff Geisler, both vice-presidents of sales for Tofasco, along with the letter-writing campaign and actions of Tofasco, "make it evident that Tofasco has engaged in conduct which is malicious, fraudulent, egregious, and with wanton disregard for the rights of Atico..." Atico states that the depositions took place after the amendment deadline not through any lack of diligence on its part, but because of agreements to stay certain discovery deadlines and the transfer of this case from Judge Ferguson. This case, however, was filed on July 18, 2002, and Atico has had a year to amend its complaint. As the vice-presidents of sales for Tofasco, Mr. Brown and Mr. Geisler are likely to have knowledge which may affect Atico's understanding of its claims, and Atico was clearly aware of that. The reasons Atico offers for failing to take these depositions within the year provided do not satisfy the good cause standard of Rule 16(b). Atico will not be allowed to seek punitive damages

On November 4, 2003, Atico also filed a motion for leave to amend the complaint to add the following affirmative defenses: (1) invalidity of the patents because they fail to meet the conditions for patentability within the meaning of 35 U.S.C. §§ 102 and 103; and (2) unenforceability of the patents due to inequitable conduct during the prosecution of the patents, namely the failure to disclosure relevant prior art. Atico also seeks to amend the complaint to add the following prayers for relief: (3) a declaratory judgment that it has not infringed any valid claim of any Tofasco patents; and (4) that all asserted claims of the Tofasco patents are invalid and unenforceable, and a declaratory judgment that this is an "exceptional case" within the meaning of 35 U.S.C. § 285 warranting an award of reasonable attorneys' fees.

2

I would generally not find good cause under the *Sosa* standard for the reasons stated earlier. Nevertheless, I am troubled by the fact that the United States Patent and Trademark Office ("PTO") is currently reexamining all claims of the '304 Patent, and has stated the following: "[T]he Levine [patent] . . . raise[s] a substantial new question of patentability as to claims 1-24 [of the '304 patent], which question has not been decided in a previous examination of the Zheng patent." *See* D.E. 204, Exhibit A. Moreover, Mr. Zheng does not deny in his affidavit that he failed to disclose prior art, as required by the PTO. He only states that he never received a copy of the patent during its prosecution, and that his English skills are insufficient to fully comprehend the patent applications. These developments, after the amendment deadline, satisfy the good cause standard of *Sosa*, but only with regard to the '304 patent.

Atico's motion to amend the complaint to add the affirmative defenses of invalidity and unenforceability is GRANTED IN PART, and DENIED IN PART. Atico may amend the complaint only to add the affirmative defenses of invalidity and unenforceability with respect to the '304 patent. In all other respects, the motion to amend [D.E. 128] is DENIED.

3. Tofasco has filed an agreed motion to file two motions for partial summary judgment and to allow its motion for partial summary judgment of infringement to exceed the page length [D.E. 132]. Tofasco's motion to file two partial summary judgment motions is GRANTED and the partial summary judgment motions (the first on Atico's counts for unfair competition, and the second on the issue of infringement) are deemed filed as of November 17, 2003, the date this motion was filed. Tofasco's motion to exceed the page limit by seven pages in its partial summary judgment of infringement is also GRANTED NUNC PRO TUNC. Atico's motion for an extension of time to file its response to Tofasco's motion for summary judgment [D.E. 149] is GRANTED NUNC PRO TUNC. Atico's response to the summary judgment motion filed December 8, 2003 [D.E. 154, 155] is deemed timely filed.

4. Atico has filed a motion for summary judgment of non-infringement and invalidity. Atico's agreed motion to exceed the page limit by eight pages in its summary motion [D.E. 138] is GRANTED. Tofasco's motion for an extension of time to response to Atico's summary judgment motion [D.E. 142] is GRANTED NUNC PRO TUNC. Tofasco's response to the summary judgment motion filed December 16, 2003 [D.E. 171] is deemed timely filed.

3

5. The parties have jointly filed a motion to enlarge the deadline for disclosure of rebuttal expert witnesses, and to conduct the depositions of expert witnesses [D.E. 130]. As the original deadlines for those disclosures have passed and since the parties have agreed to the enlargement, that motion [D.E. 130] is GRANTED NUNC PRO TUNC. The parties' rebuttal expert witnesses reports are deemed timely filed and any depositions of expert witnesses conducted by November 30, 2003, are considered timely conducted.

6. By allowing Atico to amend its complaint to add the affirmative defenses of invalidity and unenforceability, the nature of this case has changed. Accordingly, I am re-opening the discovery period *on the issues of unenforceability and invalidity of the '304 patent only* and resetting the pre-trial and trial deadlines. This case is reset for trial during the Court's two-week trial calendar beginning on September 6, 2004. Calendar call will be held at 9 a.m. on August 31, 2004. No pre-trial conference will be held unless a party requests one no later than 30 days prior to the calendar call or the Court determines that one is necessary. The parties shall adhere to the following schedule:

| | |
|---|---|
| June 7, 2004 | All discovery is completed. |
| June 21, 2004 | Parties to have completed mediation. |
| July 5, 2004 | All pre-trial motions other than motions *in limine* are filed. |
| August 27, 2004 | Parties to submit joint pre-trial stipulation and proposed jury instructions. |

Because I have re-opened discovery on the '304 patent, the portion of the parties' cross motions for summary judgment relating to the '304 patent [D.E. 132, 133] are DENIED AS MOOT and Atico's motion for leave to file recently discovered evidence [D.E. 195] is GRANTED. Tofasco's motion for an enlargement of time to file its response to this motion [D.E. 200] is GRANTED NUNC PRO TUNC. Tofasco's response is deemed timely filed.

Although I have granted Atico leave to amend as to the '304 patent, I have no view as to the merits of this defense. If this turns out to be a fishing expedition on Atico's part, I will not hesitate to impose sanctions.

7. Atico has filed two motions to compel discovery. In the first motion to compel, filed October 23, 2003 [D.E. 124], Atico seeks to compel Tofasco to fully respond to the interrogatories and requests for production identified in the motion.

The first motion to compel [D.E. 124] is GRANTED IN PART and DENIED IN PART as follows:

4

- First Set of Interrogatories
  - Interrogatory No. 5: GRANTED
- Second Request to Produce
  - Request 9: DENIED.
  - Request 33: GRANTED.
  - Request 41: DENIED.
  - Request 46: GRANTED.
  - Requests 59, 62, 65: GRANTED.
  - Requests 69, 63, 66: DENIED.
- Third Request to Produce
  - Request No. 1: GRANTED.
  - Request No. 2: DENIED.
  - Request No. 3: DENIED.
  - Request No. 5: GRANTED.
  - Request No. 11: DENIED.
  - Request No. 15: DENIED.
  - Request No. 17: GRANTED.
  - Request No. 32: DENIED.
  - Request No. 33: DENIED.

As to all requests granted, Tofasco shall comply by April 22, 2004.

The second motion to compel, filed November 7, 2003 [D.E. 129], arises out of Tofasco's conduct during depositions conducted on October 6-8, 2003, of its Rule 30(b)(6) witnesses. A week prior to the scheduled depositions, Tofasco advised Atico that it would not be producing witnesses to testify regarding 18 of the categories set forth in the notice of deposition. During the depositions, when certain subject areas were explored, Tofasco's counsel instructed its witnesses not to answer certain questions. Atico seeks an order compelling Tofasco to produce witnesses to testify on the 18 categories to which Tofasco earlier objected, and to produce the witnesses who testified for re-examination on the areas which they were instructed not to answer. This motion to compel [D.E. 129] is GRANTED IN PART, and DENIED IN PART. I have granted Atico leave to amend its complaint

to add the affirmative defenses of invalidity and unenforceability as to the '304 patent and re-opened discovery for the limited purpose of addressing these new affirmative defenses. Atico may retake these depositions as part of its discovery if it so wishes.

Nevertheless, Tofasco's behavior was clearly in violation of Local Rule 30.1.A.3 and Fed. R. Civ. P. 30(d)(1). A deponent may be instructed not to answer a question "*only when* necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1) (emphasis added). An attorney may not unilaterally decide what is relevant and direct the witness to not answer on those grounds. Tofasco should have sought a protective order under Rule 30(d)(4) if it felt that the deposition should have been limited in its scope. I believe sanctions upon Tofasco's counsel are warranted, in the amount of reasonable costs and attorney's fees incurred by Atico in bringing this motion to compel. If the parties cannot agree on the amount to be paid, Atico shall submit its request for reasonable fees with sufficient evidentiary basis by April 23, 2004. Tofasco shall file its response by April 30, 2004. Memoranda shall be served by facsimile.

8. Tofasco has filed a motion to strike Atico's 35 U.S.C. § 282 notice [D.E. 183]. This motion is DENIED. Under § 282, the party asserting invalidity *or* noninfringement is required to give notice in writing to the adverse party of any patent that it intends to rely on as anticipation of the patent in suit at least thirty days before trial. The purpose of § 282 "is to prevent unfair and prejudicial surprise by the production of unexpected and unprepared-for prior art references at trial." *See Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed.Cir. 1986). This case presents issues of infringement and invalidity, so Atico is required to submit this § 282 notice. I will rely on it only to the extent that it is relevant to the issues in this case.

9. Tofasco has filed a motion to strike Atico's notice of recent facts related to the '119 patent [D.E. 203-1] and to compel Atico to show cause why it should not be held in contempt [D.E. 203-2]. Atico's notice is styled "Notice of Recent Facts that Render Moot the Parties' Cross Summary Judgment Motions with respect to the '119 Patent," and alleges that it offered Tofasco a written covenant wherein it agreed to no longer sell the chairs accused of infringing the '119 patent, and that Tofasco refused this "proposed settlement." Federal Rule of Evidence 408 prohibits the introduction of settlement offers to prove liability for or invalidity of the claim, or disclosure of conduct or

6

statements made during settlement negotiations. Atico is seeking to dismiss the claims relating to the '119 patent based on this notice of recent facts. As such, this disclosure clearly goes to the validity of the claim and is inappropriate. Moreover, there is nothing in Rule 408 which suggests (as Atico claims) that this prohibition is limited to disclosure of the opposing party's settlement offers, conduct or statements. Atico is not exempt from Rule 408 merely because it seeks to introduce its own confidential documents. Rule 408 offers both parties the assurance that all settlement negotiations and behavior are confidential, including a party's refusal to settle and the offers it receives. Finally, a covenant not to sell signed by one party only is not a basis for dismissing claims of past infringement and potential future infringement. If Atico is introducing this covenant in order to support its position or standing with me, and without regard for evidentiary rules, it is warned that this sort of behavior will not be tolerated. Accordingly, Tofasco's motion to strike Atico's notice of recent facts [D.E. 203-1] is GRANTED. The Clerk is directed to strike from the record Atico's notice of recent facts related to the '119 patent [D.E. 197]. Tofasco's motion to compel Atico to show cause and for sanctions [D.E. 203-2] is GRANTED IN PART and DENIED IN PART. Atico has already addressed the issue of whether it should be held in contempt in its response, so Atico is not required to show cause. I believe sanctions against Atico are warranted, in the amount of reasonable costs and attorney's fees incurred by Tofasco in bringing this motion to strike. If the parties cannot agree on the amount to be paid, Tofasco shall submits its request for reasonable fees with sufficient evidentiary basis by April 23, 2004. Atico shall files its response by April 30, 2004. Memoranda shall be served by facsimile. Tofasco's motion for enlargement of time to file its reply in support of this motion to strike [D.E. 207] is DENIED AS MOOT.

7

As explained above, both parties are to be sanctioned for one motion each, in the amount of reasonable costs and attorney's fees. The parties can decide to resolve these matters amicably, given that the likely scenario is that what one side is awarded in fees and costs will wash out with what it must pay in fees and costs. But if both sides want to play out the sanctions process, I will play it out with them, though I am confident that there will be no winners. Counsel for the parties are directed to provide a copy of this order to their clients, who may want to have a say in whether more attorney's fees are spent on the issue of the sanctions.

I have one parting comment for the parties and their counsel. If the attorneys continue to act as though the Federal Rules of Civil Procedure and Federal Rules of Evidence are merely aspirational guidelines, I will make sure that the next five months are not pleasant.

DONE and ORDERED in chambers in Miami, Florida, this 8th day of April, 2004.

Adalberto Jordan
United States District Judge

Copy to:    All counsel of record
            Magistrate Judge Brown

8