**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Maria Crimi Speth (012574)
mcs@jaburgwilk.com

Attorneys for Plaintiff

## United States District Court

## For The District Of Arizona

| | |
|---|---|
| Heidi Powell, an Arizona resident, | Case No. 2:16-cv-02386-SRB |
| Plaintiff, | **Plaintiff's Reply In Support of Motion for Sanctions** |
| v. | |
| Kent Powell and Heidi Powell, husband and wife, | **And** |
| Defendants. | **Response to Defendant's Cross-Motion for Sanctions** |
| | (Assigned to the Hon. Susan R. Bolton) |

Plaintiff Heidi Powell hereby files her Reply in Support of Motion for Sanctions and Response to Defendant's Cross-Motion for Sanctions. Plaintiff should be awarded her reasonable fees and costs in defending Defendants' unjustified Counterclaim. Defendant's Cross-Motion for Sanctions is similarly unjustified and should be denied. This Reply is supported by the following Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Defense counsel strains to deflect from their own conduct. Plaintiff asserted a reasonable claim against Defendants and then opted to pursue her efforts in bankruptcy court, the only appropriate forum under the circumstances. But Plaintiff's claims are not

at issue. Defendants' attempts to demonize[1] Plaintiff belie the fact that Plaintiff agreed to, and did, voluntarily move to dismiss her Complaint months ago. Defense counsel calls Plaintiff a "bully" while simultaneously maintaining an unwarranted action, driving up fees in attempt to gain leverage, and seeking publicity for themselves at the possible expense of their clients. Defense counsel's various arguments are inapposite. Sanctions against them are appropriate.

Moreover, Defendants' Cross-Motion for Sanctions identifies no reasonable grounds for imposing sanctions against Plaintiff. The cross-motion constitutes further effort to drive up costs, create media attention, and gain leverage against Plaintiff. The cross-motion should be denied.

## II.   PLAINTIFF'S REPLY IN SUPPORT OF RULE 11 MOTION

Defendants argue there are no grounds for Rule 11 sanctions against them because the imposition of sanctions requires determination of "whether the attorney has abused the judicial process, and if so, what sanction would be appropriate." (Doc. 36, p. 7, citing *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 396 (1990)). Defendants claim Plaintiff is merely arguing the merits of the action, so sanctions are not available. (*Id*.) But when a party pursues clearly unjustified claims for the sake of gaining leverage in a different matter (and generating publicity for the attorneys), the merits are inextricably

---

[1] Defendants attach declarations making various scathing allegations against Plaintiff. While the personal attacks are entirely irrelevant and do not warrant mention, suffice it to say there are various misrepresentations contained therein. As one example, Defendants declare under penalty of perjury that it "is an outright lie" and "an outrageous false statement" that Defendants demanded $50,000 for the domain name. (Doc. 36, p. 53). In September 2012, Plaintiff engaged GoDaddy's Domain Buy Service, which allows parties to make anonymous offers to buy already-registered domains. On October 26, 2012, the Domain Buy Service wrote that Defendants refused the $2,000 offer for the domain and responded with a counter-demand for $50,000. The communications from the Domain Buy Service are attached as **Exhibit A**.

18796-18796-00001\AKH\AKH\2297114.2

bound to such abuse. Thus, it is necessary to evaluate both the merits and Defendants' and defense counsel's knowledge and intent.

Initially, the parties agreed to mutually dismiss the lawsuit. (Doc. 25). But Defendants then purported to repudiate the agreement. (*Id*.) They have since argued they should not be held to the agreement because, *inter alia*, they were not aware of Plaintiff's effort to purchase the domain name from the bankruptcy estate. (Doc. 28). In effect, Defendants acknowledge they continue pursuing the Counterclaim to counteract Plaintiff's attempt to purchase the domain name out of the bankruptcy court. But when the Counterclaim so clearly lacks merit, it is inappropriate to keep the case alive for strategic advantage.

### A.   Defendants' claims lack merit because they have no right to ownership of the domain name and, thus, no remediable injury.

Defendants argue the bankruptcy issue is "a red herring designed to needlessly draw the Court into a pending bankruptcy matter in another jurisdiction." (Doc. 36, p. 7). But this claim is disingenuous as Plaintiff has endeavored to dismiss the case in its entirety for months. The gist of Defendants argument that the bankruptcy is irrelevant is that the relied-upon statutes in their Counterclaim provide a cause of action to "a domain name registrant"—not a domain name "owner." (*Id*., p. 7-8).

### 1.   The domain name belongs to the bankruptcy trustee.

Defendants admit their 2012 bankruptcy was recently reopened and the trustee has sought permission to sell the domain. (*Id*. p. 10). Defendants admit they recently filed amended schedules to identify the domain name in the bankruptcy. (*Id*.) Defendants argue this "does not equate to transfer in ownership." (*Id*.) But Plaintiff has not claimed a transfer of ownership. Rather, Plaintiff argues the domain name never reverted back to Defendants upon discharge. Because failing to schedule an asset in bankruptcy precludes reversion of the asset upon discharge, Defendants could not have

18796-18796-00001\AKH\AKH\2297114.2

been the rightful owners of the domain name now or at the time of filing the Counterclaim. *See Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001).

While Defendants have made arguments in the bankruptcy court to attempt to recover the domain name from the bankruptcy estate (*see* Response to Trustee's Motion to Sell Domain Name (dkt. 28), *In re Powell*, 12-11140 (Bankr. W.D. Wash. Nov. 16, 2016)) the domain currently belongs to the bankruptcy estate—and has since 2012.

### 2. Defendants lack standing because they have no legal right to the domain name.

There certainly may be instances where a "registrant" and a "domain owner" are not the same entity. And there may be instances where the registrant has a valid cause of action under the relied-upon statutes despite not being the actual owner of the domain. However, the principle of standing requires that there be a redressable injury. *See Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861-62 (2000) (standing requires that the claimant demonstrate, *inter alia*, "redressability—a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact."). Although defense counsel contends Defendants need only be the "registrant" of the domain name to pursue the Counterclaim, the fact that Defendants have no legal right to the domain name means they also have no redressable injury. With no redressable injury, Defendants lack the requisite standing to pursue the Counterclaim.

Even if Defendants eventually obtain the domain name from the bankruptcy court, standing is based on facts that exist at the time of filing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4, 112 S.Ct. 2130 (1992). Standing cannot be generated by acquiring an interest in property after the filing. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1171 (9th Cir. 2013). Thus, the Counterclaim fails on standing alone.

### 3. Defense counsel has pursued the Counterclaim despite knowledge of lack of ownership.

Defense counsel has known the domain name is the property of the bankruptcy estate since before Plaintiff served her Rule 11 Motion. Indeed, Plaintiff attached Defendants' letter containing the "settlement proposal"—demanding that Plaintiff buy the domain name out of bankruptcy and hand it back to Defendants—for the purpose of demonstrating this knowledge. The letter demonstrates defense counsel's belief that Defendants' do not own the domain and their bad-faith intent to use the unjustified action as leverage in the bankruptcy matter. (Doc. 34, p. 8).

The letter did not serve to prove or disprove the merits of the case. Plaintiff did not require defense counsel's letter to demonstrate that the domain name remained an asset of the bankruptcy estate. The bankruptcy record accomplishes that. The letter merely demonstrated defense counsel's belief that the domain name belonged to the bankruptcy trustee and that defense counsel continued to push the Counterclaim anyway, driving up costs unnecessarily.

### B. Defense counsel affirmatively generated the lock on the website after Plaintiff already moved to voluntarily dismiss her Complaint.

Defendants acknowledge the lock on the website did not exist at the time they filed the Counterclaim—and even acknowledge the lock on the website did not arise until *after* Plaintiff voluntarily moved to dismiss her Complaint. (Doc. 36, p. 12). Moreover, *defense counsel* caused the lock to appear on the domain by presenting the Complaint (which, by then, Plaintiff had already moved to dismiss) to GoDaddy. (*Id*., p. 40-41). While defense counsel portrays their communication with GoDaddy as a good faith investigation, the purported inquiry appears more likely to have been carefully crafted to appear an inquiry while simultaneously acting as a notification. (*Id*., p. 38). Whether intentional or not, defense counsel proactively generated an element of their clients' cause of action *ex post facto*. It would be understandable if truly a mistake. Yet,

with knowledge of this "mistake," defense counsel *still* aggressively pursues the Counterclaim. The only possible reason to continue pursuing such defective claims is to artificially drive up Plaintiff's costs.

Defendants seek to downplay the defectiveness of the Counterclaim by suggesting they will amend the Counterclaim to allege these later facts "[i]f the Court desires." (*Id*., p. 12 n.4). Despite actual knowledge that they generated a vital element of the causes of action, defense counsel endeavors to pass off the purported injury as having been caused by Plaintiff—even though Plaintiff sought to voluntarily dismiss her Complaint a month before defense counsel took the action that created the lock. Defense counsel asks the Court to hold Plaintiff responsible where *defense counsel* caused the alleged injury. The argument is absurd. While defense counsel's initial actions may have been justifiable as merely a few instances of mistake, their continued pursuit of the Counterclaim after being apprised of the mistake is unjustifiable.

Defendants further seek to deflect from their unreasonable conduct by complaining that "Plaintiff's counsel has not responded to Defense counsel's repeated inquiries about whether Plaintiff asked GoDaddy to lift the lock/suspension that GoDaddy implemented upon learning of Plaintiff's Complaint." (*Id*., p. 11). To recount, defense counsel refused to mutually dismiss the lawsuit, opposed Plaintiff's voluntary dismissal, then generated the lock on the domain using the Complaint after Plaintiff had already filed her voluntary dismissal, and now demands that Plaintiff take action to remove the lock. Initially, it is not clear if defense counsel's lock is even subject to removal until the Court grants Plaintiff's voluntary motion to dismiss. In response to Plaintiff's inquiry as to the source of the lock, GoDaddy explained that "[i]f we are in receipt of a dismissal of the filed complaint, we would be able to remove the registrar lock." (*Id*., p. 40). Whether the pending voluntary motion to dismiss would satisfy the requisite "dismissal of the filed complaint" remains to be seen. In any event, defense

counsel is equally capable of providing the voluntary motion to dismiss to the registrar to inquire whether the motion would suffice to remove the lock *defense counsel* placed on the domain.

### C. Statutory damages under 15 U.S.C. § 1117(d) are not available to Defendants.

The only argument Defendants posit in favor of statutory damages under 15 U.S.C. § 1117(d) is an unpublished district court case out of Texas. (*Id*. p. 13, citing *Walter v. Ville de Paris (the City of Paris)*, No. 4:09-cv-3939, 2012 WL 6934851 (S.D. Tex. Sept. 14, 2012)). Defendants claim "Defense counsel has repeatedly directed Plaintiff's counsel to such a case awarding statutory damages under 15 U.S.C. §1117(d) for a defendant prevailing on a counterclaim for reverse domain name hijacking." (*See* doc. 36, p. 12). Defendants' reliance on this "case"—a two-page default judgment against the City of Paris, France—is particularly misleading.

First, the Defendant City of Paris never appeared to defend the action. Second, the complaint filed in the action made no reference to 15 U.S.C. § 1117(d) but sought damages "in an amount not less than $100,000." *See* Complaint, *Walter v. Ville De Paris (The City of Paris)*, No. 4:09-cv-3939, 2009 WL 5081798 (S.D. Tex. Dec. 8, 2009). Third, while the plaintiff's memorandum in support of default did argue that he was entitled to statutory damages under 15 U.S.C. § 1117(d), the memorandum goes on to argue, in the alternative, that "the statutory damage guidelines provide a symmetric guideline" to fashion an appropriate punitive damage award. *See* Memorandum in Support of Default Judgment ("Default Memorandum"), *Walter v. Ville De Paris (The City of Paris)*, No. 4:09-cv-3939, 2012 WL 5272403 (S.D. Tex. Sep. 13, 2012). The plaintiff had spent considerable time in the memorandum assailing the defaulted defendant for having acted egregiously. *Id*.

Finally, and most notably, the "case" (*i.e.*, the final default judgment) does not so much as mention 15 U.S.C. § 1117(d)—though it cites just about every other statute at issue. *See* Final Default Judgment, *Walter v. Ville de Paris (the City of Paris)*, No. 4:09-cv-3939, 2012 WL 6934851 (S.D. Tex. Sept. 14, 2012). The judgment merely awards the plaintiff $100,000, without stating whether the court deemed the award punitive damages or statutory damages under 15 U.S.C. § 1117(d). *Id*. In fact, the court's damages award actually references 15 U.S.C. § 1114(2)(D)(ii)(iv). *Id*. The plaintiff's default memorandum had argued this statute justifies punitive damages based on the language "shall be liable for *any* damages." *See* Default Memorandum, *Walter v. Ville De Paris (The City of Paris)*, No. 4:09-cv-3939, 2012 WL 5272403. Therefore, it is more likely the court intended the award as punitive damages than—as Defendants propose—statutory damages under 15 U.S.C. § 1117(d).

Thus, the case hardly supports Defendants' representation that the court "award[ed] statutory damages under 15 U.S.C. §1117(d) for a defendant prevailing on a counterclaim for reverse domain name hijacking." Ultimately, as presented in Plaintiff's Motion for Sanctions, the plain language of the statute demonstrates Defendants lack a good faith basis for seeking statutory damages under 15 U.S.C. § 1117(d).

Therefore, an award of sanctions against Defendants and defense counsel is justified for their unreasonable pursuit of the Counterclaim for an improper purpose.

## III.    RESPONSE TO DEFENDANTS' CROSS-MOTION FOR SANCTIONS

Defendants argue they are entitled to sanctions on grounds (1) Plaintiff's Rule 11 Motion is not based in law or fact and was filed for an improper purpose, and (2) Plaintiff based her claims on inadmissible settlement communications. (Doc. 36, p. 13-15). But Defendants' Cross-Motion for Sanctions identifies no reasonable grounds for imposing sanctions against Plaintiff. The cross-motion constitutes further effort to drive up costs to gain leverage against Plaintiff.

18796-18796-00001\AKH\AKH\2297114.2

**A.     Plaintiff's Rule 11 Motion is valid and justifies an award of sanctions.**

Plaintiff reiterates the contents of her Rule 11 Motion and her above Reply in support thereof. Defense counsel has engaged in unreasonably aggressive litigation conduct, pushing unjustified claims to generate publicity for themselves and to drive up costs for leverage in a different matter. The filings speak for themselves. Plaintiff will not belabor the issue.

**B.     The "settlement communication" was not presented to prove or disprove the validity or amount of a disputed claim; and its submission is not a proper ground for sanctions.**

Federal Rule of Evidence 408 provides that compromise offers and negotiations are not admissible "to prove or disprove the validity or amount of a disputed claim," but "[t]he court may admit this evidence for another purpose." Fed. R. Evid. 408(a) & (b). Such evidence may be admissible for various other reasons, including to show knowledge, motive, intent, or bad faith. *See, e.g.*, *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (evidence admitted to show bad faith); *U.S. v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (evidence admitted to show knowledge and intent); *Sage Realty Corp. v. Ins. Co. of North America*, 34 F.3d 124, 128–129 (2d Cir. 1994) (evidence admitted to show knowledge); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992) (evidence admitted to show intent).

Moreover, evidence of negotiations or settlement discussions may be admitted to show an improper scheme or artifice. *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D. Ariz. 1993) (evidence admitted to show improper retaliatory motive for pursuing lawsuit); *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (evidence admitted to show workings of loan scheme).

Plaintiff did not present defense counsel's demand letter to prove the validity or amount of a disputed claim. The letter was presented to show knowledge, intent, motive, bad faith, and improper artifice. The letter showed that defense counsel had

knowledge that the domain name belonged to the bankruptcy trustee while continuing to pursue the Counterclaim. Presumably, defense counsel would not have demanded that Plaintiff purchase the domain name out of bankruptcy and hand it back to Defendants if they did not believe such action were possible. The letter also showed defense counsel's intent and motive to use the Counterclaim as leverage in the bankruptcy matter. Similarly, the letter demonstrates defense counsel's bad-faith conduct and improper artifice to drive up costs in an unjustified action in attempt to force Plaintiff to buy the domain name and hand it over to Defendants. The demand letter was a threat to abuse the legal system to gain an unfair advantage. When Plaintiff did not acquiesce to Defendants' demand, Defendants continued their onerous motion practice in pursuit of the unjustified Counterclaim to drive up costs—thereby evincing defense counsel's improper artifice.

There is no possible prejudice to Defendants. Plaintiff did not need to present the letter to prove the validity or amount of a claim. The fact that the domain name belongs to the bankruptcy estate is a matter of public record. And, of course, Defendants acknowledge the facts that indicate the bankruptcy estate owns the domain. The issue is undisputed. Moreover, judges are frequently called upon to evaluate and determine admissibility of such evidence, and its presentation does not unfairly bias the court. *See, e.g.*, *Suenos LLC v. Goldman*, 633 Fed. Appx. 874, 879 (9th Cir. 2015) (holding it was an abuse of discretion for the district court to determine it was not permitted to consider settlement discussions for purposes of awarding fees); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (holding the amount stated in a settlement demand may be admitted to show proof of the amount in controversy for purposes of federal jurisdiction); *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 541 n.23 (D. Nev. 2013) (holding court can consider statements at the class certification stage because it was not then considering liability or damages). Thus, there is no possible prejudice to Defendants.

18796-18796-00001\AKH\AKH\2297114.2

1  And even if the Court were to deem the letter inadmissible, it is hardly grounds to
2  impose sanctions.

3  Defendants have actively increased unjustifiable expenses and injected undue
4  delay into this case, notwithstanding the truth of the matters before the Court. The
5  purpose of the Federal Rules of Evidence is "to administer every proceeding fairly,
6  eliminate unjustifiable expense and delay, and promote the development of evidence
7  law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid.
8  102. Defendants' argument that Plaintiff violated Rule 408 is yet another ruse to distract
9  from their own conduct and to further drive Plaintiff's costs.

10  Therefore, Defendants' Cross-Motion for Sanctions should be denied.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Heidi Powell respectfully requests that the Court assess sanctions against Defendants and defense counsel under Rule 11(c) and 28 U.S.C. § 1927 for continuing to pursue a frivolous Counterclaim for an improper purpose and for unreasonably and vexatiously multiplying the proceedings of this case. Plaintiff requests its reasonable attorney fees incurred in defending against the Counterclaim and in making this Motion for Sanctions. Plaintiff also requests the Cross-Motion for Sanctions be denied.

DATED this 25th day of November, 2016.

**Jaburg & Wilk, P.C.**

/s/Maria Crimi Speth
Maria Crimi Speth
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff

18796-18796-00001\AKH\AKH\2297114.2

**Certificate of Service**

I hereby certify that on November 25, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David E. Weslow
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006

Ari Scott Meltzer
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006

/s/ Aaron K. Haar

18796-18796-00001\AKH\AKH\2297114.2