**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

David E. Weslow (*pro hac vice*)
dweslow@wileyrein.com

Ari S. Meltzer (*pro hac vice*)
ameltzer@wileyrein.com

Attorneys for Defendants Kent and Heidi Powell

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi Powell,<br><br>                    Plaintiff,<br><br>v.<br><br>Kent Powell and Heidi Powell,<br><br>                    Defendants. | Case No. 2:16-cv-02386-SRB<br><br>**Reply in Support of Defendants'**<br>**Cross-Motion for Sanctions**<br><br>(Assigned to the Hon. Susan R. Bolton) |

Defendants Kent Powell and Heidi Powell ("Defendants"), by counsel and pursuant to Local Rule 7.2(c), hereby submit this Reply in support of their Cross-Motion for Sanctions against Plaintiff Heidi Powell ("Plaintiff") and Plaintiff's counsel.[1]

I. <u>**INTRODUCTION**</u>

It should not be lost among Plaintiff's continued *ad hominem* attacks against

---

[1] Although Plaintiff removed attorney Laura Rogal from the caption of her Response brief, Ms. Rogal signed Plaintiff's Motion for Sanctions (ECF No. 34) and therefore remains the subject of Defendants' Cross-Motion.

Defendants and their attorneys that: (1) prior to the filing of Plaintiff's Motion for Sanctions, Defense counsel provided Plaintiff with a detailed refutation of each of the alleged bases for Plaintiff's Motion for Sanctions; and (2) despite having been cautioned that their sanctions claims were frivolous, Plaintiff and her counsel proceeded to file the Motion for Sanctions—without addressing any of its substantive flaws. Thus, there can be no doubt that Plaintiff and her counsel filed the Motion for Sanctions for an improper purpose with full knowledge of the untenable nature of the Motion. Further exacerbating their misconduct, which began with the filing of this lawsuit, Plaintiff and her counsel attached to their Motion a clearly marked settlement communication for the purpose of disputing the validity of Defendants' counterclaims. Having offered no valid justification for their actions, Plaintiff and her counsel should be sanctioned.[2]

## II. PLAINTIFF HAS NOT PROVIDED A VALID JUSTIFICATION FOR FILING HER MOTION FOR SANCTIONS

Plaintiff fails to even acknowledge, much less address, the fact that in a letter dated October 24, 2016, Defense counsel refuted each of the alleged bases for Plaintiff's Motion for Sanctions and, despite having received this letter, Plaintiff and her counsel proceeded to file their Motion for Sanctions with no substantive edits. Plaintiff and her counsel were on notice that their Motion for Sanctions was frivolous

---

[2] Although there are numerous inaccuracies in the anonymous recitation in Exhibit A to Plaintiff's Reply and Response of conversations between Defendants and a representative from GoDaddy, because these are irrelevant to resolution of the instant Motion, Defendants do not address them here.

2

and, yet, Plaintiff's counsel signed and filed it anyways. Because Plaintiff only now addresses the arguments in the October 24 Letter, we briefly address the specifics of Plaintiff's improper sanctions claims below.

### A. As Registrants of the Domain Name, Defendants Have Standing and a Valid Claim.

Plaintiff concedes two critical facts that Defendants initially raised in their October 24 Letter: (1) under the applicable statute, the counterclaims are available to the *registrant* of the domain name; and (2) Defendants are the registrants of the domain name. Based on these facts alone, Plaintiff never should have asserted the initial basis alleged in her Motion for Sanctions.

Nevertheless, Plaintiff continues to ask this Court to prejudge a pending bankruptcy proceeding in another federal court by declaring that the heidipowell.com domain name is part of the bankruptcy estate. Even if this were correct, it would not change the fact that Defendants have been the registrants of the domain name at all relevant times and, therefore, have been injured by Plaintiff's knowing and material misrepresentations. *See* 15 U.S.C. §§ 1114(2)(D)(iv) and (v) (providing the "registrant" with causes of action for reverse domain name hijacking and no bad faith intent). Moreover, although the trustee (at Plaintiff's urging) has asserted that the domain name is the property of the bankruptcy estate, this is far from settled. Last week, the bankruptcy court judge continued a hearing on the trustee's motion to sell the domain name to allow for further briefing on this question. *See In re Kent Douglas Powell and Heidi Powell*, No. 12-11140 (Bankr. W.D. Wash. Nov. 23,

2016).[3] Thus, the question of ownership is not as clear as Plaintiff would like the Court to believe and, in any event, is not relevant to Defendants' ability to assert their counterclaims.[4] It certainly is not and never was a proper basis for seeking sanctions against Defendants and their counsel.

### B. Defendants Reasonably Believed the Registrar Lock Was the Direct Result of Plaintiff's Knowing and Material Misrepresentations.

Plaintiff concedes that the October 24th Letter informed her that Defendants' belief that Plaintiff had caused the locking of the domain name was based on: (1) the standard practice of a plaintiff's counsel requesting a registrar lock upon filing a complaint under the ACPA; (2) GoDaddy's Domain Name Registration Agreement, which permits GoDaddy to "place any domain name(s) on registry lock, hold, or similar status . . . during the resolution of a dispute"; and (3) the actual lock on the domain name. Thus, Plaintiff and her counsel knew that Defendants had a good faith basis for believing that Plaintiff had caused the locking of the domain name when they filed their counterclaims. Nevertheless, Plaintiff's counsel proceeded to sign and file the Motion, certifying that the claims were warranted by existing law and the factual contentions had evidentiary support despite knowing otherwise.

---

[3] At the hearing, Judge Marc Barreca expressed skepticism about whether the domain name was part of the bankruptcy estate and asked the trustee and debtors' counsel to address specific cases that he had found informing this question.

[4] Defendants' willingness to consider entering into a potential settlement agreement preserving the status quo rather than having to contest a transfer of the domain name did not constitute an admission that the domain name is the property of the estate and, in any event, is irrelevant to the identity of the registrant.

4

As a diversion, Plaintiff focuses on which party ultimately brought the knowing and material misrepresentations in Plaintiff's Complaint to GoDaddy's attention. Section 1114(2)(D)(v), however, provides a cause of action for any domain name that has been suspended, disabled or transferred without regard for what caused the domain name registrar to invoke its policy. *See* 15 U.S.C. § 1114(2)(D)(v) (providing a cause of action to "[a] domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II)"). Moreover, Section 1114(2)(D)(iv) applies to an action in response to any knowing and material misrepresentation, without regard for whether the misrepresentation was made directly to the registrar or whether the registrar learned about the misrepresentation through some other means. *See id.* § 1114(2)(D)(iv). That Plaintiff did not make her misrepresentations directly to GoDaddy, thus has no bearing on Defendants' good faith basis for bringing their counterclaims and Plaintiff's knowledge thereof when she filed her Motion for Sanctions. In any event, because Plaintiff knew that Defendants had a reasonable basis to believe she had caused the locking of the domain name, she never should have filed her Motion.

### C. <u>Defendants Had a Reasonable Basis to Request Statutory Damages.</u>

Once again, Plaintiff concedes that Defense counsel informed Plaintiff and her counsel of Defendants' reasonable basis to believe that statutory damages are available well before Plaintiff and her counsel signed and filed their Motion for Sanctions. In fact, Plaintiff expressly acknowledges that in *Walter v. Ville De Paris*,

the plaintiff argued in his memorandum in support of default "that he was entitled to statutory damages under 15 U.S.C. § 1117(d)." Plaintiff's Reply and Response (ECF No. 37) at 7. Although the court in that case did not articulate its specific grounds for awarding $100,000 in damages, this amount directly corresponds to the maximum statutory damages available under 15 U.S.C. § 1117(d), and Plaintiff cannot reasonably contend that it was unreasonable for Defendants to believe that the court awarded the statutory damages sought by the plaintiff. While Plaintiff is free to present arguments regarding the appropriate measure of damages for her reverse domain name hijacking at a later stage of the proceedings, Defendants had a reasonable basis to believe that statutory damages are available, and Plaintiff knew this when she nevertheless filed her Motion for Sanctions.

**III.   PLAINTIFF'S FILING OF A CLEARLY MARKED SETTLEMENT COMMUNICATION IS INDEPENDENTLY SANCTIONABLE**

Plaintiff's attempt to distinguish her disclosure of a settlement communication in an attempt to disprove the validity of Defendants' counterclaims from a permissible disclosure "for another purpose" must fail. It is an essential element of Defendants' counterclaims that Defendants are the registrants of the heidipowell.com domain name. *See* 15 U.S.C. §§ 1114(2)(D)(iv) and (v). As a defense to the counterclaims, Plaintiff has asserted that while Defendants may be the registrants, they are not the owners of the domain name. In her Motion for Sanctions, Plaintiff attached a clearly marked settlement communication, citing Defendants' statements therein to support her position that "Defendants are aware that Defendants do not

6

own the domain name at issue." *See* ECF No. 34 at 7. Thus, Plaintiff introduced the settlement communication in an attempt to disprove the validity of Defendants' counterclaims and to establish the merits of Plaintiff's defense to the counterclaims.

Plaintiff has provided no support for her attempt to avoid Rule 408 by distinguishing an argument that Defendants knew their claim was invalid from an argument that the claim itself was invalid. Not only is this argument circular (because an argument that Defendants purportedly knew the counterclaims were invalid is premised on the counterclaims being invalid), but Rule 408 expressly distinguishes statements made during compromise negotiations that are "about the claim" from other statements made during the negotiations. *See* Fed. R. Evid. 408(a)(2). Understandably, then, none of the cases cited by Plaintiff involved a communication directly about the validity of the claim. *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (evidence regarding settlement of a different claim); *United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (evidence regarding consent decree in different action); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992) (evidence regarding prior consent order admitted for limited purpose relating to facts, not claims); *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D. Ariz. 1993) (evidence regarding threats made at settlement meeting, not validity of claims); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (evidence "related to an entirely different claim").

In her most recent pleading, Plaintiff doubles down on her argument that the

1 statements in the settlement letter support her underlying claim, stating:
2 "Presumably, defense counsel would not have demanded that Plaintiff purchase the
3 domain name out of bankruptcy and hand it back to Defendants if they did not
4 believe such action were possible." Plaintiff's Reply and Response (ECF No. 37) at
5 10. Plaintiff's argument ignores the very practical purpose of any settlement offer in
6 litigation and this settlement offer in particular: to put the parties back in the position
7 they were before the Plaintiff began her harassment of the Defendants and the pursuit
8 of this baseless litigation. Once Plaintiff caused the reopening of Defendants'
9 bankruptcy and enticed the trustee with the prospect of a recovery, the simplest way
10 to undo her actions was to buy the domain name and then return it to Defendants.
11 Under Plaintiff's logic, any party making a settlement offer would be deemed to
12 admit the validity of their opponent's position. This further shows the importance of
13 sanctioning Plaintiff for misuse of settlement communications.

14 Finally, Plaintiff's argument that Defendants were not prejudiced by her
15 improper disclosure of a confidential settlement communication—essentially, "no
16 harm, no foul"—ignores the fact that Defendants have been forced to respond to
17 Plaintiff's Motion, which is based on the improper disclosure, as well as the purpose
18 behind Rule 408, which is "to encourage settlements which would be discouraged if
19 such evidence were admissible." *See* advisory committee notes to Fed. R. Evid. 408.
20 Plaintiff's bad faith disclosure of Defendants' settlement communication does just
21 that, disincentivizing parties from engaging in settlement discussions for fear that the
22

opposing party will use such discussions against them. The Court should not tolerate such bad faith litigation tactics and should appropriately sanction Plaintiff's counsel.

## IV. CONCLUSION

For the foregoing reasons and those stated in Defendants' Opposition and Cross-Motion for Sanctions, the Court should deny Plaintiff's Motion for Sanctions and grant Defendants' Cross-Motion for Sanctions.

DATED this 2nd day of December, 2016.

**WILEY REIN LLP**

 /s/ David E. Weslow /s/
David E. Weslow
Ari S. Meltzer
*Attorneys for Defendants*
*Kent and Heidi Powell*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of December 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will cause a copy to be served upon:

> Maria Crimi Speth, Esq.
> Laura Rogal, Esq.
> Jaburg & Wilk, P.C.
> 3200 N. Central Avenue, 20th Floor
> Phoenix, AZ 85012
> *Counsel for Plaintiff*

>   /s/ David E. Weslow /s/
> David E. Weslow
> Ari S. Meltzer
> *Attorneys for Defendants*
> *Kent and Heidi Powell*