**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Heidi Powell,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Kent Powell, et al.,<br><br>　　　　　Defendants. | No. CV-16-02386-PHX-SRB<br><br>**ORDER** |

At issue is Plaintiff's Motion to Enforce Settlement Against Defendants ("MES") (Doc. 25). The Court also considers Plaintiff's Motion for Voluntary Dismissal (Doc. 15), Defendants' Motion for Leave to File a Sur-Reply to Plaintiff's Reply in Support of Motion for Voluntary Dismissal (Doc. 18), Defendants' Motion for Partial Judgment on the Pleadings (Doc. 22), Plaintiff's Motion for Sanctions ("MFS") (Doc. 34), and Defendants' Response in Opposition to Plaintiff's Motion for Sanctions and Defendants' Cross-Motion for Sanctions ("Cross-MFS") (Doc. 36).

**I.　BACKGROUND**

This case arises out of Defendants Kent and Heidi Powell, husband and wife's, registration of the domain name www.heidipowell.com (the "Domain Name"). (Doc. 1, Compl. ¶¶ 2, 18-21.) Defendants allege they were married on December 23, 1979, at which point Mrs. Powell's legal name became Heidi Powell. (Doc. 13, Answer and Countercl. ("Countercl.") ¶ 10.) On or about November 26, 2005, Defendant Kent Powell registered the Domain Name. (*Id.* ¶ 19; Countercl. ¶ 19.) Defendants allege that since

registering the Domain Name, they have used it for email services and Mrs. Powell's home-based businesses. (Countercl. ¶ 12.) Plaintiff assumed the legal name Heidi Powell in 2010. (Countercl. ¶ 24; Doc. 23-1, Am. Answer to Countercl. ("Answer") ¶ 24.) Plaintiff alleges that she has used her name, Heidi Powell, in the public eye since 2010 and has used it in connection with a health and fitness blog, appearances on a reality television show, authoring books, and other health and fitness-related activities. (Compl. ¶¶ 5-15.) Plaintiff applied to register the trademark "Heidi Powell" on April 19, 2016. (Compl. ¶ 16; Countercl. ¶ 16.) Plaintiff alleges that Defendants have not been using the Domain Name for any legitimate purpose, asserts claims for cybersquatting and cyberpiracy, and requests a declaratory judgment that Defendants have used the Domain Name for the improper purpose of benefiting from the goodwill generated by the Heidi Powell trademark. (Compl. ¶¶ 33, 44-61.) Defendants assert a counterclaim for reverse domain name hijacking (trademark bullying) and for a finding of their lack of bad faith under the Anticybersquatting Consumer Protection Act ("ACPA"). (Countercl. ¶ 1.)

On September 9, 2016, Plaintiff's counsel sent a letter to Defendants' counsel expressing, among other things, that Plaintiff was "willing to dismiss the lawsuit in exchange for dismissal of the counterclaim, each side to bear their own costs." (Doc. 25-1, Ex. A at 3.) On September 13, 2016, Defendants' counsel responded that "we will agree to a stipulated dismissal of the claims and counterclaims *with prejudice*" and directed Plaintiff's counsel to provide a draft stipulated dismissal with prejudice. (Doc. 25-1, Ex. B at 8-9) (emphasis in original.) Plaintiff's counsel sent drafts of the stipulation and proposed order on September 14, 2016. (Doc. 25-1, Ex. C at 11.) On September 15, 2016, Defendants' counsel replied that he had changed the proposed stipulation to include a line "making clear that Defendants will retain ownership of the HeidiPowell.com domain name" and giving Plaintiff's counsel permission to file the altered stipulation. (Doc. 25-1, Ex. D at 13.) Shortly thereafter, Defendants' counsel learned that Plaintiff had offered the trustee in Defendants' 2012 bankruptcy case $10,000 to reopen the case and sell her the Domain Name on the theory that it still

belonged to the bankruptcy estate since it was not disclosed during the bankruptcy. (Doc. 28, Resp. in Opp'n to MES ("Resp. to MES") at 4; Doc. 33, Reply in Supp. of MES ("Reply MES") at 5-6.) Later that day, Defendants' counsel sent an email informing Plaintiff's counsel that Defendants would not consent to dismissal of their counterclaims. (Ex. D at 14.) Plaintiff argues that Defendants' counsel's September 13 response constituted a counteroffer to dismiss all claims with prejudice that Plaintiff accepted by sending a draft stipulation and requests that the Court enforce this agreement. (MES at 2.)

## II. LEGAL STANDARDS AND ANALYSES

### A. Motion to Enforce Settlement

Plaintiff argues that an enforceable settlement agreement was formed when she accepted Defendants' alleged counteroffer to dismiss all claims with prejudice. (MES at 2.) Defendants argue that there was never any mutual assent to the material terms of the settlement because the parties never agreed that Defendants would retain ownership of the Domain Name and argue that there was no consideration. (Doc. 28, Resp. in Opp'n to MES ("Resp. to MES") at 5-7.) Defendants argue in the alternative that, if an agreement formed, it should not be enforced because of fraudulent concealment, unilateral mistake, unclean hands, and a breach of the covenant of good faith and fair dealing. (*Id.* at 8-11.) A federal district court has the inherent authority to enforce agreements that settle litigation before it. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). General contract principles govern the "[c]onstruction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms." *Emmons v. Superior Court*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998). "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983). Acceptance must be "on virtually the exact terms as the offer, and any attempt to accept on terms materially different from the original offer constitutes a counter-offer." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 423 (Ariz. Ct. App. 1983).

To form a binding contract, the parties must mutually assent to all material terms. *Hill Shafer P'Ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990). Mutual assent is determined based on objective evidence, not the hidden intent of the parties. *Id.* at 815.

Defendants argue that the parties only agreed to exchange drafts of the stipulation and there was therefore no mutual assent on the terms of the settlement because Plaintiff was still attempting to gain ownership of the Domain Name. (Resp. to MES at 5-6.) The Court, however, finds that the September 13, 2016 email from Defendants' counsel was a clear counteroffer to dismiss all claims with prejudice. Defendants' counsel never expressed that a line about Defendants' ownership of the Domain Name was a necessary term to the agreement before Plaintiff's counsel accepted the counteroffer by submitting a draft stipulation. Furthermore, the Court is not convinced that such a line would have made a material change to the agreement since dismissal of the claims already would have resulted in no change to the Domain Name's ownership.[1] Defendants argue that if the Court enforces the agreement, it should order that Defendants retain ownership of the Domain Name and "that Plaintiff must cease from any further efforts to obtain the involuntary transfer of the domain name registration." (Resp. to MES at 11.) This proposed injunction on Plaintiff's conduct was never discussed between the parties as a condition of the terms of settlement, even if Defendants hoped this is what a dismissal with prejudice would achieve. *Hill*, 799 P.2d at 815 ("[M]utual assent is based on objective evidence, not on the hidden intent of the parties.") Therefore, the Court concludes that the objective evidence shows that the parties mutually agreed to dismiss all claims with prejudice.

Defendants also argue that there was no consideration for their promise to dismiss their counterclaims because Plaintiff's only requested remedy for her claims was a transfer of the Domain Name and that if Plaintiff could continue to pursue that through other means, her dismissing her claims would not be of any value to Defendants. (Resp.

---

[1] The Court gives no opinion as to whether the Domain Name legally belongs to Defendants or to their bankruptcy estate.

- 4 -

to MES at 7-8.) "Adequate consideration consists of a benefit to the promisor and a detriment to the promisee." *Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986). "Clearly a promise for a promise constitutes adequate consideration. . . ." *Id.* Here, Plaintiff promised to dismiss her claims with prejudice in exchange for Defendants' promise to do the same. Both parties agreed to give up their legal rights to pursue their claims. The fact that this promise did not prove to be as valuable as Defendants hoped given Plaintiff's attempts to secure the Domain Name through other means is of little importance to the issue of whether consideration was given. *See id.* ("Any performance which is bargained for is consideration, and courts do not ordinarily inquire into the adequacy of consideration." (citing Restatement (Second) of Contracts §§ 72, 78)). Therefore, the Court concludes that the agreement was supported by proper consideration.

Defendants argue that the agreement should not be enforced because Plaintiff's attempts to buy the Domain Name from the bankruptcy trustee while negotiating the settlement agreement constitute fraudulent concealment. (Resp. to MES at 8-9.)[2] A party who is fraudulently induced to enter a contract is entitled to seek rescission of the contract. *Jennings v. Lee*, 461 P.2d 161, 165 (Ariz. 1969). The elements of fraudulent concealment are:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Coleman v. Watts*, 87 F. Supp. 2d 944, 951–52 (D. Ariz. 1998). In *Coleman*, the court found that a jury could find fraudulent concealment when sellers of land advertised it as having five wells, but failed to disclose that three were not operational. *Id.* at 952. The

---

[2] Defendants also argue that the agreement should not be enforced because Plaintiff has unclean hands, but fail to specify with any particularity why they believe Plaintiff's hands are unclean. (Resp. to MES at 10.) Defendants may find Plaintiff's actions disingenuous, but they fail to articulate how they are wrongful. Without more, the Court will not decline to enforce the agreement for this reason.

1 court reasoned that "[w]hen one conveys a false impression by the disclosure of some
2 facts and the concealment of others" the concealment becomes a false representation. *Id.*
3 The situation in *Coleman* is not analogous to the situation here. There is no evidence to
4 indicate that Plaintiff gave a false impression of her intentions, which have always been
5 to obtain ownership of the Domain Name. Therefore, there is no reason to think that
6 Plaintiff was under a duty to disclose her actions to Defendants. Furthermore, it does not
7 appear that Plaintiff was concealing her actions, since a motion to re-open a bankruptcy
8 would be public record. Therefore, the Court will not decline to enforce the settlement
9 agreement due to fraudulent concealment.

10 Defendants argue that the agreement should not be enforced due to unilateral
11 mistake. (Resp. to MES at 9.) They argue that they "mistakenly believed that Plaintiff's
12 dismissal with prejudice would bring an end to Plaintiff's efforts to steal the [D]omain
13 [N[ame." (*Id.*) "A unilateral mistake that has a material effect on the agreed exchange of
14 performances and that is adverse to the mistaken party renders a contract voidable if the
15 mistaken party does not bear the risk of the mistake and the other party had reason to
16 know of the mistake or that party's fault caused the mistake." *United States v. Talley Def.*
17 *Sys., Inc.*, 393 F. Supp. 2d 964, 972 (D. Ariz. 2005). This argument fails because
18 Defendants bore the risk of the mistake. If they wanted to be sure that Plaintiff would
19 never again attempt to gain ownership of the Domain Name, they could have specified
20 that as a condition of settlement. Defendants were represented by attorneys who should
21 know that an agreement to mutually dismiss all claims does not necessarily prevent
22 further interaction between the parties in the future. Therefore, the Court will not decline
23 to enforce the settlement agreement due to unilateral mistake.

24 Finally, Defendants argue that the Court should not enforce the agreement because
25 Plaintiff's conduct violated the implied covenant of good faith and fair dealing. (Resp. to
26 MES at 10-11.) "The purpose of the implied covenant of good faith and fair dealing is so
27 'neither party will act to impair the right of the other to receive the benefits which flow
28 from their agreement or contractual relationship.'" *Howell v. Midway Holdings, Inc.*, 362

F. Supp. 2d 1158, 1163 (D. Ariz. 2005) (quoting *Rawlings v. Apodaca,* 726 P.2d 565, 569-70 (Ariz. 1986)). "The implied covenant is breached when one party prevents the other party to the contract 'from receiving the benefits and entitlements of the agreement.'" *Id.* (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (2002)). Defendants argue that Plaintiff attempted to deprive them of the benefit of their bargain "by interfering with [their] future use of the heidipowell.com domain name." (Resp. to MES at 11.) An agreement by Plaintiff to cease all attempts to gain ownership of the Domain Name, however, was not a bargained-for benefit of the parties' agreement. Even if Defendants had bargained to include the line stating that they retained ownership of the Domain Name, that inclusion would not have operated as an injunction against Plaintiff's future attempts to find another way to obtain ownership. Therefore, the Court concludes that Plaintiff did not violate the implied covenant of good faith and fair dealing. Because the Court concludes that an agreement to dismiss all claims and counterclaims formed and none of Defendants' affirmative defenses apply, the Court will enforce the settlement agreement between the parties to dismiss the Complaint and Counterclaim with prejudice. Consequently, Plaintiff's Motion for Voluntary Dismissal, Defendants' Motion for Leave to File a Sur-Reply to Plaintiff's Reply in Support of Voluntary Dismissal, and Defendants' Motion for Partial Judgment on the Pleadings will be denied as moot.

### B. Attorneys' Fees

Plaintiff also requests that the Court award her fees for the costs of enforcing the agreement under A.R.S. § 12.341.01(A).[3] Section 12.341.01(A) provides that a court may award attorneys' fees to the successful party in an action arising out of a contract. This section applies to motions seeking to establish the existence of a settlement agreement.

---

[3] Plaintiff also requests fees under A.R.S. § 12-349. Section 12-349 directs courts to assess attorneys' fees against parties who bring unjustified claims, bring claims for delay or harassment, unreasonably expand proceedings, or engage in discovery abuse. A.R.S. § 12-349(A). Although the Court did not agree with Defendants' arguments against enforcing the settlement agreement, it does not conclude that they were substantially unjustified. Therefore, the Court will not award fees under § 12-349.

- 7 -

*See Hays v. Fischer*, 777 P.2d 222, 229-30 (Ariz. Ct. App. 1989). To determine whether a prevailing party is entitled to attorneys' fees and costs under A.R.S. § 12-341.01, courts consider the following factors: (1) the merits of the claim or defense presented by the unsuccessful party; (2) whether the litigation could have been avoided or settled, and whether the successful party's efforts "were completely superfluous in achieving the result"; (3) whether assessing attorneys' fees "against the unsuccessful party would cause an extreme hardship"; (4) whether the successful party prevailed on all the relief sought; (5) the novelty of the legal questions presented and whether the claims or defenses had been previously adjudicated in Arizona; and (6) whether an award of attorneys' fees "would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues out of fear of incurring liability" for fees. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). No one factor is determinative and a court should consider all the relevant factors in deciding whether to award attorneys' fees. *Wilcox v. Waldman*, 744 P.2d 444, 450 (Ariz. Ct. App. 1987). However, that consideration is "highly discretionary." *Hall v. Read Dev., Inc.*, 274 P.3d 1211, 1213 (Ariz. Ct. App. 2012).

In considering the first factor, the Court concludes that Defendants' defenses, although ultimately rejected, were in good faith and not meritless. Therefore, this factor weighs against awarding attorneys' fees. The second factor weighs in favor of awarding fees because once Defendants repudiated the settlement agreement, the only way Plaintiff could enforce it was through litigation. The third factor weighs heavily against an award of fees. Defendants are represented pro bono due to their inability to afford hiring their own lawyer. (Resp. to MES at 14.) They also did not make the initial financial decision to commence this lawsuit. Therefore, the Court concludes they would likely suffer severe hardship if attorneys' fees were awarded. The fourth factor weighs in favor of awarding fees because Plaintiff prevailed on her Motion. The fifth factor weighs in favor of awarding fees because this Motion did not involve novel issues around which confusion would be expected. The sixth factor weighs against awarding fees because although

Defendants' arguments were not successful, they were tenable. Ultimately, the Court concludes that the third factor is most important in this case and declines to award attorneys' fees because it would cause extreme hardship to Defendants.

### C.  Motions for Sanctions

Plaintiff requests sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 arguing that Defendants' pursuit of their counterclaims is frivolous because they know that Plaintiff's allegations did not result in the disabling of the Domain Name, they know they do not own the Domain Name, and they know statutory damages are not applicable. (MFS at 1.) Defendant requests sanctions under Rule 11 arguing that Plaintiff's Motion for Sanctions "is not grounded in law and fact and appears to have been filed for an improper purpose" and that Plaintiff used confidential settlement communications to prove the validity of her claim in connection with the Motion. (Cross-MFS at 14.) "Rule 11 provides for the imposition of sanctions when a motion [or pleading] is frivolous, legally unreasonable, without factual foundation, or is brought for an improper purpose." *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994) (internal citations omitted); *see also* Fed. R. Civ. P. 11(b). Therefore, the Court examines the filing to see whether it is legally and factually tenable, not whether it is likely to succeed on the merits. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 254 (9th Cir. 1992) ("The central purpose of Rule 11 is to deter baseless filings. . .") (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Sanctions may also be issued against an attorney who unreasonably and vexatiously multiplies court proceedings. 28 U.S.C. § 1927.

Plaintiff argues that Defendants' counterclaims are frivolous because they know Plaintiff's allegations did not result in the disabling of the Domain Name since the domain registrar did not lock the Domain Name until Defendants made it aware of the lawsuit. (MFS at 7-9; Doc. 37, Pl.'s Reply in Supp. of MFS and Resp. to Def.'s Cross-MSF ("Pl.'s Reply") at 5-7.) Defendants argue that it does not matter which party brought the lawsuit to the registrar's attention because the lock still resulted from Plaintiff's

- 9 -

1  Complaint. (Doc. 38, Reply in Supp. of Defs.' Cross-MSF ("Defs.' Reply") at 5.)
2  Defendants' first claim was brought under 15 U.S.C. § 1114(2)(D)(v), which provides:
3  "A domain name registrant whose domain name has been suspended, disabled, or
4  transferred under a policy described under clause (ii)(II) may . . . file a civil action to
5  establish that the registration or use of the domain name by such registrant is not
6  unlawful under this chapter." Defendants' second claim is brought under 15 U.S.C. §
7  1114(2)(D)(iv), which provides liability for damages to a domain registrant if a
8  registering authority takes negative action against a domain name based on a knowing
9  and material misrepresentation by another person that a domain name infringes a
10 trademark. The language of the statutes does not specifically require that Plaintiff bring
11 her Complaint to the registrar's attention in order for Plaintiff to be liable for any actions
12 the registrar takes based on allegations in her Complaint. Therefore, the Court concludes
13 that Defendants' counterclaims are not factually untenable. The Court will not award
14 sanctions for this reason.

15 Plaintiff also argues that Defendants do not own the Domain Name at issue and
16 know therefore that they do not have standing to pursue their claims. (MFS at 6-7.) This
17 argument is based on a re-opening of Defendants' 2012 bankruptcy with regard to the
18 Domain Name. (*Id.*) Because issues regarding disclosure of bankruptcy estate assets and
19 ownership of the Domain Name are currently before the bankruptcy court, the Court
20 declines to consider the issue of ownership and will not conclude that Defendants' claims
21 are untenable based on an unresolved re-opening of their bankruptcy. Therefore, the
22 Court will not award sanctions for this reason.

23 Plaintiff also argues that the statutes Defendants relied on for their claims do not
24 provide for statutory damages, so Defendants should not have pursued them. (MFS at 9-
25 10.) Defendants requested statutory damages under 15 U.S.C. § 1117(d) in their
26 Counterclaim. (Countercl., Prayer for Relief ¶ 5.) Section 1117(d) provides for statutory
27 damages for violations of 15 U.S.C. § 1125(d)(1). 15 U.S.C. § 1117(d). Defendants argue
28 that there is at least one case in which statutory damages have been awarded under 15

1  U.S.C. § 1117(d) for claims like theirs. (Cross-MFS at 12-13.) Because the case cited by
2  Defendants was a default judgment, Plaintiff argues that it was not clear that the court
3  awarded damages under § 1117(d) as opposed to another section of the ACPA. (Pl.'s
4  Reply at 7-8.) Whether the case in question actually stands for the proposition that
5  statutory damages can be awarded to Defendants for the counterclaims is not the issue.
6  Defendants have raised a tenable argument that the case stands for that proposition.
7  Therefore, the Court will not impose sanctions for this reason. Additionally, the Court
8  declines to impose sanctions under 28 U.S.C. § 1927 because it does not find that
9  Defendants' filing and defense of their Counterclaim has unreasonably or vexatiously
10 multiplied proceedings.

11 Defendants argue that the Court should impose sanctions against Plaintiff for
12 filing her Motion for Sanctions because Defendants' counsel sent a letter to Plaintiff's
13 counsel upon receipt of Plaintiff's draft motion refuting the claims. (Cross-MFS at 14;
14 Doc. 36, Attach. 6 ("Oct. 24 Letter") at 43-46.) Although the Court ultimately concluded
15 that sanctions against Defendants were not warranted, Plaintiff raised serious questions
16 about the validity of Defendants' claims leading the Court to conclude that Plaintiff's
17 Motion was not submitted for an improper purpose. Therefore, the Court will not impose
18 sanctions for this reason.

19 Defendants also argue that sanctions against Plaintiff are warranted because
20 Plaintiff submitted confidential settlement discussions to support her Motion in violation
21 of Federal Rule of Evidence 408. (Cross-MFS at 15-17; *see* Doc. 36, Ex. C at 65-66.)[4]
22 Plaintiff argues that the settlement offer was not submitted to prove or disprove the
23 validity of a claim, but was submitted to show that Defendants knew they did not own the
24 Domain Name and were therefore proceeding in bad faith. (Pl.'s Reply at 9.) Rule 408
25 provides that evidence of settlement negotiations is not admissible "either to prove or
26 disprove the validity or amount of a disputed claim . . . ." Fed. R. Evid. 408. Courts have

27
28
    [4] Because the Court concludes that the settlement offer is inadmissible under Rule 408, it does not include the particulars of the offer in this discussion.

- 11 -

1 inherent power to impose sanctions for bad faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Plaintiff argues that there was no prejudice to Defendants from her submission of the settlement offer to the Court because "[t]he fact that the [D]omain [N]ame belongs to the bankruptcy estate is a matter of public record." (Pl.'s Reply at 10.) Whether Defendants are prejudiced, however, is not the test for whether the submission of settlement discussions was inappropriate. Although Plaintiff claims she did not submit the settlement offer to prove or disprove the validity of a claim, the fact remains that her argument in her Motion for Sanctions is that Defendants' counterclaim is frivolous because they know they do not own the Domain Name. (MFS at 6-7.) The issues of whether Defendants were proceeding on their counterclaims in bad faith and the validity of the counterclaims are so intertwined that the Court concludes that submitting the settlement offer was effectively an attempt to disprove the validity of Defendants' Counterclaims in violation of Rule 408. Plaintiff has cited, however, a substantial amount of case law that indicates that the submission of settlement discussions is appropriate to show things such as motive and intent. (Pl.'s Reply at 9); *see, e.g.*, *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D. Ariz. 1993) (concluding that settlement negotiations were admissible in a motion to dismiss because the evidence was submitted to show improper retaliatory motive for pursuing the lawsuit). Although the Court concludes that the settlement offer was ultimately inadmissible and did not consider it in determining whether to issue sanctions against Defendants, Plaintiff had a reasonable basis to believe it might be admissible for the purpose of showing bad faith and the Court declines to issue sanctions. Therefore, the Court denies both Plaintiff's Motion for Sanctions and Defendants' Cross-Motion for Sanctions.

**III. CONCLUSION**

The Court grants Plaintiff's Motion to Enforce Settlement Against Defendants because the parties agreed to mutually dismiss all claims and counterclaims with prejudice and none of Defendants' defenses to enforcement apply. The Court, however, denies the Motion with respect to attorneys' fees because granting attorneys' fees would

cause extreme hardship to Defendants. The Court denies both Plaintiff's Motion for Sanctions and Defendants' Cross-Motion for Sanctions because Plaintiff and Defendants had legally and factually tenable justifications for their filings. Because the Court will enforce the parties' agreement to dismiss all claims and counterclaims with prejudice, the Court denies as moot all other pending motions.

**IT IS ORDERED** granting in part and denying in part Plaintiff's Motion to Enforce Settlement Against Defendants (Doc. 25).

**IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint (Doc. 1) and Defendants' Answer and Counterclaim (Doc. 13) with prejudice.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Voluntary Dismissal (Doc. 15).

**IT IS FURTHER ORDERED** denying as moot Defendants' Motion for Leave to File a Sur-Reply to Plaintiff's Reply in Support of Motion for Voluntary Dismissal (Doc. 18).

**IT IS FURTHER ORDERED** denying as moot Defendants' Motion for Partial Judgment on the Pleadings (Doc. 22).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Sanctions (Doc. 34).

**IT IS FURTHER ORDERED** denying Defendants' Response in Opposition to Plaintiff's Motion for Sanctions and Defendants' Cross-Motion for Sanctions (Doc. 36).

**IT IS FURTHER ORDERED** directing the Clerk to enter Judgment accordingly.

Dated this 22nd day of February, 2017.

_____
Susan R. Bolton
United States District Judge